# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MONSTER BEVERAGE CORPORATION, a Delaware corporation,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

OSIE MARSHALL, YASNA CUEVAS, JOHN VAN ES, on behalf of
themselves and others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

400 McAllister Street
San Francisco, CA 94102-4515

CASE NUMBER:
*(Número del Caso):* C G C 14 - 5 3 8 4 4 7

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Anthony J. Orshansky, CounselOne, 9301 Wilshire Blvd., Suite 650, Beverly Hills, CA 90210, 310-277-9945

DATE: APR 04 2014
*(Fecha)*

CLERK OF THE COURT

Clerk, by _____ Deborah Steppe , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit A, Page 2

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Marshall, et al. v. Monster Beverage Corporation, et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

dba HANSEN BEVERAGE COMPANY, and DOES 1 through 50, inclusive,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A, Page 3

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Anthony J. Orshansky (Cal. Bar No. 199364) CounselOne, P.C. 9301 Wilshire Boulevard Suite 650 Beverly Hills, California 90210 | ENDORSED FILED *San Francisco County Superior Court* APR 0 4 2014 CLERK OF THE COURT BY: DEBORAH STEPPE Deputy Clerk |

TELEPHONE NO.: (310) 277-9945    FAX NO.: (424) 277-3727
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME:

CASE NAME:
MARSHALL, et al. v. MONSTER BEVERAGE CORPORATION, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC - 14 - 538447 JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* 7
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 1, 2014
Anthony J. Orshansky
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

Exhibit A, Page 4

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
         or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]

## CIVIL CASE COVER SHEET

Page 2 of 2

1   ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
    anthony@counselonegroup.com
2   COUNSELONE, P.C.
    9301 Wilshire Boulevard, Suite 650
3   Beverly Hills, California 90210
    Telephone: (310) 277-9945
4   Facsimile: (424) 277-3727

5   Attorneys for Plaintiffs
    OSIE MARSHALL, YASNA CUEVAS, JOHN VAN ES,
6   on behalf of themselves and others similarly situated

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN FRANCISCO

10

11                                          C G C - 1 4 - 5 3 8 4 4 7

12  OSIE MARSHALL, YASNA CUEVAS,          Case No.
    JOHN VAN ES, on behalf of themselves and
13  others similarly situated,            CLASS ACTION COMPLAINT FOR:

14                 Plaintiffs,               (1) Unlawful Business Practices (Cal.
                                                Bus. & Prof. Code § 17200 et seq.)
15          v.
                                            (2) Unfair Business Practices (Cal. Bus.
16  MONSTER BEVERAGE CORPORATION,               & Prof. Code § 17200 et seq.)
    a Delaware corporation, dba HANSEN
17  BEVERAGE COMPANY, and DOES 1            (3) Fraudulent Business Practices (Cal.
    through 50, inclusive,                      Bus. & Prof. Code § 17200 et seq.)
18
                   Defendants.              (4) Misleading Advertising (Cal. Bus. &
19                                              Prof. Code § 17500 et seq.)

20                                          (5) Untrue Advertising (Cal. Bus. & Prof.
                                                Code § 17500 et seq.)
21
                                            (6) Violation of the Consumer Legal
22                                              Remedies Act, Cal. Civ. Code §§ 1750
                                                et seq.
23
                                            (7) Restitution Based on Quasi-Contract
24                                              / Unjust Enrichment

25                                          **DEMAND FOR JURY TRIAL**

26

27

28

                         CLASS ACTION COMPLAINT                     Exhibit A, Page 6

ENDORSED
F I L E D
San Francisco County Superior Court

APR 0 4 2014

CLERK OF THE COURT
BY:   DEBORAH STEPPE
                    Deputy Clerk

1   Plaintiffs OSIE MARSHALL, YASNA CUEVAS, JOHN VAN ES (hereinafter

2   "Plaintiffs"), on behalf of themselves and all others similarly situated, complain of MONSTER

3   BEVERAGE CORPORATION, a Delaware corporation, dba HANSEN BEVERAGE

4   COMPANY, and DOES 1 through 50, inclusive, as follows:

5                                              **INTRODUCTION**

6          1.       Plaintiffs bring this action pursuant to Code of Civil Procedure § 382 against

7   Defendants Monster Beverage Corporation dba Hansen Beverage Company ("Hansen"), and Does

8   1 through 50, inclusive (collectively with Hansen, "Defendants"), on behalf of all consumers in

9   the United States within four years of the filing of this lawsuit who within the last four years have

10  purchased any of the "Misbranded Products," which include all Hansen's Juices or Juice Box

11  products, all Hansen's Smoothie Nectar products, all Hubert's Lemonade products, all Aguas

12  Frescas products, all Hansen's Natural Fruit and Tea Stix products, all Vidration products, all

13  Hansen's sodas, all Blue Sky sodas, Energy Pro, Diet Red, and all Blue Energy products (energy,

14  juice, coffee).  The labels for each of these products carry representations about the ingredients or

15  alleged healthful properties of the products that are intended to induce, and have induced,

16  consumers to purchase the products.  These representations, however, are false, misleading, and

17  unlawful for the reasons alleged below.

18         2.       Plaintiffs allege that Defendants' conduct violates California's Business and

19  Professions Code sections 17200, et seq. (the Unfair Competition Law, or "UCL"), California's

20  Business and Professions Code sections 17500, et seq. (the False Advertising Law, or "FAL"), and

21  the Consumers Legal Remedies Act of the California Civil Code sections 1750, et seq. (the

22  "CLRA").  Plaintiffs also allege that Defendants' conduct is grounds for restitution on the basis of

23  quasi-contract/unjust enrichment.

24         3.       Plaintiffs seek damages and restitution stemming from Defendants' false labeling

25  and advertising.  Plaintiffs also seek declaratory and injunctive relief to ensure that Defendants

26  remove any and all false or misleading labels and advertisements relating to the Misbranded

27  Products and to prevent them from making similar representations in the future.

28  ///

---

1

CLASS ACTION COMPLAINT

**PARTIES**

4.       Hansen has its headquarters in Corona, California, and upon information and belief operates, manages and directs its nationwide sales and business operations from its offices in California.  Hansen also maintains manufacturing, storage, and distribution centers in California, from which Hansen operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations.  It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Complaint occurred, was conducted, and/or was directed in and emanated from California, including, but not limited to:  (a) the design of the Defendants' packaging; (b) the review, approval and revision of Defendants' products and labeling; (c) the selection and integration of ingredients into the Defendants' products; (d) the distribution of the Defendants' products; and (e) the management and supervision of sales operations to Plaintiffs and the putative classes (as defined herein).

5.       The true names and capacities, whether individual, corporate, associate, or whatever else, of the defendants sued herein as Does 1 to 50, inclusive, are currently unknown to Plaintiffs, who therefore sue these defendants by such fictitious names under Code of Civil Procedure § 474.  Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as Does is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Does when their identities become known.  (As used herein, "Defendants" refers to Hansen and Does 1 to 50, inclusive.)

6.       Plaintiffs are informed and believe and thereon allege that each defendant acted in all respects pertinent to this action as the agent of the other Defendants, that Defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to the other Defendants.

7.       Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5 because the obligations giving rise to liability occurred in part in the County of San Francisco, State of California.

///

CLASS ACTION COMPLAINT

**BACKGROUND**

8.     Hansen deceptively labels and advertises the Misbranded Products in the following ways—all of which create the impression that the Misbranded Products are natural, healthy beverages.

*Hansen Unlawfully Claims That the Misbranded Products Are Natural.*

9.     Hansen advertises, labels, and represents the Misbranded Products as being "Natural," "100% Natural," or "All Natural." These claims appear on the product labels and even in the product names of the Misbranded Products. This claim is reinforced on Hansen's website, which depicts a verdant field, trees, a blue sky, and butterflies. Some of the Misbranded Products labeled as natural also state that they are "naturally sweetened with Truvia." (*See* sample product labels, attached as Exh. A.)

10.    These representations are false or, at best, deceptive and misleading. Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[1] Moreover, "all" is defined as "the whole extent or quantity of."[2] Thus the combined use of "all natural" on the labels of the Mislabeled Products indicates to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the food products are "produced or existing in nature; not artificial or manufactured."

11.    Although the Food and Drug Administration ("FDA") does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color additives, artificial flavors, or synthetic substances.[3] Specifically, the FDA states: "[T]he agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). The FDA

///

---

[1] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.
[2] *Id.*, "all," definition no. 1 at p. 36.
[3] *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.

3

1   has issued numerous warning letters owing to the presence of synthetic ingredients such as

2   ascorbic and citric acid in so-called "natural" products without proper identification.

3         12.    This policy is consistent with consumers' understanding of the word "natural."

4   Consumers understand "natural" to exclude synthetic ingredients, food additives, or chemical

5   preservatives.  In a 2007 survey conducted by the Natural Marketing Institute, the majority of

6   respondents believed that the term "natural" in a product label meant that the product contained

7   100 percent natural ingredients, no artificial flavors, no artificial colors, no preservatives, no

8   chemicals, and a substantial percentage thought that it meant that the product was not highly

9   processed.  *Moreover, 81 percent of respondents found products claiming to be "natural"*

10   very/somewhat important when purchasing food or beverage products.  And large majorities also

11   found that products containing no preservatives, no artificial ingredients, no artificial flavors, and

12   no artificial colors to be very/somewhat important when purchasing food and beverage products.

13   These percentages are even larger among the health-conscious segments of the US population,

14   which are large—approximately 40 percent.  What is more, the survey found that these trends

15   have increased from previous years, and consequently the subject labeling statements are probably

16   far more important to consumers today.  Significantly, the survey also found that package labeling

17   was by far the most important source of information influencing consumers' purchasing decisions,

18   especially among the health-conscious segment of the population.

19         13.    The labeling of products as "natural" or "all natural" (or words of similar import)

20   carries implicit health benefits important to consumers—benefits for which consumers are willing

21   to pay a premium over comparable products that are not so labeled and marketed.  Defendants

22   have cultivated and reinforced a corporate image based on this theme, which they have

23   emblazoned on almost all of the Misbranded Products and even use the word "natural" in the trade

24   name of certain products (e.g., sodas and juices), despite the use of synthetic ingredients in these

25   products.  The presence of synthetic ingredients in the Misbranded Products renders Defendants'

26   product labels and advertising false and misleading.

27         14.    Moreover, like the FDA, the United States Department of Agriculture ("USDA"),

28   which regulates the labeling of meat and poultry, has also set limits on the use of the term

4

CLASS ACTION COMPLAINT

"natural."   The USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative ... or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."

15.    According to the USDA, "[m]inimal processing may include:  (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices."[4] However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[5]

16.    Under USDA policy, a product cannot be labeled as being "natural" if an ingredient would significantly change the character of the product to the point that it could no longer be considered a natural product.  Moreover, any product purporting to be "natural" must conspicuously identify any synthetic ingredients used on the label (e.g., "all natural ingredients except dextrose, modified food starch, etc.").  For example, a "turkey roast" cannot be called a "natural" product if it contains beet coloring but can still bear the statement "all natural ingredients modified by beet coloring."  Defendants do not, however, include any such limiting language on the Misbranded Products.[6]

17.    The terms "synthetic" and "artificial" closely resemble each other and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[7]  In the scientific community, "synthetic" includes substances that

---

[4] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited December 18, 2013).
[5] *Ibid.*
[6] *Ibid.*
[7] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ (last visited December 18, 2013).

5

1   are also "artificial," but a synthetic substance also can be artificial or non-artificial.[8]  However, the

2   common understanding of "artificial" resembles the scientific community's definition of

3   "synthetic."  Indeed Webster's New World Dictionary defines "artificial" as "anything made by

4   human work, especially if in intimation of something natural," whereas "synthetic" is defined as

5   "a substance that is produced by chemical synthesis and is used as a substitute for a natural

6   substance which it resembles."[9]

7        18.    Congress has defined "synthetic" to mean "a substance that is formulated or

8   manufactured by a chemical process or by a process that chemically changes a substance extracted

9   from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to

10   substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also* 7

11   C.F.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as

12   "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic

13   process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

14        19.    The Misbranded Products are not natural because they actually contain synthetic

15   ingredients (e.g., citric acid, ascorbic acid, phosphoric acid, tartaric acid, calcium lactate, calcium

16   gluconate) and color additives (e.g., grape skin extract, fruit and vegetable juice).  *See* 21 C.F.R. §

17   101.9(c)(8)(v), 101.36(d), 101.36(e)(11)(i).

18        20.    Although these substances may occur naturally, the ingredients Hansen uses are

19   chemically manufactured and highly processed—thus rendering them not natural.

20        21.    Moreover, Truvia is not natural because its primary ingredient is erythritol, a sugar

21   alcohol usually made by processing genetically modified corn.  In fact, Truvia uses only a small

22   amount of the stevia extract Rebiana A ("Reb A"), which is itself a chemically processed form of

23   stevia and hence not natural.  However, the ingredient statement on the Misbranded Products

24   claiming to be "sweetened with Truvia" does not even disclose the existence of erythritol, only

25   Reb A, even though Reb A constitutes only one percent of Truvia.

26   ///

---

27   [8] *Ibid.*

28   [9] *See* Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

22.     The Misbranded Products also boast that they contain a substantial percentage of vitamins and antioxidants such as vitamins C and E.  These claims appear both on product labels and in advertising material.  For example, Hansen's webpage for Apple Grape Juice states, "Besides great taste, there's the added benefit of naturally occurring antioxidants, as well as 120% Vitamin C.  Not a drop of sugar or a speck of preservatives added."

23.     Hansen misrepresents the provenance of the vitamin C and leads consumers to believe that both it and the claimed antioxidant activity in the Misbranded Products are derived from fruit and not chemical sources.

24.     Further, Hansen's Diet Sodas are misbranded because although they purport to be "naturally flavored," they contain artificial flavors such as citric acid and phosphoric acid, which impart a tangy or sour taste to the sodas.  These artificial flavors appear in the ingredient statement of the sodas before the natural flavor extracts.  (*See* diet soda label, attached hereto as Exh. B.) Indeed the natural flavor extract almost always appears last in the ingredient statement.

25.     Because the Misbranded Products contain artificial flavoring and chemical preservatives without stating this fact on the product labels, Defendants violated the California's Sherman Food, Drug, and Cosmetic Law, including California Health & Safety Code § 110740. In this way, Defendants have also violated California Health & Safety Code § 110705 because words, statements, or other information required pursuant to the Sherman Law to appear on the label or labeling are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

### *Hansen Unlawfully Claims the Misbranded Products Contain "No Preservatives."*

26.     Rather than disclose the presence of chemical preservatives as required by law, Defendants state the opposite through labeling statements claiming the Misbranded Products contain "no preservatives."  (See example product labels, attached as Exh. C.)

27.     The Federal Regulations require food and beverage manufacturers to disclose the presence of chemical preservatives "on the food or on its container or wrapper, or on any two or

7

CLASS ACTION COMPLAINT

1   all three of these, as may be necessary to render such statement likely to be read by the ordinary

2   person under customary conditions of purchase and use of such food." 21 CFR § 101.22(c).

3        28.      "The term chemical preservative means any chemical that, when added to food,

4   tends to prevent or retard deterioration thereof, but does not include common salt, sugars,

5   vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof

6   to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 CFR §

7   101.22(a)(5).

8        29.      Pursuant to 21 C.F.R. § 101.22(j), a food to which a chemical preservative(s) is

9   added shall, except when exempt pursuant to 21 C.F.R. § 101.100 bear a label declaration stating

10  both the common or usual name of the ingredient(s) and a separate description of its function, e.g.,

11  "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote

12  color retention."

13       30.      The Misbranded Products fail to comply with the requirements of 21 C.F.R. §

14  101.22.  Because many of the Misbranded Products have lengthy shelf-lives, they contain a

15  number of chemical preservatives such as ascorbic acid, citric acid, and vitamin E; however, the

16  labels of these products fail to describe the function of these chemical preservatives, thus violating

17  the law and concealing their presence.

18       31.      Ascorbic acid, citric acid, and vitamin E are not types of common salt, sugar,

19  vinegar, spice, or oil extracted from spices, nor are they substances added to food by direct

20  exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal

21  properties.  As used by Defendants in their products, these chemicals prevent or retard

22  deterioration of the products.  Therefore these chemicals are "chemical preservatives" in Hansen's

23  products, as defined in 21 C.F.R. § 101.22(a)(5), and must be disclosed and identified as such.

24       ***Hansen Unlawfully Claims That the Misbranded Products Contain "100% Juice."***

25       32.      Hansen's juice products claim to be made with 100 percent juice.  (See example

26  product labels, attached as Exh. D.)

27       33.      However, this is false owing to the addition of numerous synthetic, non-juice

28  ingredients.  A beverage purporting to be juice must contain a percentage juice declaration.  *See*

8

1  21 C.F.R. § 101.30(a).  Where non-juice ingredients result in a diminution of the juice soluble

2  solids or a change in the volume of the product, then the 100 percent juice declaration is

3  inappropriate.  *Id.* at subdiv. (b)(3).  Moreover, even where there is no diminution of juice soluble

4  solids or change in volume, a 100 percent juice declaration is unlawful unless it is accompanied by

5  the phrase "with added ___," the blank being filled in with a term such as "ingredient(s),"

6  "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener").  *Ibid.*

7        34.    Because the Misbranded Products do not contain this additional language, they are

8  mislabeled, and a reasonable consumer would be misled into believing that he or she is purchasing

9  a product that contains 100 percent juice and nothing else.

10     ***Hansen Unlawfully Claims That the Misbranded Products Contain No Added Sugar.***

11       35.    Hansen's juice products are intended to appeal to consumers who are concerned

12  with their sugar and caloric intake.  In order to target sales to this demographic Hansen claims that

13  the misbranded juice products contain "No Sugar Added."  (See example product labels, attached

14  as Exh. E.)  This claim is reinforced on Hansen's website, which states that certain products, such

15  as Apple Raspberry Juice, are "naturally sweetened" with Truvia.

16       36.    The Misbranded Products are mislabeled because they make the nutrient content

17  claim "No Sugar Added" but are made from concentrated fruit juices.  A manufacturer is

18  prohibited from using the term "No Added Sugar" where the product contains concentrated fruit

19  juice.  *See* 21 C.F.R. § 101.60(c)(2)(ii).  A product purporting to have "No Added Sugar" must

20  also bear a statement that the food is not "low calorie" or "calorie reduced" unless the product

21  meets the requirements for making such claims.  *Id.* at subdiv.  *Id.* at subdiv. (c)(2)(v).  These

22  products do not qualify as low-calorie foods because they provide more than 40 calories per

23  reference amount customarily consumed.  *See* 21 C.F.R. § 101.60(b)(2).  However, the

24  Misbranded Products do not carry the required disclaimer, nor do they, as required "direct[]

25  consumers' attention to the nutrition panel for further information on sugar and calorie content."

26  21 C.F.R. § 101.60(c)(2)(v).

27       37.    Because consumers may reasonably be expected to regard terms that represent that

28  a product contains "no sugar added" as indicating a product which is low in calories or

1   significantly reduced in calories, consumers are misled when foods that are not low-calorie as a

2   matter of law are falsely represented through the use of phrases like "no sugar added" which they

3   are not allowed to bear owing to high calorie levels and absence of mandated disclaimer or

4   disclosure requirements.

5   *Hansen Unlawfully Misbrands the Products Made from Concentrate.*

6       38.    Hansen's juice products are misbranded because they do not comply with

7   regulations governing juices made from concentrate.  *See* 21 C.F.R. § 102.33(g)(1).  These

8   regulations require the name of a beverage that is made from concentrate to include a term

9   indicating that fact, such as "from concentrate" or "reconstituted."  *Ibid.*  The regulations further

10  provide that "such terms must be included in the name of each individual juice or . . . once

11  adjacent to the product name so that it applies to all the juices."  *Ibid.*  Further, "[t]he term shall be

12  in a type size no less than one-half the height of the letters in the name of the juice."

13      39.    Hansen's juice products are misbranded because although the labels include a

14  statement that the juice is from concentrate, in many instances this statement is small, less than

15  one-half the height of the letters in the name of the juice, and purposely positioned to mislead the

16  average consumer, which again violates California law.  *See* California Health & Safety Code §

17  110705.  (See example product labels, attached as Exh. F.)

18  *Hansen Unlawfully Claims the Misbranded Products Are "Sweetened with Splenda."*

19      40.    Hansen's Diet Sodas claim to be sweetened with Splenda, an artificial sweetener

20  purportedly derived from sugar, and the front labels often show a Splenda logo.  (See example

21  product labels, attached as Exh. G.)

22      41.    This claim is deceptive because these products lead consumers to believe they are

23  sweetened only or primarily with Splenda when in fact they are also sweetened with acesulfame

24  potassium, a different artificial sweetener that has been linked to medical conditions such as

25  impaired cognitive function and is therefore avoided by many consumers.[10]

26  ///

---

27  [10] *See* Cong, et al. "Long-Term Artificial Sweetener Acesulfame Potassium Treatment Alters
    Neurometabolic Functions in C57BL/6J Mice," *PLoS ONE,* Aug. 7, 2013, available at

28  http://www.plosone.org/article/info%3Adoi%2F10.1371%2Fjournal.pone.0070257 Center for Science in
    the Public Interest, http://www.cspinet.org/reports/asekquot.html

10

42.     The statement "Sweetened with Splenda" is rendered additionally deceptive because the ingredient statements disclose that acesulfame potassium is often the *primary* sweetener in these products, with Splenda being secondary.

**Hansen Unlawfully Fortifies the Misbranded Products.**

43.     Hansen claims that many of the Misbranded Products such as its Blue Sky sodas contain vitamins and antioxidants including ascorbic acid (synthetic vitamin C), beta carotene (synthetic vitamin A), and tocopherols (synthetic vitamin E). However, these vitamins and antioxidants are not naturally occurring; rather, Hansen fortifies these products with synthetic vitamins and antioxidants. (See example product labels, attached as Exh. H.)

44.     This is improper. "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify … snack foods such as candies and carbonated beverages." 21 CFR § 104.20(a). A nutrient cannot be added to a food or beverage unless it is physiologically available from the food. *Id.* at subdiv. (g). A manufacturer may not make false or misleading statements regarding the addition of vitamins or minerals. *Id.* at subdiv. (h).

45.     Hansen violates federal labeling law by fortifying snack foods and carbonated beverages with vitamins and antioxidants. What is more, vitamins such as vitamins A and E are not physiologically available when added to beverages because they are fat soluble, meaning that they cannot be absorbed by the body in the absence of fat, which the Misbranded Products do not contain.

46.     Moreover, Hansen deceptively represents that these sodas contain naturally occurring vitamins and antioxidants through the depiction on product labels of images of fruits such as raspberries and grapes with well-known antioxidant activity and vitamin content when in fact the Misbranded Products contain *added* vitamins and antioxidants.

**Allegations as to the Named Plaintiffs**

47.     Plaintiffs are and, throughout the entire class period, were residents of the State of California. Plaintiffs are concerned about and try to avoid consuming foods that are not natural, such as products containing synthetic, artificial or chemical ingredients, as well as products that

11

1  are high in sugar.  For this reason, Plaintiffs are willing to pay and have paid a premium for foods

2  that are natural and have endeavored to refrain from buying equivalent foods which are not natural

3  and which do contain synthetic, artificial, or chemical ingredients and are high in sugar.

4          48.    During the class period Plaintiff OSIE MARSHALL purchased, among other

5  products, multiple Hansen's Soda and Diet Sodas, Hansen's Blue Sky Soda, Hansen's juice,

6  Hansen's and Junior Juice and Juice Boxes, and Hubert's Lemonade from various markets

7  throughout California.

8          49.    Plaintiff YASNA CUEVAS purchased, among other products, Hansen's Soda, Diet

9  Soda, and Blue Sky Soda products, Angeleno Aguas Frescas, Hansen's Peace Tea, Hansen's

10  Smoothie Nectar drinks, Hansen's Vidration, and Hansen's energy drinks from stores throughout

11  California during the class period.

12          50.    Plaintiff JOHN VAN ES purchased, among other products, Hansen's juice and

13  Juice Box Products, Hansen's Sodas and Diet Sodas, Hubert's Lemonade products, and Hansen's

14  tea and fruit stix from stores throughout California during the class period.

15          51.    Before buying Hansen's products, Plaintiffs saw pictures of fruit on the product

16  labels and read statements that these products were "Natural," "100% Natural," "All Natural,"

17  "naturally flavored," "naturally sweetened with Truvia," "GMO Free," and contained "No

18  Preservatives," "100% juice," and specified antioxidants and vitamins, and Plaintiffs relied on

19  these representations in deciding to buy the products.  Plaintiffs  understood these representations

20  as meaning there was nothing artificial, synthetic, or chemically fabricated in the products, that

21  they did not contain preservatives, and that the antioxidants were derived from natural sources

22  (such as fruits) and were physiologically available when ingested.

23          52.    Consistent with this understanding, Plaintiffs did not see the small statements on

24  some of the product labels that the juices came from concentrate.  Plaintiffs also read the "no sugar

25  added" statement on the products and believed that these were lower calorie or reduced-calorie

26  drinks and/or were not sweetened using concentrated fruit juice (or other sweeteners) and/or were

27  drawn to the products because of this label.  Plaintiffs relied on this front-of-the-package

28  ///

CLASS ACTION COMPLAINT                                    Exhibit A, Page 18

1  representation and did not scrutinize the nutrition panel for information on sugar and caloric

2  content.

3        53.    Moreover, Plaintiffs believed that sodas fortified with antioxidants and vitamins

4  were healthier for themselves and their families because the vitamins and antioxidants were

5  naturally occurring and could represent a source of the specified vitamins and antioxidants needed

6  in their diets.

7        54.    Finally, Plaintiffs relied on label representations that Hansen's Diet Soda was

8  sweetened with Splenda, which they preferred to other sweeteners because they believed that it

9  was derived from sugar.

10        55.    Plaintiffs not only purchased these products because of the identified

11  representations but also paid more money than they would have had to pay for other similar

12  products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants'

13  representations were false or deceptive, they would not have purchased these products but would

14  have purchased brands that accurately represented the product or, if these were not available,

15  would have purchased less expensive products that did not make such representations.  In this

16  way, Plaintiffs did not receive the products they had bargained for and have lost money as a result

17  in the form of paying money to Defendants and paying a premium for Defendants' products owing

18  to the misrepresentations.

19        56.    On or around September 13, 2013, Plaintiffs sent a letter to Hansen informing it

20  that it has engaged in unfair methods of competition and/or deceptive acts or practices, including

21  but not limited to violation of California Civil Code § 1770, in connection with the sale of the

22  Misbranded Products, and requested that it correct, repair, replace, or otherwise rectify its

23  unlawful conduct.  Hansen ultimately declined to correct, repair, replace, or otherwise rectify its

24  unlawful conduct.  Because more than 30 days have elapsed since the receipt of Plaintiffs' letter,

25  Plaintiffs herein seek actual, punitive, and statutory damages as appropriate on behalf of

26  themselves and similarly situated consumers, as well as equitable including injunctive relief.

27  ///

28  ///

13

CLASS ACTION COMPLAINT

## CLASS ALLEGATIONS

57.     Plaintiffs bring this action on behalf of themselves and those similarly situated as a class action pursuant to Code of Civil Procedure § 382. Plaintiffs seek to represent the following classes: All persons in the United States or, alternatively, California who purchased one or more of the Misbranded Products from four years prior to the filing of the Complaint and continuing to the present.

58.     The class excludes counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

59.     Plaintiffs reserve the right under California Rule of Court 3.765 to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

60.     This action has been brought and may properly be maintained as a class action under the provisions of Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

**A.     Numerosity**

61.     The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable. Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that the proposed classes include thousands of members.

**B.     Commonality**

62.     There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members. These common questions of law and fact include:

a.   Whether Defendants' conduct was a "fraudulent practice" within the meaning of the Unfair Competition Law ("UCL"), Business & Professions Code § 17200, in that it was likely to mislead consumers;

b.   Whether Defendants' conduct was an "unfair practice" within the meaning of the UCL in that it offended established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

c.   Whether Defendants' conduct was an "unlawful" practice within the meaning of the UCL;

d.   Whether Defendants' conduct was likely to deceive a consumer acting reasonably in the same circumstances;

e.   Whether Defendants advertise or market the Misbranded Products in a way that is false or misleading;

f.   Whether Defendants violated California Business and Professions Code § 17500 et seq.;

g.   Whether Defendants violated California Civil Code § 1750 et seq.;

h.   Whether Plaintiffs and members of the putative class are entitled to restitution, injunctive, declaratory and/or other equitable relief;

i.   Whether Defendants have been unjustly enriched through the misrepresentations alleged herein; and

j.   Whether Plaintiffs and the members of the class sustained monetary loss.

**C.   Adequacy of Representation**

63.   Plaintiffs will fairly and adequately represent and protect the interests of the class. Counsel who represent Plaintiffs and putative class members are experienced and competent in litigating class actions.

**D.   Superiority of Class Action**

64.   A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions

15

Exhibit A, Page 21

1 affecting only individual putative class members.  Each putative class member has been damaged
2 and is entitled to recovery by reason of Defendants' illegal policies or practices of failing to
3 compensate putative class members properly.

4       65.    Class action treatment will allow those persons similarly situated to litigate their
5 claims in the manner that is most efficient and economical for the parties and the judicial system.
6 Plaintiffs are unaware of any difficulties in managing this case that should preclude class action.

7 **FIRST CAUSE OF ACTION**
8 **Unlawful Business Practices in Violation of**
9 **Business and Professions Code § 17200, et seq.**

10     66.    Plaintiffs incorporate by reference each allegation set forth above.
11     67.    Defendants' conduct constitutes unlawful business acts and practices under
12 Business & Professions Code § 17200, et seq.
13     68.    Defendants sold Misbranded Products in California and throughout the United
14 States during the class period.
15     69.    Defendant Hansen is a corporation and, therefore, is a "person" within the meaning
16 of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, et seq.
17 (the "Sherman Law").  The Sherman Law adopts, incorporates and is identical to the federal Food,
18 Drug & Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA").
19     70.    Defendants' business practices are unlawful under § 17200, et seq., by virtue of
20 Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the
21 misbranded food provisions of Article 6 of the Sherman Law.
22     71.    Defendants' business practices are unlawful under Business & Professions Code §
23 17200, et seq. by virtue of Defendants' violations of § 17500, et seq., which forbids untrue and
24 misleading advertising.
25     72.    Defendants' business practices are unlawful under Business & Professions Code §
26 17200, et seq. by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal.
27 Civ. Code § 1750, et seq.
28 ///

16

73.     Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Indeed the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.

74.     Defendants sold Plaintiffs and members of the putative class Misbranded Products that were not capable of being sold or legally held and which had no economic value and were legally worthless.  Plaintiffs and each putative class member paid a premium price for the Misbranded Products.

75.     As a result of Defendants' illegal business practices, Plaintiffs and the members of the putative class are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any putative class member any money paid for the Misbranded Products.

76.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each member of the putative class.

## SECOND CAUSE OF ACTION

### Unfair Business Practices in Violation of

### Business & Professions Code § 17200, et seq.

77.     Plaintiffs incorporate by reference each allegation set forth above.

78.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17200.

79.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.     Defendants' conduct as set forth herein constitutes unfair business acts and practices.

///

17

1    81.   Defendants sold Misbranded Products in California and throughout the United

2   States during the class period.

3    82.   Plaintiffs and the members of the putative class suffered a substantial injury by

4   virtue of buying Defendants' Misbranded Products, which they would not have purchased absent

5   Defendants' illegal conduct.

6    83.   Defendants' deceptive marketing, advertising, packaging and labeling of their

7   Misbranded Products and their sale of unsalable misbranded products that were illegal to possess

8   were of no benefit to consumers, and the harm to consumers and competition is substantial.

9    84.   Defendants sold Plaintiffs and the members of the putative class Misbranded

10   Products that were not capable of being legally sold or held and that had no economic value and

11   were legally worthless.  Plaintiffs and the members of the putative class paid a premium price for

12   the Misbranded Products.

13    85.   Plaintiffs and the members of the putative class who purchased Defendants'

14   Misbranded Products had no way of reasonably knowing that the products were misbranded and

15   were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably

16   avoided the injury each of them suffered.

17    86.   The consequences of Defendants' conduct as set forth herein outweigh any

18   justification, motive or reason therefor.  Defendants' conduct is and continues to be unlawful,

19   unscrupulous and contrary to public policy, and is substantially injurious to Plaintiffs and the

20   members of the putative class.

21    87.   As a result of Defendants' conduct, Plaintiffs and the members of the putative

22   class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such

23   future conduct by Defendants, and such other orders and judgments which may be necessary to

24   disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded

25   Products by Plaintiffs and the members of the putative class.

26   ///

27   ///

28   ///

18

CLASS ACTION COMPLAINT

Exhibit A, Page 24

**THIRD CAUSE OF ACTION**

**Fraudulent Business Practices in Violation of**

**Business and Professions Code § 17200, *et seq.***

88.  Plaintiffs incorporate by reference each allegation set forth above.

89.  Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

90.  Defendants sold Misbranded Products in California and throughout the United States during the class period.

91.  Defendants' misleading marketing, advertising, packaging, and labeling of the Misbranded Products and misrepresentation that the products were capable of sale, capable of possession, and not misbranded were likely to deceive reasonable consumers, and in fact Plaintiffs and the members of the putative class were deceived.

92.  Defendants' fraud and deception caused Plaintiffs and the members of the putative class to purchase Misbranded Products that they would otherwise not have purchased had they known the true nature of those products.

93.  Defendants sold Plaintiffs and the members of the putative class Misbranded Products that were not capable of being sold or legally held and that had no economic value and were legally worthless.  Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

94.  As a result of Defendants' conduct as set forth herein, Plaintiffs and each member of the putative class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Products by Plaintiffs and the members of the putative class.

**FOURTH CAUSE OF ACTION**

**Misleading Advertising in Violation of**

**Business and Professions Code § 17500, *et seq.***

95.  Plaintiffs incorporate by reference each allegation set forth above.

19

1    96.    Plaintiffs assert this cause of action for violations of California Business and

2 Professions Code § 17500, *et seq.*, for misleading and deceptive advertising against Defendants.

3    97.    Defendants sold Misbranded Products in California and throughout the United

4 States during the class period.  Defendants engaged in a scheme of offering the Misbranded

5 Products for sale to Plaintiffs and the members of the putative class by way of, *inter alia*, product

6 packaging and labeling, and other promotional materials.  These materials misrepresented and/or

7 omitted the true contents and nature of Defendants' Misbranded Products.

8    98.    Defendants' advertisements and inducements were made within California and

9 throughout the United States and come within the definition of advertising as contained in

10 Business and Professions Code §17500, *et seq.*, in that such product packaging and labeling, and

11 promotional materials were intended as inducements to purchase Defendants' Misbranded Food

12 Products and are statements disseminated by Defendants to Plaintiffs and the members of the

13 putative class that were intended to reach the members of the putative class.  Defendants knew, or

14 in the exercise of reasonable care should have known, that these statements were misleading and

15 deceptive as set forth herein.

16    99.    In furtherance of its plan and scheme, Defendants prepared and distributed within

17 California and nationwide via product packaging and labeling, and other promotional materials,

18 statements that misleadingly and deceptively represented the composition and the nature of

19 Defendants' Misbranded Products.  Plaintiffs and members of the putative class necessarily and

20 reasonably relied on Defendants' material and were the intended targets of such representations.

21    100.    Defendants' conduct in disseminating misleading and deceptive statements in

22 California and nationwide to Plaintiffs and the members of the putative class was and is likely to

23 deceive reasonable consumers by obfuscating the true composition and nature of Defendants'

24 Misbranded Products, in violation of the "misleading prong" of California Business and

25 Professions Code § 17500, *et seq.*

26    101.    As a result of Defendants' violations of the "misleading prong" of California

27 Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the

28 expense of Plaintiffs and the members of the putative class.  Misbranded products cannot be

1   legally sold or held and have no economic value and are legally worthless.  Plaintiffs and the

2   members of each Class paid a premium price for the Misbranded Products.

3        102.    Plaintiffs and the members of the putative class, pursuant to Business and

4   Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants,

5   and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

6   gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the

7   members of the putative class.

8                              **FIFTH CAUSE OF ACTION**

9                         **Untrue Advertising in Violation of**

10                **Business and Professions Code § 17500, *et seq.***

11       103.    Plaintiffs incorporate by reference each allegation set forth above.

12       104.    Plaintiffs assert this cause of action against Defendant for violations of California

13   Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.  Defendants sold

14   Misbranded Products in California and throughout the United States during the class period.

15       105.    Defendants engaged in a scheme of offering Defendants' Misbranded Products for

16   sale to Plaintiffs and the members of the putative class by way of product packaging and labeling,

17   and other promotional materials.  These materials misrepresented and/or omitted the true contents

18   and nature of Defendants' Misbranded Products.  Defendants' advertisements and inducements

19   were made in California and throughout the United States and come within the definition of

20   advertising as contained in Business and Professions Code §17500, *et seq.*, in that the product

21   packaging, labeling, and promotional materials were intended as inducements to purchase

22   Defendants' Misbranded Product and are statements disseminated by Defendants to Plaintiffs and

23   the members of the putative class.  Defendants knew, or in the exercise of reasonable care should

24   have known, that these statements were untrue.

25       106.    In furtherance of its plan and scheme, Defendants prepared and distributed in

26   California and nationwide via product packaging and labeling, and other promotional materials,

27   statements that falsely advertise the composition of Defendants' Misbranded Products, and falsely

28   misrepresented the nature of those products.  Plaintiffs and the members of the putative class were

CLASS ACTION COMPLAINT

1   the intended targets of such representations and would reasonably be deceived by Defendants'

2   materials.

3       107.   Defendants' conduct in disseminating untrue advertising throughout California

4   deceived Plaintiffs and the members of the putative class by obfuscating the contents, nature, and

5   quality of Defendants' Misbranded Products, in violation of the "untrue prong" of California

6   Business and Professions Code § 17500.

7       108.   As a result of Defendants' violations of the "untrue prong" of California Business

8   and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of

9   Plaintiffs and the members of the putative class. Misbranded products cannot be legally sold or

10  held and have no economic value and are legally worthless. Plaintiffs and the members of the

11  putative class paid a premium price for the Misbranded Products.

12      109.   Plaintiffs and the members of the putative class, pursuant to Business and

13  Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants,

14  and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

15  gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the

16  members of the putative class.

**SIXTH CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq.***

20      110.   Plaintiffs incorporate by reference each allegation set forth above.

21      111.   This cause of action is brought pursuant to the Consumers Legal Remedies Act,

22  California Civil Code §§ 1750, *et seq.* (the "CLRA").

23      112.   Plaintiffs and each member of the putative class are "consumers" within the

24  meaning of Civil Code § 1761(d).

25      113.   The purchases of the Defendants' Misbranded Products by consumers constitute

26  "transactions" within the meaning of Civil Code § 1761(e), and the Misbranded Products offered

27  by Defendants constitute "goods" within the meaning of Civil Code § 1761(a).

28  ///

CLASS ACTION COMPLAINT

114. Defendants have violated, and continue to violate, the CLRA in at least the following respects:

    a.   In violation of Civil Code § 1770(a)(5), Defendants represented that the Misbranded Products had characteristics which they did not have;

    b.   In violation of Civil Code § 1770(a)(7), Defendants represented that the Misbranded Products were of a particular standard, quality, or grade, of which they were not; and

    c.   In violation of Civil Code § 1770(a)(9), Defendants advertised the Misbranded Products with the intent not to provide what it advertised.

115. As a direct and proximate cause of Defendants' violation of the CLRA as alleged hereinabove, Plaintiffs and members of the putative class have suffered damages, including but not limited to inducing them to purchase the Misbranded Products and pay a premium therefor where such products did not conform to Defendants' representations, thereby causing Plaintiffs and putative class members to incur a pecuniary loss.

116. Pursuant to California Civil Code § 1780, Plaintiffs, on behalf of themselves and the putative class, seek damages, restitution, injunctive relief, punitive damages, attorneys' fees, and the costs of litigation.

## SEVENTH CAUSE OF ACTION

### Restitution Based on Quasi-Contract/Unjust Enrichment

117. Plaintiffs incorporate by reference each allegation set forth above.

118. Defendants' conduct in enticing Plaintiffs and putative class members to purchase the Misbranded Products through their false and misleading advertising and packaging as described throughout this Complaint is unlawful because the statements contained on Defendants' product labels are untrue.

119. Defendants' took monies from Plaintiffs and members of the putative class for products that purported to comply with the representations set forth above, even though the Misbranded Products did not conform to these representations.

///

23

CLASS ACTION COMPLAINT

120.    Defendants have been unjustly enriched at the expense of Plaintiffs and the putative class as result of Defendants' unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and putative class members.

121.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and putative class members are entitled to restitution or restitutionary disgorgement, in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the putative class, pray as follows:

A.    For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed the Class Representatives, and that Plaintiffs' counsel be appointed counsel for the class;

B.    For restitution in such amount that Plaintiffs and all putative class members paid to purchase the Misbranded Products, or the premiums paid therefor on account of the misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendants have obtained from those transactions;

C.    For compensatory damages for causes of action for which they are available;

D.    For statutory damages allowable under Civil Code § 1780;

E.    For punitive damages for causes of action for which they are available;

F.    For a declaration and order enjoining Defendants from advertising their products misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other applicable laws and regulations as specified in this Complaint;

G.    For an order awarding reasonable attorneys' fees and the costs of suit herein;

H.    For an award of pre- and post-judgment interest;

I.    For an order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants' as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

24

CLASS ACTION COMPLAINT

1        J.      Such other and further relief as may be deemed necessary or appropriate.

2                                                Respectfully submitted,

3    DATED:        April 1, 2014                  COUNSELONE, PC

4

5                                        By _____
                                             Anthony J. Orshansky
6                                            Attorneys for Plaintiffs and the Putative Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        25
                            CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED:      April 1, 2014          COUNSELONE, PC


By _____
       Anthony J. Orshansky
       Attorneys for Plaintiffs and the Putative
       Class

26

CLASS ACTION COMPLAINT

# EXHIBIT A





# EXHIBIT B



CONTAINS NO FRUIT JUICE

GLUTEN FREE

# Nutrition Facts
Serving Size 1 Can

**Amount Per Serving**

**Calories 0**

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carb** 0g | **0%** |
| **Sugars** 0g | |
| **Protein** 0g | **0%** |

*Percent Daily Values are based on a 2,000 calorie diet. Not a significant source of other nutrients.

CONTAINS: PURE TRIPLE FILTERED CARBONATED WATER, CITRIC ACID, NATURAL POTASSIUM CITRATE, ACESULFAME POTASSIUM, SUCRALOSE (SPLENDA® BRAND), NATURAL FRUIT FLAVORS WITH EXTRACTS OF WASHINGTON BLACK CHERRIES.

300148 0311

0 70847 87600 7

PLEASE RECYCLE

© 2011 Hansen Beverage Company
CANNED UNDER THE AUTHORITY OF THE HANSEN BEVERAGE COMPANY
CORONA, CA 92880 U.S.A. www.hansens.com

12 FL OZ (354 mL)

MADE IN USA   3 03 19 N3 MH

NO CAF