1  ANTHONY J. ORSHANSKY, SBN 199364
   anthony@counselonegroup.com
2  JUSTIN KACHADOORIAN, SBN 260356
   justin@counselonegroup.com
3  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
4  Beverly Hills, California 90210
   Telephone: (310) 277-9945
5  Facsimile: (424) 277-3727

6  Attorneys for Plaintiffs
   OSIE MARSHALL, YASNA CUEVAS, JOHN
7  VAN ES,  on behalf of themselves and others
   similarly situated

8

9              **UNITED STATES DISTRICT COURT**

10

11        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12  OSIE MARSHALL, YASNA            | Case No. 2:14-cv-06311-MMM (PLAx)
    CUEVAS, JOHN VAN ES, on behalf  |
13  of themselves and others similarly | **FIRST AMENDED CLASS ACTION**
    situated,                        | **COMPLAINT FOR:**
14
                Plaintiffs,          | **(1) Unlawful Business Practices
15                                   |      (Cal. Bus. & Prof. Code § 17200
          v.                         |      et seq.)**
16
    MONSTER ENERGY COMPANY,          | **(2) Unfair Business Practices (Cal.
17  dba HANSEN BEVERAGE              |      Bus. & Prof. Code § 17200 et
    COMPANY, and DOES 1 through 10,  |      seq.)**
18  inclusive,
                                     | **(3) Fraudulent Business Practices
19              Defendants.          |      (Cal. Bus. & Prof. Code § 17200
                                     |      et seq.)**
20
                                     | **(4) Misleading Advertising (Cal.
21                                   |      Bus. & Prof. Code § 17500 et
                                     |      seq.)**
22
                                     | **(5) Untrue Advertising (Cal. Bus. &
23                                   |      Prof. Code § 17500 et seq.)**

24                                   | **(6) Violation of the Consumer
                                     |      Legal Remedies Act, Cal. Civ.
25                                   |      Code §§ 1750 et seq.**

26                                   | **(7) Restitution Based on Quasi-
                                     |      Contract / Unjust Enrichment**
27
                                     | **DEMAND FOR JURY TRIAL**
28

1    Plaintiffs OSIE MARSHALL, YASNA CUEVAS, JOHN VAN ES

2  (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated,

3  complain of MONSTER ENERGY COMPANY, a Delaware corporation, dba

4  HANSEN BEVERAGE COMPANY, and DOES 1 through 10, inclusive, as

5  follows:

6                              **JURISDICTION**

7    1.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1441(a) based

8  on 18 U.S.C. § 1332(d).  This is a putative class action whereby:  (i) the proposed

9  nationwide class consists of more than 100 members; (ii) at least some class

10  members have a different citizenship from Defendants; and (iii) the claims of the

11  proposed class exceed $5,000,000.00 in the aggregate.

12                             **INTRODUCTION**

13    2.    Plaintiffs bring this action pursuant to Code of Civil Procedure § 382

14  against Defendants Monster Energy Company dba Hansen Beverage Company

15  ("Hansen"), and Does 1 through 50, inclusive (collectively with Hansen,

16  "Defendants"), on behalf of all consumers in the United States within four years of

17  the filing of this lawsuit who within the last four years have purchased any of the

18  "Misbranded Products," which include all Hansen's Juices or Juice Box products,

19  all Hansen's Smoothie Nectar products, all Hubert's Lemonade products, all Aguas

20  Frescas products, all Hansen's Natural Fruit and Tea Stix products, all Vidration

21  products, all Hansen's sodas, all Blue Sky sodas, Energy Pro, Diet Red, and all Blue

22  Energy products (energy, juice, coffee).  The labels for each of these products carry

23  representations about the ingredients or alleged healthful properties of the products

24  that are intended to induce, and have induced, consumers to purchase the products.

25  These representations, however, are false, misleading, and unlawful for the reasons

26  alleged below.

27    3.    Plaintiffs allege that Defendants' conduct violates California's Business

28  and Professions Code sections 17200, et seq. (the Unfair Competition Law, or

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

1  "UCL"), California's Business and Professions Code sections 17500, et seq. (the

2  False Advertising Law, or "FAL"), and  the Consumers Legal Remedies Act of the

3  California Civil Code sections 1750, et seq. (the "CLRA").  Plaintiffs also allege

4  that Defendants' conduct is grounds for restitution on the basis of quasi-

5  contract/unjust enrichment.

6       4.     Plaintiffs seek damages and restitution stemming from Defendants'

7  false labeling and advertising.  Plaintiffs also seek declaratory and injunctive relief

8  to ensure that Defendants remove any and all false or misleading labels and

9  advertisements relating to the Misbranded Products and to prevent them from

10  making similar representations in the future.

11                                   **PARTIES**

12       5.     Hansen has its headquarters in Corona, California, and upon

13  information and belief operates, manages and directs its nationwide sales and

14  business operations from its offices in California.  Hansen also maintains

15  manufacturing, storage, and distribution centers in California, from which Hansen

16  operates and directs the majority, or at least a substantial proportion, of its

17  nationwide sales and business operations.  It is therefore believed and averred that a

18  substantial portion of the misleading labeling and related misconduct at issue in this

19  Complaint occurred, was conducted, and/or was directed in and emanated from

20  California, including, but not limited to:  (a) the design of the Defendants'

21  packaging; (b) the review, approval and revision of Defendants' products and

22  labeling; (c) the selection and integration of ingredients into the Defendants'

23  products; (d) the distribution of the Defendants' products; and (e) the management

24  and supervision of sales operations to Plaintiffs and the putative classes (as defined

25  herein).

26       6.     The true names and capacities, whether individual, corporate, associate,

27  or whatever else, of the defendants sued herein as Does 1 to 10, inclusive, are

28  currently unknown to Plaintiffs, who therefore sue these defendants by such

2

**FIRST AMENDED CLASS ACTION COMPLAINT**
Case No. 2:14-cv-06311- MMM (PLAx)

fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as Does is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Does when their identities become known.  (As used herein, "Defendants" refers to Hansen and Does 1 to 10, inclusive.)

7.     Plaintiffs are informed and believe and thereon allege that each defendant acted in all respects pertinent to this action as the agent of the other Defendants, that Defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to the other Defendants.

## BACKGROUND

8.     Hansen deceptively labels and advertises the Misbranded Products in the following ways—all of which create the impression that the Misbranded Products are natural, healthy beverages.

### *Hansen Unlawfully Claims That the Misbranded Products Are Natural.*

9.     Hansen advertises, labels, and represents the Misbranded Products as being "Natural," "100% Natural," or "All Natural."  These claims appear on the product labels and even in the product names of the Misbranded Products.  This claim is reinforced on Hansen's website, which depicts a verdant field, trees, a blue sky, and butterflies.  Some of the Misbranded Products labeled as natural also state that they are "naturally sweetened with Truvia."  (*See* sample product labels, attached as Exh. A.)

10.     These representations are false or, at best, deceptive and misleading. Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[1]  Moreover, "all" is defined as "the whole

---

[1] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

extent or quantity of."[2]  Thus the combined use of "all natural" on the labels of the Mislabeled Products indicates to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the food products are "produced or existing in nature; not artificial or manufactured."

11.     Although the Food and Drug Administration ("FDA") does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color additives, artificial flavors, or synthetic substances.[3]  Specifically, the FDA states:  "[T]he agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).  The FDA has issued numerous warning letters owing to the presence of synthetic ingredients such as ascorbic and citric acid in so-called "natural" products without proper identification.

12.     This policy is consistent with consumers' understanding of the word "natural." Consumers understand "natural" to exclude synthetic ingredients, food additives, or chemical preservatives.  In a 2007 survey conducted by the Natural Marketing Institute, the majority of respondents believed that the term "natural" in a product label meant that the product contained 100 percent natural ingredients, no artificial flavors, no artificial colors, no preservatives, no chemicals, and a substantial percentage thought that it meant that the product was not highly processed.  Moreover, 81 percent of respondents found products claiming to be "natural" very/somewhat important when purchasing food or beverage products.  And large majorities also found that products containing no preservatives, no artificial ingredients, no artificial flavors, and no artificial colors to be

---

[2]  *Id.*, "all," definition no. 1 at p. 36.
[3]  *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.

4

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

very/somewhat important when purchasing food and beverage products. These percentages are even larger among the health-conscious segments of the US population, which are large—approximately 40 percent. What is more, the survey found that these trends have increased from previous years, and consequently the subject labeling statements are probably far more important to consumers today. Significantly, the survey also found that package labeling was by far the most important source of information influencing consumers' purchasing decisions, especially among the health-conscious segment of the population.

13.    The labeling of products as "natural" or "all natural" (or words of similar import) carries implicit health benefits important to consumers—benefits for which consumers are willing to pay a premium over comparable products that are not so labeled and marketed. Defendants have cultivated and reinforced a corporate image based on this theme, which they have emblazoned on almost all of the Misbranded Products and even use the word "natural" in the trade name of certain products (e.g., sodas and juices), despite the use of synthetic ingredients in these products. The presence of synthetic ingredients in the Misbranded Products renders Defendants' product labels and advertising false and misleading.

14.    Moreover, like the FDA, the United States Department of Agriculture ("USDA"), which regulates the labeling of meat and poultry, has also set limits on the use of the term "natural." The USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."

15.    According to the USDA, "[m]inimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices."[4] However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[5]

16.     Under USDA policy, a product cannot be labeled as being "natural" if an ingredient would significantly change the character of the product to the point that it could no longer be considered a natural product.  Moreover, any product purporting to be "natural" must conspicuously identify any synthetic ingredients used on the label (e.g., "all natural ingredients except dextrose, modified food starch, etc.").  For example, a "turkey roast" cannot be called a "natural" product if it contains beet coloring but can still bear the statement "all natural ingredients modified by beet coloring."  Defendants do not, however, include any such limiting language on the Misbranded Products.[6]

17.     Although not binding on food manufacturers outside the USDA's jurisdiction, the agency's natural policy is consistent with and, owing to its widespread use in food products, shapes consumers' understanding of what natural means on food labels.

18.     The terms "synthetic" and "artificial" closely resemble each other and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[7]  In the scientific community, "synthetic" includes substances that are also "artificial,"

---

[4] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited December 18, 2013).
[5] *Ibid.*
[6] *Ibid.*
[7] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ (last visited December 18, 2013).

6

but a synthetic substance also can be artificial or non-artificial.[8]  However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic."  Indeed Webster's New World Dictionary defines "artificial" as "anything made by human work, especially if in intimation of something natural," whereas "synthetic" is defined as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[9]

19.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also* 7 C.F.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

20.     The Misbranded Products are not natural because they actually contain synthetic ingredients (e.g., citric acid, ascorbic acid, phosphoric acid, tartaric acid, calcium lactate, calcium gluconate) and color additives (e.g., grape skin extract, fruit and vegetable juice).  *See* 21 C.F.R. § 101.9(c)(8)(v), 101.36(d), 101.36(e)(11)(i).

21.     Although these substances may occur naturally, the ingredients Hansen uses are chemically manufactured and highly processed—thus rendering them not natural.

22.     Moreover, Truvia is not natural because its primary ingredient is erythritol, a sugar alcohol usually made by processing genetically modified corn.  In fact, Truvia uses only a small amount of the stevia extract Rebiana A ("Reb A"), which is itself a chemically processed form of stevia and hence not natural.

---

[8] *Ibid.*
[9] *See* Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

7

However, the ingredient statement on the Misbranded Products claiming to be "sweetened with Truvia" does not even disclose the existence of erythritol, only Reb A, even though Reb A constitutes only one percent of Truvia.

23.     The Misbranded Products also boast that they contain a substantial percentage of vitamins and antioxidants such as vitamins C and E. These claims appear both on product labels and in advertising material. For example, Hansen's webpage for Apple Grape Juice states, "Besides great taste, there's the added benefit of naturally occurring antioxidants, as well as 120% Vitamin C. Not a drop of sugar or a speck of preservatives added."

24.     Hansen misrepresents the provenance of the vitamin C and leads consumers to believe that both it and the claimed antioxidant activity in the Misbranded Products are derived from fruit and not chemical sources.

25.     Further, Hansen's Diet Sodas are misbranded because although they purport to be "naturally flavored," they contain artificial flavors such as citric acid and phosphoric acid, which impart a tangy or sour taste to the sodas. These artificial flavors appear in the ingredient statement of the sodas before the natural flavor extracts. (*See* diet soda label, attached hereto as Exh. B.) Indeed the natural flavor extract almost always appears last in the ingredient statement.

26.     Because the Misbranded Products contain artificial flavoring and chemical preservatives without stating this fact on the product labels, Defendants violated the California's Sherman Food, Drug, and Cosmetic Law, including California Health & Safety Code § 110740. In this way, Defendants have also violated California Health & Safety Code § 110705 because words, statements, or other information required pursuant to the Sherman Law to appear on the label or labeling are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

8

27.      Throughout the class period and as recently as 2014, Plaintiff Marshall purchased numerous Hansen's products purporting to be "natural," "all natural," "100% natural," "naturally flavored," and/or "naturally sweetened with Truvia" including but not limited to Hansen's diet and regular sodas (Creamy Root Beer, Original Cola, Tangerine Lime, Club Soda), Blue Sky and Blue Sky Free sodas (including Jamaican Ginger Ale, Ginseng Cola, Organic Black Cherry Cherish, Mandarin Lime, Lemonade), Blue Sky Energy (Vanilla Sky and Mocha Mountain), Blue Sky Juiced Energy, Hansen's Juices (Acai Blueberry), Juice Boxes (Strawberry Banana), Junior Juice (Apple Grape, Garden Twist Apple Mango), and Hubert's Lemonade (Black Tea and Cherry Limeade).

28.      Throughout the class period and as recently as 2014, Plaintiff Cuevas purchased numerous Hansen's products purporting to be "natural," "all natural," "100% natural," or "naturally flavored" including but not limited to Hansen's diet and regular sodas (Vanilla Cola, Black Cherry, Original Cola, Ginger Ale), Blue Sky sodas (Creamy Root Beer, Organic Ginger Ale), Blue Sky Recovery, Angeleno Aguas Frescas (Melon), Peace Tea (Pink Lemonade Tea), Smoothie Nectar (Mango Pineapple), Vidration (Dragon Fruit Power), and Hansen's Energy Diet Red.

29.      Throughout the class period and as recently as 2014, Plaintiff Van Es purchased numerous Hansen's products purporting to be "natural," "all natural," "100% natural," "naturally flavored," and/or "naturally sweetened with Truvia" including but not limited to Hansen's Organic Apple Juice, Hansen's Juice Box (Burstin' Berry), Hansen's regular and diet sodas (Kiwi Strawberry), Hubert's Lemonade (Half & Half Raspberry), Hansen's Fruit & Tea Stix (including Natural Fruit Punch).

30.      Before buying the foregoing products, Plaintiffs saw pictures of fruit on the product labels and read and relied on statements that these products were "Natural," "100% Natural," "All Natural," "naturally flavored," and "naturally sweetened with Truvia."  Plaintiffs also read and relied upon the representations that

9

the products contained "no preservatives" (on the products identified below) and contained "100 % juice" (on the products identified below).  Plaintiffs understood these representations as meaning there was nothing artificial, synthetic, chemically fabricated, or highly processed in the products.

31.   Plaintiffs not only purchased these products because of the identified representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products or as much of these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

***Hansen Unlawfully Claims the Misbranded Products Contain "No Preservatives."***

32.   Rather than disclose the presence of chemical preservatives as required by law, Defendants state the opposite through labeling statements claiming the Misbranded Products contain "no preservatives."  (See example product labels, attached as Exh. C.)

33.   The Federal Regulations require food and beverage manufacturers to disclose the presence of chemical preservatives "on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food."  21 CFR § 101.22(c).

34.   "The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances

added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 CFR § 101.22(a)(5).

35.   Pursuant to 21 C.F.R. § 101.22(j), a food to which a chemical preservative(s) is added shall, except when exempt pursuant to 21 C.F.R. § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention."

36.   The Misbranded Products fail to comply with the requirements of 21 C.F.R. § 101.22. Because many of the Misbranded Products have lengthy shelf-lives, they contain a number of chemical preservatives such as ascorbic acid, citric acid, and vitamin E; however, the labels of these products fail to describe the function of these chemical preservatives, thus violating the law and concealing their presence.

37.   Ascorbic acid, citric acid, and vitamin E are not types of common salt, sugar, vinegar, spice, or oil extracted from spices, nor are they substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties. As used by Defendants in their products, these chemicals prevent or retard deterioration of the products. Therefore these chemicals are "chemical preservatives" in Hansen's products, as defined in 21 C.F.R. § 101.22(a)(5), and must be disclosed and identified as such.

38.   Throughout the class period and as recently as 2014, Plaintiff Marshall purchased Hansen's products purporting to contain "no preservatives" including but not limited to Hansen's regular and diet sodas (Creamy Root Beer, Original Cola, Club Soda, Tangerine Lime), Blue Sky regular and light sodas (Jamaican Ginger Ale, Ginseng Cola, Mandarin Lime, Lemonade) Blue Sky Energy, Hansen's juices (Acai Blueberry), Hansen's Juice Boxes (Strawberry Banana),  Hansen's Junior Juice (Apple Grape, Garden Twist Apple Mango), and Hubert's Lemonade (Cherry Limeade).

39.     Throughout the class period and as recently as 2014, Plaintiff Cuevas purchased Hansen's products purporting to contain "no preservatives" including but not limited to Hansen's regular and diet sodas (Vanilla Cola, Black Cherry, Cola, Ginger Ale), Blue Sky sodas (Ginseng Creamy Root Beer), Blue Sky Recovery Energy, Peace Tea (Pink Lemonade), Smoothie Nectar (Mango Pineapple), Vidration (Dragon Fruit Power), and Hansen's Energy (Diet Red).

40.     Throughout the class period and as recently as 2014, Plaintiff Van Es purchased Hansen's products purporting to contain "no preservatives" including but not limited to Hansen's juice (Organic Apple), Juice Boxes (Burstin' Berry), Hansen's Regular and Diet Sodas (Ginger Ale, Kiwi Strawberry), Hubert's Fruit and Tea Stix (Natural Fruit Punch).

41.     Before buying the foregoing products, Plaintiffs read and relied on statements on the product labels stating that these products contained "no preservatives," as well as the statements that the products contained "100 % juice" (on the products identified below) and were "Natural," "100% Natural," "All Natural," "naturally flavored," and "naturally sweetened with Truvia" (on the products identified above).  Plaintiffs not only purchased these products because of the identified representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products or as much of these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

*Hansen Unlawfully Claims That the Misbranded Products Contain*
*"100% Juice."*

3    42.    Hansen's juice products claim to be made with 100 percent juice.  (See
4  example product labels, attached as Exh. D.)

5    43.    However, this is false owing to the addition of numerous synthetic,
6  non-juice ingredients.  A beverage purporting to be juice must contain a percentage
7  juice declaration.  *See* 21 C.F.R. § 101.30(a).  Where non-juice ingredients result in
8  a diminution of the juice soluble solids or a change in the volume of the product,
9  then the 100 percent juice declaration is inappropriate.  *Id.* at subdiv. (b)(3).
10  Moreover, even where there is no diminution of juice soluble solids or change in
11  volume, a 100 percent juice declaration is unlawful unless it is accompanied by the
12  phrase "with added ___," the blank being filled in with a term such as
13  "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice
14  with added sweetener").  *Ibid.*

15    44.    Because the Misbranded Products do not contain this additional
16  language, they are mislabeled, and a reasonable consumer would be misled into
17  believing that he or she is purchasing a product that contains 100 percent juice and
18  nothing else.

19    45.    Throughout the class period and as recently as 2014, Plaintiff Marshall
20  purchased Hansen's products purporting to contain "100% juice" including but not
21  limited to Hansen's Apple Orange Pineapple Juice, Hansen's Strawberry Banana
22  Juice Boxes, and Hansen's Apple Grape Junior Juice.

23    46.    Throughout the class period and as recently as 2014, Plaintiff Van Es
24  purchased Hansen's products purporting to contain "100% juice" including but not
25  limited to Hansen's Burstin' Berry, Totally Tropical Juice Boxes, and Hansen's
26  Organic Apple Juice.

27    47.    Before buying the foregoing products, Plaintiffs Marshall and Van Es
28  saw pictures of fruit on the product labels and read statements that these products

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

contained "100% juice," along with statements that products contained "no preservatives" and were "Natural," "100% Natural," and "All Natural" (on the products identified above).

48.    Plaintiffs not only purchased these products because of the identified representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products or as much of these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

### Hansen Unlawfully Claims That the Misbranded Products Contain No Added Sugar.

49.    Hansen's juice products are intended to appeal to consumers who are concerned with their sugar and caloric intake.  In order to target sales to this demographic Hansen claims that the misbranded juice products contain "No Sugar Added."  (See example product labels, attached as Exh. E.)  This claim is reinforced on Hansen's website, which states that certain products, such as Apple Raspberry Juice, are "naturally sweetened" with Truvia.

50.    The Misbranded Products are mislabeled because they make the nutrient content claim "No Sugar Added" but are made from concentrated fruit juices.  A manufacturer is prohibited from using the term "No Added Sugar" where the product contains concentrated fruit juice.  *See* 21 C.F.R. § 101.60(c)(2)(ii).  Defendants also use concentrated fruit juices that functionally substitute for added sugars, in violation of 21 C.F.R. § 101.60(c)(2)(i).  For example, some juices like

14

Hansen's Juice Box Burstin' Berry, purchased by Plaintiff Van Es, is sweetened with concentrates (apple, pear) that are distinct from characterizing flavor (berry). Another example is Hansen's Cranberry juice, purchased by Plaintiff Marshall, which primarily consists of grape and apple juice concentrates.

51. A product purporting to have "No Added Sugar" must also bear a statement that the food is not "low calorie" or "calorie reduced" unless the product meets the requirements for making such claims. *Id.* at subdiv. *Id.* at subdiv. (c)(2)(v). These products do not qualify as low-calorie foods because they provide more than 40 calories per reference amount customarily consumed. *See* 21 C.F.R. § 101.60(b)(2). However, the Misbranded Products do not carry the required disclaimer, nor do they, as required, "direct[] consumers' attention to the nutrition panel for further information on sugar and calorie content." 21 C.F.R. § 101.60(c)(2)(v).

52. The "no sugar added" representation is also misleading and unlawful under 21 C.F.R. § 101.60(c)(2)(iv) because they are not products that would normally contain added sugars, and consequently consumers are deceived into believing they are buying products that contains less sugar than other juice products.

53. Because consumers may reasonably be expected to regard terms that represent that a product contains "no sugar added" as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented through the use of phrases like "no sugar added" which they are not allowed to bear owing to high-calorie levels and the absence of the mandated disclaimer or disclosure requirements.

54. Throughout the class period and as recently as 2014, Plaintiff Marshall purchased Hansen's products purporting to contain "no sugar added" including but not limited to Hansen's Juice Boxes (Strawberry Banana), Junior Juice (Apple Grape), and juice (Cranberry, Cranberry Apple, Cranberry Grape).

15

55.     Throughout the class period and as recently as 2014, Plaintiff Van Es purchased Hansen's products purporting to contain "no sugar added" including but not limited to Hansen's Juice Boxes (Burstin' Berry, Totally Tropical) and juice (Grape)

56.     Before buying the foregoing products, Plaintiffs Marshall and Van Es read and relied upon the statements that these products contained "no sugar added," along with representations, as identified above, that the products contained "100% juice."

57.     Plaintiffs not only purchased these products because of the identified representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products or as much of these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

### Hansen Unlawfully Misbrands the Products Made from Concentrate.

58.     Hansen's juice products are misbranded because they do not comply with regulations governing juices made from concentrate.   *See* 21 C.F.R. § 102.33(g)(1).  These regulations require the name of a beverage that is made from concentrate to include a term indicating that fact, such as "from concentrate" or "reconstituted."  *Ibid.*  The regulations further provide that "such terms must be included in the name of each individual juice or . . . once adjacent to the product name so that it applies to all the juices." *Ibid.*  Further, "[t]he term shall be in a type size no less than one-half the height of the letters in the name of the juice."

16

59.     Hansen's juice products are misbranded because although the labels include a statement that the juice is from concentrate, in many instances this statement is small, less than one-half the height of the letters in the name of the juice, and purposely positioned to mislead the average consumer, which again violates California law.  *See* California Health & Safety Code § 110705.  (See example product labels, attached as Exh. F.)

60.     Throughout the class period and as recently as 2014, Plaintiff Marshall purchased Hansen's products made from concentrate including but not limited to Hansen's Juice Boxes (Strawberry Banana), Junior Juice (Coconut Water Twist Very Berry, Garden Twist Apple Mango, Apple Grape), and juice (Cranberry, Cranberry Apple, Cranberry Grape).

61.     Throughout the class period and as recently as 2014, Plaintiff Van Es purchased Hansen's products made from concentrate including but not limited to Hansen's Juice Boxes (Burstin' Berry, Totally Tropical) and juice (Grape, Organic Apple)

62.     Before buying the foregoing products, Plaintiffs Marshall and Van Es did not see, remark, or appreciate that the statements on the product labels that the juices were from concentrate and believed, together with the "100 % juice," "no preservatives," and "natural" representations, that the juice products contained fruit juice that was not from concentrate.

63.     Plaintiffs purchased these products because of Defendants' failure to properly identify that that juices came from concentrate and paid more money than they would have had to pay for other similar products that did not make such representations.  Plaintiffs would not have purchased these products or as much of these products had they known that they were unlawfully labeled.  Had Plaintiffs known that Defendants' representations were unlawful, false, or deceptive, they would not have purchased these products but would have purchased brands that accurately represented the product or, if these were not available, would have

17

1   purchased less expensive products that did not make such representations.  In this

2   way, Plaintiffs did not receive the products they had bargained for and have lost

3   money as a result in the form of paying money to Defendants and paying a premium

4   for Defendants' products owing to the misrepresentations.

5   ***Hansen Unlawfully Claims the Misbranded Products Are "Sweetened with***

6   ***Splenda."***

7   64.   Hansen's Diet Sodas claim to be sweetened with Splenda, an artificial

8   sweetener purportedly derived from sugar, and the front labels often show a Splenda

9   logo.  (See example product labels, attached as Exh. G.)

10   65.   This claim is deceptive because these products lead consumers to

11   believe they are sweetened only or primarily with Splenda when in fact they are also

12   sweetened with acesulfame potassium, a different artificial sweetener that has been

13   linked to medical conditions such as impaired cognitive function and is therefore

14   avoided by many consumers.[10]

15   66.   The statement "Sweetened with Splenda" is rendered additionally

16   deceptive because the ingredient statements disclose that acesulfame potassium is

17   often the *primary* sweetener in these products, with Splenda being secondary.

18   67.   Throughout the class period and as recently as 2014, Plaintiff Marshall

19   purchased Hansen's diet sodas purporting to be "sweetened with Splenda,"

20   including but not limited to Tangerine Lime and Creamy Root Beer.

21   68.    Throughout the class period and as recently as 2014, Plaintiff Cuevas

22   purchased Hansen's diet sodas purporting to be "sweetened with Splenda,"

23   including but not limited to Black Cherry and Original Cola, as well as Hansen's

24   Vidration Dragon Fruit Power.

25   69.   Throughout the class period and as recently as 2014, Plaintiff Van Es

26   purchased Hansen's diet sodas purporting to be "sweetened with Splenda,"

27   ───────────────

[10]  *See* Cong, et al. "Long-Term Artificial Sweetener Acesulfame Potassium Treatment Alters
Neurometabolic Functions in C57BL/6J Mice," *PLoS ONE,* Aug. 7, 2013, available at

28   http://www.plosone.org/article/info%3Adoi%2F10.1371%2Fjournal.pone.0070257 Center for Science in
the Public Interest, http://www.cspinet.org/reports/asequot.html

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

1  including but not limited to Kiwi Strawberry and Pomegranate.

2      70.    Before buying the foregoing products, Plaintiffs read and relied upon

3  the statements that these products were "sweetened with Splenda."

4      71.    Plaintiffs not only purchased these products because of the "sweetened

5  with Splenda" representations but also paid more money than they would have had

6  to pay for other similar products that did not make similar representations.  Indeed,

7  had Plaintiffs known that Defendants' representations were false or deceptive, they

8  would not have purchased these products or as much of these products but would

9  have purchased brands that accurately represented the product or, if these were not

10  available, would have purchased less expensive products that did not make such

11  representations.  In this way, Plaintiffs did not receive the products they had

12  bargained for and have lost money as a result in the form of paying money to

13  Defendants and paying a premium for Defendants' products owing to the

14  misrepresentations.

15      ***Hansen Unlawfully Fortifies the Misbranded Products.***

16      72.    Hansen claims that many of the Misbranded Products such as its Blue

17  Sky sodas and Hansen's Juice Boxes contain vitamins and antioxidants including

18  ascorbic acid (synthetic vitamin C), beta carotene (synthetic vitamin A), and

19  tocopherols (synthetic vitamin E).  However, these vitamins and antioxidants are not

20  naturally occurring; rather, Hansen fortifies these products with synthetic vitamins

21  and antioxidants.  (See example product labels, attached as Exh. H.)

22      73.    This is improper.  "The Food and Drug Administration does not

23  encourage indiscriminate addition of nutrients to foods, nor does it consider it

24  appropriate to fortify … snack foods such as candies and carbonated beverages."  21

25  CFR § 104.20(a).  A nutrient cannot be added to a food or beverage unless it is

26  physiologically available from the food.  *Id.* at subdiv. (g). A manufacturer may not

27  make false or misleading statements regarding the addition of vitamins or minerals.

28  *Id.* at subdiv. (h).

19

74.     Hansen violates federal labeling law by fortifying snack foods and carbonated beverages with vitamins and antioxidants.  Vitamins such as vitamins A and E are not physiologically available when added to beverages because they are fat soluble, meaning that they cannot be absorbed by the body in the absence of fat, which the Misbranded Products do not contain, and hence these products are misbranded under 21 C.F.R. § 104.20(h).  Moreover, Hansen advertises some beverages such as its Blue Sky Ginseng sodas as having added vitamins and/or antioxidants; for example, the principal display panel of Blue Sky Ginseng Creamy Root Beer, purchased by Plaintiff Cuevas, states immediately below the brand name Blue Sky, "Plus Antioxidants A, C, & E."   Similarly, Hansen's Apple Juice, purchased by Plaintiff Marshall, states on the principal display panel, "Plus 120% Vitamin C."  The FDA does not permit the use of the words "plus" with respect to a product containing added nutrients if the addition of the nutrients violates the fortification policy.  *See* 21 C.F.R. § 101.54(e).

75.     Moreover, Hansen deceptively represents that these sodas contain naturally occurring vitamins and antioxidants through the depiction on product labels of images of fruits such as raspberries and grapes with well-known antioxidant activity and vitamin content when in fact the Misbranded Products contain *added* vitamins and antioxidants.

76.     Throughout the class period and as recently as 2014, Plaintiff Marshall purchased Hansen's products purporting to contain vitamins and antioxidants including but not limited to Blue Sky Ginseng Jamaican Ginger Ale and Ginseng Cola, Blue Sky Energy, Hansen's Strawberry Banana Juice Box, Hansen's juice (Apple, Cranberry), and Hansen's Junior Juice (Coconut Water Twist Tropical Punch, Garden Twist Apple Mango).

77.     Throughout the class period and as recently as 2014, Plaintiff Cuevas purchased Hansen's products purporting to contain vitamins and antioxidants including but not limited to Blue Sky Ginseng Creamy Root Beer and Hansen's

20

Smoothie Nectar Mango Pineapple.

78.     Throughout the class period and as recently as 2014, Plaintiff purchased Hansen's products purporting to contain vitamins and antioxidants including but not limited to Hansen's Organic Apple Juice and Hansen's Juice Boxes (Burstin' Berry, Totally Tropical).

79.     Before buying the foregoing products, Plaintiffs read and relied upon the statements on the product labels that the products contained vitamins and antioxidants.

80.     Plaintiffs not only purchased these products because of these representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products or as much of these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

### Allegations as to the Named Plaintiffs

81.     Plaintiffs are and, throughout the entire class period, were residents of the State of California.  Plaintiffs are concerned about and try to avoid consuming foods that are not natural, such as products containing synthetic, artificial or chemical ingredients, as well as products that are high in sugar.  For this reason, Plaintiffs are willing to pay and have paid a premium for foods that are natural and have endeavored to refrain from buying equivalent foods which are not natural and which do contain synthetic, artificial, or chemical ingredients and are high in sugar.

82.     During the class period Plaintiff OSIE MARSHALL purchased, among other products, multiple Hansen's Soda and Diet Sodas, Hansen's Blue Sky Soda, Hansen's juice, Hansen's and Junior Juice and Juice Boxes, and Hubert's Lemonade from various markets throughout California.

83.     Plaintiff YASNA CUEVAS purchased, among other products, Hansen's Soda, Diet Soda, and Blue Sky Soda products, Angeleno Aguas Frescas, Hansen's Peace Tea, Hansen's Smoothie Nectar drinks, Hansen's Vidration, and Hansen's energy drinks from stores throughout California during the class period.

84.     Plaintiff JOHN VAN ES purchased, among other products, Hansen's juice and Juice Box Products, Hansen's Sodas and Diet Sodas, Hubert's Lemonade products, and Hansen's tea and fruit stix from stores throughout California during the class period.

85.     Before buying Hansen's products, Plaintiffs saw pictures of fruit on the product labels and read statements that these products were "Natural," "100% Natural," "All Natural," "naturally flavored," "naturally sweetened with Truvia," "GMO Free," and contained "No Preservatives," "100% juice," and specified antioxidants and vitamins, and Plaintiffs relied on these representations in deciding to buy the products.  Plaintiffs  understood these representations as meaning there was nothing artificial, synthetic, or chemically fabricated in the products, that they did not contain preservatives, and that the antioxidants were derived from natural sources (such as fruits) and were physiologically available when ingested.

86.     Consistent with this understanding, Plaintiffs did not see the small statements on some of the product labels that the juices came from concentrate. Plaintiffs also read the "no sugar added" statement on the products and believed that these were lower calorie or reduced-calorie drinks and/or were not sweetened using concentrated fruit juice (or other sweeteners) and/or were drawn to the products because of this label.  Plaintiffs relied on this front-of-the-package representation and did not scrutinize the nutrition panel for information on sugar and caloric

22

content.

87.     Moreover, Plaintiffs believed that sodas fortified with antioxidants and vitamins were healthier for themselves and their families because the vitamins and antioxidants were naturally occurring and could represent a source of the specified vitamins and antioxidants needed in their diets.

88.     Finally, Plaintiffs relied on label representations that Hansen's Diet Soda was sweetened with Splenda, which they preferred to other sweeteners because they believed that it was derived from sugar.

89.     Plaintiffs not only purchased these products because of the identified representations but also paid more money than they would have had to pay for other similar products that did not make similar representations.  Indeed, had Plaintiffs known that Defendants' representations were false or deceptive, they would not have purchased these products but would have purchased brands that accurately represented the product or, if these were not available, would have purchased less expensive products that did not make such representations.  In this way, Plaintiffs did not receive the products they had bargained for and have lost money as a result in the form of paying money to Defendants and paying a premium for Defendants' products owing to the misrepresentations.

90.     On or around September 13, 2013, Plaintiffs sent a letter to Hansen informing it that it has engaged in unfair methods of competition and/or deceptive acts or practices, including but not limited to violation of California Civil Code § 1770, in connection with the sale of the Misbranded Products, and requested that it correct, repair, replace, or otherwise rectify its unlawful conduct.  Hansen ultimately declined to correct, repair, replace, or otherwise rectify its unlawful conduct.  Because more than 30 days have elapsed since the receipt of Plaintiffs' letter, Plaintiffs herein seek actual, punitive, and statutory damages as appropriate on behalf of themselves and similarly situated consumers, as well as equitable including injunctive relief.

## **CLASS ALLEGATIONS**

91.     Plaintiffs bring this action on behalf of themselves and those similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  Plaintiffs seek to represent the following classes:  All persons in the United States or, alternatively, California who purchased one or more of the Misbranded Products from four years prior to the filing of the Complaint and continuing to the present.

92.     The class excludes counsel representing the class, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

93.     Plaintiffs reserve the right to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

94.     This action has been brought and may properly be maintained as a class action under the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the class is easily ascertainable.

### **A.     Numerosity**

95.      The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that the proposed classes include thousands of members.

### **B.     Common Questions Predominate**

96.     There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members.

24

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

These common questions of law and fact include:

     a.   Whether Defendants' conduct was a "fraudulent practice" within the meaning of the Unfair Competition Law ("UCL"), Business & Professions Code § 17200, in that it was likely to mislead consumers;

     b.   Whether Defendants' conduct was an "unfair practice" within the meaning of the UCL in that it offended established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

     c.   Whether Defendants' conduct was an "unlawful" practice within the meaning of the UCL;

     d.   Whether Defendants' conduct was likely to deceive a consumer acting reasonably in the same circumstances;

     e.   Whether Defendants advertise or market the Misbranded Products in a way that is false or misleading;

     f.   Whether Defendants violated California Business and Professions Code § 17500 et seq.;

     g.   Whether Defendants violated California Civil Code § 1750 et seq.;

     h.   Whether Plaintiffs and members of the putative class are entitled to restitution, injunctive, declaratory and/or other equitable relief;

     i.   Whether Defendants have been unjustly enriched through the misrepresentations alleged herein; and

     j.   Whether Plaintiffs and the members of the class sustained monetary loss.

**C.    Typicality**

97.   Plaintiffs' claims are typical of the claims of the members of the putative classes because Plaintiffs bought the Misbranded Products during the applicable class period.  Defendants' unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they

25

1   occurred or were experienced.  Plaintiffs and each class member sustained similar

2   injuries arising out of Defendants' conduct in violation of law.  The injuries of each

3   member of the class were caused directly by Defendants' wrongful conduct.  In

4   addition, the factual underpinning of Defendants' misconduct is common to all

5   members of the putative class and represents a common thread of misconduct

6   resulting in injury to all members of the class.  Plaintiff's claims arise from the same

7   practices and course of conduct that give rise to the claims of the members of the

8   putative class and are based on the same legal theories.

9         **D.**    **Adequacy**

10       98.   Plaintiffs will fairly and adequately represent and protect the interests of

11   the class.  Counsel who represent Plaintiffs and putative class members are

12   experienced and competent in litigating class actions.

13         **E.**    **Superiority of Class Action**

14       99.   A class action is superior to other available means for the fair and

15   efficient adjudication of this controversy.  Individual joinder of putative class

16   members is not practicable, and questions of law and fact common to putative class

17   members predominate over any questions affecting only individual putative class

18   members.  Each putative class member has been damaged and is entitled to recovery

19   by reason of Defendants' false labeling.  Moreover, because the damages suffered

20   by individual members of the class may be relatively small, the expense and burden

21   of individual litigation would make it difficult of impossible for individual members

22   of the class to redress the wrongs done to them, while an important public interest

23   will be served by addressing the matter as a class action.  Class-action treatment will

24   allow those persons similarly situated to litigate their claims in the manner that is

25   most efficient and economical for the parties and the judicial system.

26        100.   The prerequisites to maintaining a class action for injunctive or

27   equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met because Defendants

28   have acted or refused to act on grounds generally applicable to the class, thereby

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

1  making appropriate final injunctive or equitable relief with respect to the class as
2  whole.

3       101.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ.
4  P. 23(b)(3) are met because questions of law and fact common to each class member
5  predominate over any questions affecting only individual members, and a class
6  action is superior to other available methods for fairly and efficiently adjudicating
7  the controversy.

8       102.   Plaintiff is unaware of any difficulties in managing this case that should
9  preclude class action.

10  **FIRST CAUSE OF ACTION**

11  **Unlawful Business Practices in Violation of**

12  **Business and Professions Code § 17200, et seq.**

13       103.   Plaintiffs incorporate by reference each allegation set forth above.

14       104.   Defendants' conduct constitutes unlawful business acts and practices
15  under Business & Professions Code § 17200, et seq.

16       105.   Defendants sold Misbranded Products in California and throughout the
17  United States during the class period.

18       106.   Defendant Hansen is a corporation and, therefore, is a "person" within
19  the meaning of the Sherman Food Drug & Cosmetic Law, California Health &
20  Safety Code § 109875, et seq. (the "Sherman Law").  The Sherman Law adopts,
21  incorporates and is identical to the federal Food, Drug & Cosmetic Act, 21 U.S.C. §
22  301 *et seq.* ("FDCA").

23       107.   Defendants' business practices are unlawful under § 17200, et seq., by
24  virtue of Defendants' violations of the advertising provisions of Article 3 of the
25  Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

26       108.   Defendants' business practices are unlawful under Business &
27  Professions Code § 17200, et seq. by virtue of Defendants' violations of § 17500, et
28  seq., which forbids untrue and misleading advertising.

109.   Defendants' business practices are unlawful under Business & Professions Code § 17200, et seq. by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

110.   Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.

111.   Defendants sold Plaintiffs and members of the putative class Misbranded Products that were not capable of being sold or legally held and which had no economic value and were legally worthless.  Plaintiffs and each putative class member paid a premium price for the Misbranded Products.  Plaintiffs would not have purchased the Misbranded Products had they known that those products were illegal to sell and/or possess.

112.   As a result of Defendants' illegal business practices, Plaintiffs and the members of the putative class are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any putative class member any money paid for the Misbranded Products.

113.   Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each member of the putative class.

## SECOND CAUSE OF ACTION

### Unfair Business Practices in Violation of

### Business & Professions Code § 17200, et seq.

114.   Plaintiffs incorporate by reference each allegation set forth above.

115.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

28

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

misleading" advertising. Cal. Bus. & Prof. Code § 17200.

116.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

117.   Defendants' conduct as set forth herein constitutes unfair business acts and practices.

118.   Defendants sold Misbranded Products in California and throughout the United States during the class period.

119.   Plaintiffs and the members of the putative class suffered a substantial injury by virtue of buying Defendants' Misbranded Products, which they would not have purchased absent Defendants' illegal conduct.

120.   Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Products and their sale of unsalable misbranded products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

121.   Defendants sold Plaintiffs and the members of the putative class Misbranded Products that were not capable of being legally sold or held and that had no economic value and were legally worthless.  Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

122.   Plaintiffs and the members of the putative class who purchased Defendants' Misbranded Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

123.   The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendants' conduct is and continues to be unlawful, unscrupulous and contrary to public policy, and is substantially injurious to Plaintiffs and the members of the putative class.

29

124.   As a result of Defendants' conduct, Plaintiffs and the members of the putative class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Products by Plaintiffs and the members of the putative class.

**THIRD CAUSE OF ACTION**

**Fraudulent Business Practices in Violation of**

**Business and Professions Code § 17200, *et seq.***

125.   Plaintiffs incorporate by reference each allegation set forth above.

126.   Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

127.   Defendants sold Misbranded Products in California and throughout the United States during the class period.

128.   Defendants' misleading marketing, advertising, packaging, and labeling of the Misbranded Products and misrepresentation that the products were capable of sale, capable of possession, and not misbranded were likely to deceive reasonable consumers, and in fact Plaintiffs and the members of the putative class were deceived.

129.   Defendants' fraud and deception caused Plaintiffs and the members of the putative class to purchase Misbranded Products that they would otherwise not have purchased had they known the true nature of those products.

130.   Defendants sold Plaintiffs and the members of the putative class Misbranded Products that were not capable of being sold or legally held and that had no economic value and were legally worthless.  Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

131.   As a result of Defendants' conduct as set forth herein, Plaintiffs and each member of the putative class, pursuant to Business and Professions Code §

30

1  17203, are entitled to an order enjoining such future conduct by Defendants, and

2  such other orders and judgments which may be necessary to disgorge Defendants'

3  ill-gotten gains and restore any money paid for Defendants' Misbranded Products by

4  Plaintiffs and the members of the putative class.

5                          **FOURTH CAUSE OF ACTION**

6                      **Misleading Advertising in Violation of**

7             **Business and Professions Code § 17500, *et seq.***

8        132.   Plaintiffs incorporate by reference each allegation set forth above.

9        133.   Plaintiffs assert this cause of action for violations of California

10  Business and Professions Code § 17500*, et seq*., for misleading and deceptive

11  advertising against Defendants.

12        134.   Defendants sold Misbranded Products in California and throughout the

13  United States during the class period.  Defendants engaged in a scheme of offering

14  the Misbranded Products for sale to Plaintiffs and the members of the putative class

15  by way of, *inter alia*, product packaging and labeling, and other promotional

16  materials.  These materials misrepresented and/or omitted the true contents and

17  nature of Defendants' Misbranded Products.

18        135.   Defendants' advertisements and inducements were made within

19  California and throughout the United States and come within the definition of

20  advertising as contained in Business and Professions Code §17500, *et seq.*, in that

21  such product packaging and labeling, and promotional materials were intended as

22  inducements to purchase Defendants' Misbranded Food Products and are statements

23  disseminated by Defendants to Plaintiffs and the members of the putative class that

24  were intended to reach the members of the putative class.  Defendants knew, or in

25  the exercise of reasonable care should have known, that these statements were

26  misleading and deceptive as set forth herein.

27        136.   In furtherance of its plan and scheme, Defendants prepared and

28  distributed within California and nationwide via product packaging and labeling,

31

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendants' Misbranded Products. Plaintiffs and members of the putative class necessarily and reasonably relied on Defendants' material and were the intended targets of such representations.

137.   Defendants' conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the members of the putative class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendants' Misbranded Products, in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq*.

138.   As a result of Defendants' violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the members of the putative class. Misbranded products cannot be legally sold or held and have no economic value and are legally worthless.  Plaintiffs and the members of each Class paid a premium price for the Misbranded Products.

139.   Plaintiffs and the members of the putative class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the members of the putative class.

## FIFTH CAUSE OF ACTION

### Untrue Advertising in Violation of

### Business and Professions Code § 17500, *et seq.*

140.   Plaintiffs incorporate by reference each allegation set forth above.

141.   Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.  Defendants sold Misbranded Products in California and throughout the United States during the class period.

32

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

142.    Defendants engaged in a scheme of offering Defendants' Misbranded Products for sale to Plaintiffs and the members of the putative class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Products.  Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq*., in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Product and are statements disseminated by Defendants to Plaintiffs and the members of the putative class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

143.    In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Products, and falsely misrepresented the nature of those products.  Plaintiffs and the members of the putative class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

144.    Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiffs and the members of the putative class by obfuscating the contents, nature, and quality of Defendants' Misbranded Products, in violation of the "untrue prong" of California Business and Professions Code § 17500.

145.    As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the members of the putative class. Misbranded products cannot be legally sold or held and have no economic value and are legally worthless.  Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

146.   Plaintiffs and the members of the putative class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the members of the putative class.

**SIXTH CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq*.**

147.   Plaintiffs incorporate by reference each allegation set forth above.

148.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

149.   Plaintiffs and each member of the putative class are "consumers" within the meaning of Civil Code § 1761(d).

150.   The purchases of the Defendants' Misbranded Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e), and the Misbranded Products offered by Defendants constitute "goods" within the meaning of Civil Code § 1761(a).

151.   Defendants have violated, and continue to violate, the CLRA in at least the following respects:

a.   In violation of Civil Code § 1770(a)(5), Defendants represented that the Misbranded Products had characteristics which they did not have;

b.   In violation of Civil Code § 1770(a)(7), Defendants represented that the Misbranded Products were of a particular standard, quality, or grade, of which they were not; and

c.   In violation of Civil Code § 1770(a)(9), Defendants advertised the Misbranded Products with the intent not to provide what it advertised.

152.   As a direct and proximate cause of Defendants' violation of the CLRA as alleged hereinabove, Plaintiffs and members of the putative class have suffered

34

damages, including but not limited to inducing them to purchase the Misbranded Products and pay a premium therefor where such products did not conform to Defendants' representations, thereby causing Plaintiffs and putative class members to incur a pecuniary loss.

153.   Pursuant to California Civil Code § 1780, Plaintiffs, on behalf of themselves and the putative class, seek damages, restitution, injunctive relief, punitive damages, attorneys' fees, and the costs of litigation.

## SEVENTH CAUSE OF ACTION

### Restitution Based on Quasi-Contract/Unjust Enrichment

154.   Plaintiffs incorporate by reference each allegation set forth above. Plaintiffs plead this cause of action in the alternative.

155.   Defendants' conduct in enticing Plaintiffs and putative class members to purchase the Misbranded Products through their false and misleading advertising and packaging as described throughout this Complaint is unlawful because the statements contained on Defendants' product labels are untrue.

156.   Defendants' took monies from Plaintiffs and members of the putative class for products that purported to comply with the representations set forth above, even though the Misbranded Products did not conform to these representations.

157.   Defendants have been unjustly enriched at the expense of Plaintiffs and the putative class as result of Defendants' unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and putative class members.

158.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and putative class members are entitled to restitution or restitutionary disgorgement, in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the putative class, pray as follows:

35

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

A.      For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed the Class Representatives, and that Plaintiffs' counsel be appointed counsel for the class;

B.      For restitution in such amount that Plaintiffs and all putative class members paid to purchase the Misbranded Products, or the premiums paid therefor on account of the misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendants have obtained from those transactions;

C.      For compensatory damages for causes of action for which they are available;

D.      For statutory damages allowable under Civil Code § 1780;

E.      For punitive damages for causes of action for which they are available;

F.      For a declaration and order enjoining Defendants from advertising their products misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other applicable laws and regulations as specified in this Complaint;

G.      For an order awarding reasonable attorneys' fees and the costs of suit herein;

H.      For an award of pre- and post-judgment interest;

I.      For an order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants' as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

J.      Such other and further relief as may be deemed necessary or appropriate.

///

///

///

///

///

1

## **JURY DEMAND**

2      Plaintiffs hereby demand a jury trial on all issues so triable.

3

4                                                      Respectfully submitted,

5    DATED:      September 29, 2014                    COUNSELONE, PC

6

7                                              By

8                                                 Anthony J. Orshansky
                                                  Justin Kachadoorian
9                                                 Attorneys for Plaintiffs and the Putative
                                                  Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:14-cv-06311- MMM (PLAx)

# EXHIBIT A





# EXHIBIT B



CONTAINS NO FRUIT JUICE

GLUTEN FREE

## Nutrition Facts

Serving Size 1 Can

**Amount Per Serving**

**Calories 0**

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carb** 0g | **0%** |
| **Sugars** 0g | |
| **Protein** 0g | **0%** |

*Percent Daily Values are based on a 2,000 calorie diet. Not a significant source of other nutrients.

CONTAINS: PURE TRIPLE FILTERED CARBONATED WATER, CITRIC ACID, NATURAL POTASSIUM CITRATE, ACESULFAME POTASSIUM, SUCRALOSE (SPLENDA® BRAND), NATURAL FRUIT FLAVORS WITH EXTRACTS OF WASHINGTON BLACK CHERRIES.

© 2011 Hansen Beverage Company
CANNED UNDER THE AUTHORITY OF
THE HANSEN BEVERAGE COMPANY
CORONA, CA 92880 U.S.A. www.hansens.com

300148 0311

7 0847 87600 0

PLEASE RECYCLE

12 FL OZ (354 mL)

MADE IN USA   3 03 19 N3 MH

NO CA

ERRY

# EXHIBIT C





CONTAINS NO FRUIT JUICE

GLUTEN FREE

## Nutrition Facts

Serving Size 1 Can

**Amount Per Serving**

**Calories 0**

| | % Daily Value* |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carb** 0g | **0%** |
| Sugars 0g | |
| **Protein** 0g | **0%** |

*Percent Daily Values are based on a 2,000 calorie diet. Not a significant source of other nutrients.

300156 0311

0  70847 87603  8

PLEASE RECYCLE

12 FL OZ (354 mL)

MADE IN USA   2 11 28 N2 MH

CONTAINS: PURE TRIPLE FILTERED CARBONATED WATER, CITRIC ACID, NATURAL POTASSIUM CITRATE, ACESULFAME POTASSIUM, SUCRALOSE (SPLENDA® BRAND), NATURAL FRUIT FLAVORS WITH EXTRACTS OF CALIFORNIA TANGERINES & FLORIDA AND/OR COLIMA LIMES.

© 2011 Hansen Beverage Company
CANNED UNDER THE AUTHORITY OF
THE HANSEN BEVERAGE COMPANY
CORONA, CA 92880 U.S.A. www.hansens.com

NO CAFFEINE



# Nutrition Facts

Serving Size 8 fl oz (240 mL) | Servings Per Container: 8

**Amount Per Serving**

Calories 40     Cal. from Fat 0

**% Daily Value\***

| | | | |
|---|---|---|---|
| Total Fat 0g | 0% | Total Carb 10g | 3% |
| Saturated Fat 0g | 0% | Dietary Fiber 0g | 0% |
| Trans Fat 0 | 0% | Sugars 9g | |
| Cholesterol 0mg | 0% | Protein 0g | |
| Sodium 30mg | 1% | | |

Vitamin A 0% • Vitamin C 100%

Calcium  0% • Iron  1%

\*Percent Daily Values are based on 2,000 calorie diet

**INGREDIENTS:** FILTERED WATER,  RECONSTITUTED FRUIT JUICE BLEND (WATER, APPLE, ACAI AND BLUEBERRY JUICE CONCENTRATES), NATURAL FLAVORS, MALIC ACID, CITRIC ACID, COLOR ADDED, VITAMIN C, REBIANA.

# EXHIBIT D



No
Sugar
Added!

**Nutrition Facts** Serving size: 1 package (125mL)

Amount Per Serving: **Calories** 60, **Total Fat** 0g (0% DV), **Sodium** 5mg (0% DV), **Total Carb** 16g (5% DV), Sugars 16g, Vitamin C 100%, Calcium 10%.

Not a significant source of sat. fat, trans fat, cholesterol, dietary fiber, protein, vitamin A, and calcium.

Percent Daily Values (DV) are based on a 2,000 calorie diet.

INGREDIENTS: 100% FRUIT JUICE (FILTERED WATER SUFFICIENT TO RECONSTITUTE APPLE JUICE CONCENTRATE, CALCIUM GLUCONATE, CALCIUM LACTATE, VITAMIN C, NATURAL GRAPE FLAVOR, MALIC ACID.

© 2009 Hansen Beverage Company, Corona, CA 92880   GLUTEN FREE   Pasteurized



# EXHIBIT E







# Nutrition Facts

Serving Size 8 fl oz (240 mL) | Servings Per Container: 8

**Amount Per Serving**

Calories 140    Cal. from Fat 0

**% Daily Value\***

| | |
|---|---|
| Total Fat 0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 10mg | 1% |
| Total Carb. 35g | 12% |
| Dietary Fiber 0g | 0% |
| Sugars 34g | |
| Protein 1g | |

Vitamin A 0% • Vitamin C 120%

Calcium 2% • Iron 4%

\*Percent Daily Values are based on 2,000 calorie diet.

**INGREDIENTS: 100% JUICE (FILTERED WATER SUFFICIENT TO RECONSTITUTE GRAPE, APPLE AND CRANBERRY JUICE CONCENTRATES). TARTARIC ACID, VITAMIN C, MALIC ACID, TANNIC ACID.**

# EXHIBIT F





# EXHIBIT G





# EXHIBIT H



CONTAINS NO FRUIT JUICE

# Nutrition Facts

Serving Size 1 can (354 mL)

**Amount Per Serving**

**Calories** 160

% Daily Value*

| | |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carb** 42g | **14%** |
|   **Sugars** 42g | |
| **Protein** 0g | **0%** |

Vitamin A 25% • Vitamin C 100%
Vitamin E 50%

Not a significant source of sat. fat, trans fat, cholest., dietary fiber, calcium and iron.

*Percent Daily Values are based on a 2000 calorie diet

INGREDIENTS: FILTERED CARBONATED WATER, SUGAR, BREWED GINSENG, NATURAL COLA NUT FLAVORS, TARTARIC ACID, CARAMEL COLOR (FROM FRUCTOSE), ASCORBIC ACID, VITAMIN E, CITRIC ACID AND BETA CAROTENE.



CONTAINS NO FRUIT JUICE

# Nutrition Facts

Serving Size 1 can (354 mL)

**Amount Per Serving**

**Calories** 140

% Daily Value*

| | |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 0mg | **0%** |
| **Total Carb** 37g | **12%** |
| Sugars 37g | |
| **Protein** 0g | **0%** |

Vitamin A 25% • Vitamin C 100%
Vitamin E 50%

Not a significant source of sat. fat, trans fat, cholest., dietary fiber, calcium and iron.

*Percent Daily Values are based on a 2000 calorie diet

INGREDIENTS: FILTERED CARBONATED WATER, SUGAR, BREWED GINSENG, NATURAL JAMAICAN GINGER FLAVORS, CITRIC ACID, ASCORBIC ACID, VITAMIN E, AND BETA CAROTENE.