1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAN MARMALEFSKY (CA SBN 95477)
dmarmalefsky@mofo.com
DAVID F. McDOWELL (CA SBN 125806)
DMcDowell@mofo.com
PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile:  213.892.5454

Attorneys for Defendant
MONSTER ENERGY COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSIE MARSHALL, YASNA CUEVAS, and JOHN VAN ES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MONSTER ENERGY COMPANY, D/B/A HANSEN BEVERAGE COMPANY, AND DOES 1 THROUGH 50, INCLUSIVE,<br><br>Defendant. | Case No. 14-cv-06311-MMM (PLAx)<br><br>**DECLARATION OF PURVI G. PATEL IN SUPPORT OF JOINT *EX PARTE* APPLICATION FOR ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Hon. Margaret M. Morrow<br>Courtroom 780<br><br>Complaint Filed:   April 4, 2014<br>FAC Filed:            September 29, 2014<br>Trial Date:            April 12, 2016 |

PATEL DECLARATION ISO JOINT *EX PARTE* APP. FOR ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL
CASE NO. 14-cv-06311-MMM(PLAx)
la-1291427

I, Purvi G. Patel, under penalty of perjury, hereby declare as follows:

1.     I am an attorney admitted to practice law in the courts of the State of California and a member of the Bar of this Court.  I am a partner at Morrison & Foerster LLP, counsel of record for Defendant Monster Energy Company ("Monster Energy").  I have personal knowledge of the matters stated herein, and if called upon to do so, I could and would testify competently thereto.

**The *Krinsk* Action**

2.     The state court action titled *Krinsk, et al. v. Monster Beverage Corporation*, San Diego Superior Court, Case No. 37-2014-20192-CU-BT-CTL was filed on June 19, 2014.  A true and correct copy of the original *Krinsk* complaint is attached as **Exhibit A**.

3.     The *Krinsk* action was originally brought by a single named plaintiff, Marcy Krinsk, the wife of one of the named partners of Finkelstein & Krinsk, the law firm representing Mrs. Krinsk and the putative class.

4.     In response to Monster Beverage Corporation's motion to disqualify Mrs. Krinsk's husband's law firm from representing Mrs. Krinsk and the putative class, Mrs. Krinsk filed an amended complaint.

5.     Mrs. Krinsk remained in the case in her individual capacity and substituted in two new named plaintiffs as proposed class representatives as well as added Monster Energy as a defendant.  Finkelstein & Krinsk remained as the law firm representing Mrs. Krinsk and the putative class.  A true and correct copy of the operative First Amended Complaint filed in *Krinsk* is attached as **Exhibit B**.

6.     The *Krinsk* action has a motion cut-off in September 2015, and is set for trial on October 23, 2015.  The *Krinsk* court did not set a schedule for seeking class certification and to date plaintiffs have not moved for class certification.

**The *Cuzakis* Action**

7.     The state court action titled *Cuzakis, et al. v. Monster Energy Company, et al.*, Los Angeles Superior Court, Case No. BC513620 was filed on

1

June 27, 2013.  A true and correct copy of the operative Third Amended Complaint in *Cuzakis* is attached as **Exhibit C**.

8.     The *Cuzakis* case has a December 31, 2015 deadline for plaintiffs to move for class certification.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 24th day of July, 2015, in Los Angeles, California.

/s/ *Purvi G. Patel*
Purvi G. Patel

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24th day of July, 2015, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


Dated:  July 24, 2015                    MORRISON & FOERSTER LLP


                                  By:  /s/ Purvi G. Patel
                                       Purvi G. Patel
                                       *Attorneys for Defendant*
                                       *Monster Energy Company*

3

# EXHIBIT A

1  FINKELSTEIN & KRINSK LLP
   Mark L. Knutson, Esq. (SBN 131770)
2  mlk@classactionlaw.com
   Trenton R. Kashima, Esq. (SBN 291405)
3  trk@classactionlaw.com
   501 West Broadway, Suite 1250
4  San Diego, California 92101-3579
   Telephone: (619) 238-1333
5  Facsimile: (619) 238-5425

6  Attorneys for Plaintiff

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/19/2014** at 03:55:02 PM

Clerk of the Superior Court
By Alicia Fletes, Deputy Clerk

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                          **COUNTY OF SAN DIEGO**

| | |
|---|---|
| 10  MARCY KRINSK, Individually and on Behalf of All Others Similarly Situated, | Case No: 37-2014-00020192-CU-BT-CTL |
| 11 | |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR:** |
| 12 | |
| 13  v. | **(1) Unlawful Business Practices (Cal. Bus. & Prof. Code §§17200, *et seq.*)** |
| 14  MONSTER BEVERAGE CORPORATION, a Delaware corporation, dba HANSEN | **(2) Unfair Business Practices (Cal. Bus. & Prof. Code §§17200, *et seq.*)** |
| 15  BEVERAGE COMPANY, and DOES 1 through 50, inclusive, | **(3) Fraudulent Business Practices (Cal. Bus. & Prof. Code §§17200, *et seq.*)** |
| 16  Defendants. | **(4) Misleading Advertising (Cal. Bus. & Prof. Code §§17500, *et seq.*)** |
| 17 | **(5) Untrue Advertising (Cal. Bus. & Prof. Code §§17500, *et seq.*)** |
| 18 | |
| 19 | **(6) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§1750. *et seq.*** |
| 20 | **(7) Restitution Based on Quasi-Contract/ Unjust Enrichment** |
| 21 | |
| 22 | **DEMAND FOR JURY TRIAL** |

23

24

25

26

27

28

CLASS ACTION COMPLAINT
File # 7059.26

Exhibit A, Page 4

1

2      Plaintiff MARCY KRINSK (hereinafter "Plaintiff"), on behalf of herself and all others

3   similarly situated, brings this Complaint against MONSTER BEVERAGE CORPORATION, a

4   Delaware corporation, dba HANSEN BEVERAGE COMPANY, and DOES 1 through 50,

5   inclusive, as follows:

6                                           **INTRODUCTION**

7      1.      Plaintiff brings this action pursuant to Code of Civil Procedure §382 against

8   Defendants Monster Beverage Corporation dba Hansen Beverage Company ("Hansen"), and Does

9   1 through 50, inclusive (collectively with Hansen, "Defendants"), on behalf of all consumers who,

10   while residing within the State of California within four years of the filing of this lawsuit,

11   purchased any of the "Misbranded Products," which include all Hansen's juices and diet sodas,

12   juice box, and Smoothie Nectar products, and/or all Hubert-branded Lemonade products. The

13   labels for each of these products carry representations about the ingredients or alleged healthful

14   properties of the products that are intended to induce, and have induced, California consumers to

15   purchase the products. These representations, however, are false, misleading, and unlawful for the

16   reasons alleged below.

17      2.      Plaintiff alleges that Defendants' conduct violates California's Business and

18   Professions Code sections 17200, *et seq.* (the Unfair Competition Law, or "UCL"), California's

19   Business and Professions Code sections 17500, *et seq.* (the False Advertising Law, or "FAL"), and

20   the Consumers Legal Remedies Act of the California Civil Code sections 1750, *et seq.* (the

21   "CLRA"). Plaintiff also alleges that Defendants' conduct is grounds for restitution on the basis of

22   quasi-contract/unjust enrichment.

23      3.      Plaintiff seeks damages and restitution stemming from Defendants' false labeling

24   and advertising. Plaintiff also seeks declaratory and injunctive relief to ensure that Defendants

25   remove any and all false or misleading labels and advertisements relating to the Misbranded

26   Products and to prevent them from making similar representations in the future.

27                                             **PARTIES**

28      4.      Hansen has its headquarters in Corona, California, and upon information and belief

1

CLASS ACTION COMPLAINT
File # 7059.26                                                                   Exhibit A, Page 5

1   operates, manages and directs its nationwide sales and business operations from its offices in
2   California. Hansen also maintains manufacturing, storage, and distribution centers in California,
3   from which Hansen operates and directs the majority, or at least a substantial proportion, of its
4   nationwide sales and business operations. It is therefore believed and averred that a substantial
5   portion of the misleading labeling and related misconduct at issue in this Complaint occurred, was
6   conducted, and/or was directed in and emanated from California, including, but not limited to: (a)
7   the design of the Defendants' packaging; (b) the review, approval and revision of Defendants'
8   products and labeling; (c) the selection and integration of ingredients into the Defendants'
9   products; (d) the distribution of the Defendants' products; and (e) the management and supervision
10  of sales operations to Plaintiff and the putative classes (as defined herein).

11      5.      Plaintiff is, and at all relevant times was, a resident of San Diego, California and
12  was (and remains) a citizen of this State.

13      6.      The true names and capacities, whether individual, corporate, associate, or whatever
14  else, of the Defendants sued herein as Does 1 to 50, inclusive, are currently unknown to Plaintiff,
15  who therefore sues these defendants by such fictitious names under Code of Civil Procedure §474.
16  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein
17  as Does is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will
18  seek leave of court to amend this Complaint to reflect the true names and capacities of the
19  Defendants designated herein as Does when their identities become known.

20      7.      Plaintiff is informed and believes and thereon alleges that each defendant acted in
21  all respects pertinent to this action as the agent of the other Defendants, that Defendants carried out
22  a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each
23  defendant are legally attributable to the other Defendants.

24      8.      Venue is proper in this judicial district pursuant to Code of Civil Procedure §395.5
25  because the obligations giving rise to liability occurred in part in the County of San Diego, State of
26  California.

27                                        **BACKGROUND**

28      9.      Hansen deceptively labels and advertises the Misbranded Products in the following

                                                2

1  ways – all of which create the impression that the Misbranded Products are natural, healthy
2  beverages.

3  ### *Hansen Unlawfully Claims That the Misbranded Products Are Natural.*

4      10.    Hansen advertises, labels, and represents the Misbranded Products as being
5  "Natural," "100% Natural," or "All Natural." These claims appear on the product labels and even
6  in the product names of the Misbranded Products. This claim is reinforced on Hansen's website,
7  which depicts a verdant field, trees, a blue sky, and butterflies. Some of the Misbranded Products
8  labeled as natural also state that they are "naturally sweetened with Truvia."

9      11.    These representations are false or, at best, deceptive and misleading. Webster's New
10  World Dictionary defines "natural" as "produced or existing in nature; not artificial or
11  manufactured."[1]  Moreover, "all" is defined as "the whole extent or quantity of."[2] Thus the
12  combined use of "all natural" on the labels of the Mislabeled Products conveys to the average
13  reasonable person that "the whole extent or quantity of" the ingredients contained in the food
14  products are "produced or existing in nature; not artificial or manufactured."

15      12.    Although the Food and Drug Administration ("FDA") does not directly regulate the
16  term "natural," the FDA has established a policy defining the outer boundaries of the use of that
17  term by clarifying that a product is not natural if it contains color additives, artificial flavors, or
18  synthetic substances.[3] Specifically, the FDA states: "[T]he agency will maintain its policy (Ref. 32)
19  regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color
20  additives regardless of source) has been included in, or has been added to, a food that would not
21  normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). The FDA has
22  issued numerous warning letters owing to the presence of synthetic ingredients such as ascorbic
23  and citric acid in so-called "natural" products without proper identification.

24      13.    This policy is consistent with consumers' understanding of the word "natural."

25

---

26  [1] *Webster's New World Dictionary of the American Language,* 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

27  [2] *Id.,* "all," definition no. 1 at p. 36.

28  [3] *See* http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and http://www.fda.gov/AboutFDA/ Transparency/Basics/ucm2 14868 .html.

3

1  Consumers understand "natural" to exclude synthetic ingredients, food additives, or chemical
2  preservatives. In a 2007 survey conducted by the Natural Marketing Institute, the majority of
3  respondents believed that the term "natural" in a product label meant that the product contained
4  100 percent natural ingredients, no artificial flavors, no artificial colors, no preservatives, no
5  chemicals, and a substantial percentage thought that it meant that the product was not highly
6  processed. *Moreover, 81 percent of respondents found products claiming to* be "*natural*"
7  very/somewhat important when purchasing food or beverage products. And large majorities also
8  found that products containing no preservatives, no artificial ingredients, no artificial flavors, and
9  no artificial colors to be very/somewhat important when purchasing food and beverage products.
10 These percentages are even larger among the health-conscious segments of the US population,
11 which are large – estimated at approximately 40 percent. What is more, the survey found that these
12 trends have increased from previous years, and consequently the subject labeling statements are
13 probably far more important to consumers today. Significantly, the survey also found that package
14 labeling was by far the most important source of information influencing consumers' purchasing
15 decisions, especially among the health-conscious segment of the population.

16      14.    The labeling of products as "natural" or "all natural" (or words of similar import)
17 conveys implicit health benefits important to consumers-benefits for which consumers are willing
18 to pay a premium over comparable products that are not so labeled and marketed. Defendants have
19 cultivated and reinforced a corporate image based on this theme, which they have emblazoned on
20 almost all of the Misbranded Products and even use the word "natural" in the trade name of certain
21 products (*e.g.*, sodas and juices), despite the use of synthetic ingredients in these products. The
22 presence of synthetic ingredients in the Misbranded Products renders Defendants' product labels
23 and advertising false and misleading. No exception to the above exists for California companies or
24 as to California residents.

25      15.    Moreover, like the FDA, the United States Department of Agriculture ("USDA"),
26 which regulates the labeling of meat and poultry, has also set limits on the use of the term
27 "natural." The USDA's Food Safety and Inspection Service states that the term "natural" may be
28 used on labeling of meat and poultry products so long as "(1) the product does not contain any

4

1   artificial flavor or flavorings, color ingredient, or chemical preservative ... or any other artificial or
2   synthetic ingredient, and (2) the product and its ingredients are not more than minimally
3   processed." No exception to the above exists for California companies or as to California residents.

4        16.    According to the USDA, "[m]inimal processing may include: (a) those traditional
5   processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*,
6   smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not
7   fundamentally alter the raw product and/or which only separate a whole, intact food into
8   component parts, *e.g.*, grinding meat, separating eggs into albumen and yolk, and pressing fruits to
9   produce juices."[4] However, "(r]elatively severe processes, *e.g.*, solvent extraction, acid hydrolysis,
10   and chemical bleaching would clearly be considered more than minimal processing."[5] No
11   exception to the above exists for California companies or as to California residents.

12        17.    Under USDA policy, a product cannot be labeled as being "natural" if an ingredient
13   would significantly change the character of the product to the point that it could no longer be
14   considered a natural product. Moreover, any product purporting to be "natural" must conspicuously
15   identify any synthetic ingredients used on the label (*e.g.*, "all natural ingredients except dextrose,
16   modified food starch, *etc.*"). For example, a "turkey roast" cannot be called a "natural" product if it
17   contains beet coloring but can still bear the statement "all natural ingredients modified by beet
18   coloring." Defendants do not, however, include any such limiting language on the Misbranded
19   Products.[6] No exception to the above exists for California companies or as to California residents.

20        18.    The terms "synthetic" and "artificial" closely resemble each other and in common
21   parlance are taken as synonymous. The scientific community defines "artificial" as something not
22   found in nature, whereas "synthetic" is defined as something man-made, whether it merely mimics
23   nature or is not found in nature.[7] In the scientific community, "synthetic" includes substances that

24

---

[4] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.
fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy Book_ 082005 .pdf (last visited December 18, 2013).
[5] *Ibid.*
[6] *Ibid.*
[7] Peter E. Nielsen, *Natural-synthetic-artificial!,* Artificial DNA: PNA & XNA, Volume1, Issue1 (July/August/
September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ (last visited December 18,
2013).

CLASS ACTION COMPLAINT
File # 7059.26

Exhibit A, Page 9

1   are also "artificial," but a synthetic substance also can be artificial or non-artificial.[8]  However, the
2   common understanding of "artificial" resembles the scientific community's definition of
3   "synthetic." Indeed Webster's New World Dictionary defines "artificial" as "anything made by
4   human work, especially if in intimation of something natural," whereas "synthetic" is defined as "a
5   substance that is produced by chemical synthesis and is used as a substitute for a natural substance
6   which it resembles."[9]

7   19.   Congress has defined "synthetic" to mean "a substance that is formulated or
8   manufactured by a chemical process or by a process that chemically changes a substance extracted
9   from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to
10  substances created by naturally occurring biological processes." 7 U.S.C. §6502(21). *See also* 7
11  C.P.R. §205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a
12  substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic
13  process as defined in section 6502(21) of the Act (7 U.S.C. §6502(21)"). No exception to the above
14  exists for California companies or as to California residents.

15  20.   The Misbranded Products are not natural because they actually contain synthetic
16  ingredients (*e.g.*, citric acid, ascorbic acid, phosphoric acid, tartaric acid, calcium lactate, calcium
17  gluconate) and color additives (*e.g.*, grape skin extract, fruit and vegetable juice). *See* 21 C.P.R.
18  §101.9(c)(8)(v), 101.36(d), 101.36(e)(11)(i). No exception to the above exists for California
19  companies or as to California residents.

20  21.   Although these substances may occur naturally, the ingredients Hansen uses are
21  chemically manufactured and highly processed-thus rendering them not natural.

22  22.   Moreover, Defendants' use of Truvia is not natural because its primary ingredient is
23  erythritol, a sugar alcohol usually made by processing genetically modified corn (a genetically
24  modified organism, or "GMO"). In fact, Truvia uses only a small amount of the stevia extract
25  Rebiana A ("Reb A"), which is itself a chemically processed form of stevia and hence not natural.

26

27  [8] *Ibid.*

28  [9] *See* Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 28 1984),
    "artificial," definition SYN at p.79.

6

1  However, the ingredient statement on the Misbranded Products claiming to be "sweetened with
2  Truvia" does not even disclose the existence of erythritol, only Reb A, even though Reb A
3  constitutes only one percent of Truvia.

4      23.    The Misbranded Products also boast that they contain a substantial percentage of
5  vitamins and antioxidants such as vitamins C and E. These claims appear both on product labels
6  and in advertising material. For example, Hansen's webpage for Apple Grape Juice states, "Besides
7  great taste, there's the added benefit of naturally occurring antioxidants, as well as 120% Vitamin
8  C. Not a drop of sugar or a speck of preservatives added."

9      24.    Hansen misrepresents the provenance of the vitamin C and leads consumers to
10 believe that both it and the claimed antioxidant activity in the Misbranded Products are derived
11 from fruit and not chemical sources.

12     25.    Further, Hansen's Diet Sodas are misbranded because although they purport to be
13 "naturally flavored," they contain artificial flavors such as citric acid and phosphoric acid, which
14 impart a tangy or sour taste to the sodas. These artificial flavors appear in the ingredient statement
15 of the sodas before the natural flavor extracts.  Indeed the natural flavor extract almost always
16 appears last in the ingredient statement.

17     26.    Because the Misbranded Products contain artificial flavoring and chemical
18 preservatives without stating this fact on the product labels, Defendants violated California's
19 Sherman Food, Drug, & Cosmetic Law Act, California Health & Safety Code §§10985, *et seq.* (the
20 "Sherman Act"), including California Health & Safety Code §110740. In this way, Defendants
21 have also violated California Health & Safety Code §110705 because words, statements, or other
22 information required pursuant to the Sherman Law to appear on the label or labeling are not
23 prominently placed upon the label or labeling with conspicuousness, as compared with other
24 words, statements, designs, or devices in the labeling and in terms as to render them likely to be
25 read and understood by the ordinary individual under customary conditions of purchase and use.

26          ***Hansen Unlawfully Claims the Misbranded Products Contain "No Preservatives."***

27     27.    Rather than disclose the presence of chemical preservatives as required by law,
28 Defendants state the opposite through labeling statements claiming the Misbranded Products

7

1    contain "no preservatives."

2        28.    The Federal Regulations require food and beverage manufacturers to disclose the
3    presence of chemical preservatives "on the food or on its container or wrapper, or on any two or all
4    three of these, as may be necessary to render such statement likely to be read by the ordinary
5    person under customary conditions of purchase and use of such food." 21 CFR §101.22(c). No
6    exception to the above exists for California companies or as to California residents.

7        29.    "The term chemical preservative means any chemical that, when added to food,
8    tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars,
9    spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood
10   smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 CFR §101.22(a)(5).
11   No exception to the above exists for California companies or as to California residents.

12       30.    Pursuant to 21 C.F.R. §101.22(j), a food to which a chemical preservative(s) is
13   added shall, except when exempt pursuant to 21 C.F.R. §101.100 bear a label declaration stating
14   both the common or usual name of the ingredient(s) and a separate description of its function, *e.g.*,
15   "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote
16   color retention." No exception to the above exists for California companies or as to California
17   residents.

18       31.    The Misbranded Products fail to comply with the requirements of 21 C.F.R.
19   §101.22. Because many of the Misbranded Products have lengthy shelf-lives, they contain a
20   number of chemical preservatives such as ascorbic acid, citric acid, and vitamin E; however, the
21   labels of these products fail to describe the function of these chemical preservatives, thus violating
22   the law and concealing their presence. No exception to the above exists for California companies or
23   as to California residents.

24       32.    Ascorbic acid, citric acid, and vitamin E are not types of common salt, sugar,
25   vinegar, spice, or oil extracted from spices, nor are they substances added to food by direct
26   exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal
27   properties. As used by Defendants in their products, these chemicals prevent or retard deterioration
28   of the products. Therefore these chemicals are "chemical preservatives" in Hansen's products, as

1  defined in 21 C.F.R. §101.22(a)(5), and must be disclosed and identified as such. No exception to
2  the above exists for California companies or as to California residents.

3  **_Hansen Unlawfully Claims That the Misbranded Products Contain "100% Juice."_**

4  33.    Hansen's juice products falsely advertise that they are made with 100 percent juice.

5  34.    However, this is false owing to Defendants' addition of numerous synthetic, non-
6  juice ingredients. A beverage purporting to be juice must contain a percentage juice declaration.
7  *See* 21 C.F.R. §101.30(a). Where non-juice ingredients result in a diminution of the juice soluble
8  solids or a change in the volume of the product, then the 100 percent juice declaration is
9  inappropriate. *Id.* at subdiv. (b)(3). Moreover, even where there is no diminution of juice soluble
10  solids or change in volume, a 100 percent juice declaration is unlawful unless it is accompanied by
11  the phrase "with added_," the blank being filled in with a term such as "ingredient(s),"
12  "preservative," or "sweetener," as appropriate (*e.g.*, "100% juice with added sweetener"). *Ibid.* No
13  exception to the above exists for California companies or as to California residents.

14  35.    Because the Misbranded Products do not contain this additional language, they are
15  mislabeled, and a reasonable consumer would be misled into believing that he or she is purchasing
16  a product that contains 100 percent juice and nothing else.

17  **_Hansen Unlawfully Claims That the Misbranded Products Contain No Added Sugar._**

18  36.    Hansen's juice products are intended to appeal to consumers who are concerned
19  with their sugar and caloric intake. In order to target sales to this demographic, Hansen claims that
20  the misbranded juice products contain "No Sugar Added." This claim is reinforced on Hansen's
21  website, which states that certain products, such as Apple Raspberry Juice, are "naturally
22  sweetened" with Truvia.

23  37.    The Misbranded Products are mislabeled because they make the nutrient content
24  claim "No Sugar Added" but are made from concentrated fruit juices. A manufacturer is prohibited
25  from using the term "No Added Sugar" where the product contains concentrated fruit juice. *See* 21
26  C.F.R. §101.60(c)(2)(ii). A product purporting to have "No Added Sugar" must also bear a
27  statement that the food is not "low calorie" or "calorie reduced" unless the product meets the
28  requirements for making such claims. *!d.* at subdiv. *!d.* at subdiv: (c)(2)(v). These products do not

9

1  qualify as low-calorie foods because they provide more than 40 calories per reference amount
2  customarily consumed. *See* 21 C.F.R. §101.60(b)(2). However, the Misbranded Products do not
3  carry the required disclaimer, nor do they, as required "direct[] consumers' attention to the
4  nutrition panel for further information on sugar and calorie content." 21 C.F.R. §101.60(c)(2)(v).
5  No exception to the above exists for California companies or as to California residents.

6      38.    Because consumers may reasonably be expected to regard terms that represent that a
7  product contains "no sugar added" as indicating a product which is low in calories or significantly
8  reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law
9  are falsely represented through the use of phrases like "no sugar added" which they are not allowed
10 to bear owing to high calorie levels and absence of mandated disclaimer or disclosure
11 requirements.

12                 ***Hansen Unlawfully Misbrands the Products Made from Concentrate.***

13     39.    Hansen's juice products are misbranded because they do not comply with
14 regulations governing juices made from concentrate. *See* 21 C.F.R. §1 02.33(g)(I). These
15 regulations require the name of a beverage that is made from concentrate to include a term
16 indicating that fact, such as "from concentrate" or "reconstituted." *Ibid.* The regulations further
17 provide that "such terms must be included in the name of each individual juice or ... once adjacent
18 to the product name so that it applies to all the juices." *Ibid.* Further, "[t]he term shall be in a type
19 size no less than one-half the height of the letters in the name of the juice." No exception to the
20 above exists for California companies or as to California residents.

21     40.    Hansen's juice products are misbranded because although the labels include a
22 statement that the juice is from concentrate, in many instances this statement is small, less than
23 one-half the height of the letters in the name of the juice, and purposely positioned to mislead the
24 average consumer, which again violates California law. *See* California Health & Safety Code
25 §110705.

26               ***Hansen Unlawfully Claims the Misbranded Products Are Sweetened with Splenda.***

27     41.    Hansen's Diet Sodas claim to be sweetened with Splenda, an artificial sweetener
28 purportedly derived from sugar, and the front labels often show a Splenda logo.

---

10

42. This claim is deceptive because these products lead consumers to believe they are sweetened only or primarily with Splenda when in fact they are also sweetened with acesulfame potassium, a different artificial sweetener that has been linked to medical conditions such as impaired cognitive function and is therefore avoided by many consumers.[10]

43. The statement "Sweetened with Splenda" is rendered additionally deceptive because the ingredient statements disclose that acesulfame potassium is often the *primary* sweetener in these products, with Splenda being secondary.

## *Hansen Unlawfully Fortifies the Misbranded Products.*

44. Hansen claims that many of the Misbranded Products, such as its Blue Sky sodas, contain vitamins and antioxidants including ascorbic acid (synthetic vitamin C), beta carotene (synthetic vitamin A), and tocopherols (synthetic vitamin E). However, these vitamins and antioxidants are not naturally occurring; rather, Hansen fortifies these products with synthetic vitamins and antioxidants.

45. This is improper. "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify ... snack foods such as candies and carbonated beverages." 21 CFR §104.20(a). A nutrient cannot be added to a food or beverage unless it is physiologically available from the food. *Id.* at sub.(g). A manufacturer may not make false or misleading statements regarding the addition of vitamins or minerals. *Id.* at sub.(h). No exception to the above exists for California companies or as to California residents.

46. Hansen violates federal labeling law by fortifying snack foods and carbonated beverages with vitamins and antioxidants. What is more, vitamins such as vitamins A and E are not physiologically available when added to beverages because they are fat soluble, meaning that they cannot be absorbed by the body in the absence of fat, which the Misbranded Products do not contain. No exception to the above exists for California companies or as to California residents.

---

[10] *See* Cong, et al. "Long-Term Artificial Sweetener Acesulfame Potassium Treatment Alters Neurometabolic Functions in C57BL/6J Mice," *Plus ONE*, Aug. 7, 2013, available at 28 http://www.plosone.org/article/info%3Adoi%2F 10. 13 71 %2Fjournal.pone.0070257 Center for Science in the Public Interest, http://www.cspinet.org/reports/asekquot.html.

47.     Moreover, Hansen deceptively represents that these sodas contain naturally occurring vitamins and antioxidants through the depiction on product labels of images of fruits such as raspberries and grapes with well-known antioxidant activity and vitamin content when in fact the Misbranded Products contain *added* vitamins and antioxidants.

### *Allegations as to the Named Plaintiff*

48.     Plaintiff is and, throughout the entire class period, has been a resident of San Diego County, California. Plaintiff is very concerned about and emphatically attempts to avoid consuming foods that are not natural, such as products containing synthetic, artificial or chemical ingredients, as well as products that are high in sugar. For this reason, Plaintiff is willing to pay and has paid a premium for foods that are natural and has endeavored to refrain from buying equivalent foods which are not natural and which do contain synthetic, artificial, or chemical ingredients and are high in sugar.

49.     During the class period, Plaintiff purchased, among other products, multiple Hansen's Soda and Diet Sodas, Hansen Juice Boxes, Smoothie Nectars, and Hubert's Lemonade from various grocery store markets throughout California.

50.     Before buying Hansen's products, Plaintiff saw pictures of fruit on the product labels and read statements that these products were "Natural," "100% Natural," "All Natural," "naturally flavored," "naturally sweetened with Truvia," "GMO Free," and contained "No Preservatives," "100% juice," and specified antioxidants and vitamins. Plaintiff relied on these representations in deciding to buy the products. Plaintiff understood these representations as meaning there was nothing artificial, synthetic, or chemically fabricated in the products, that they did not contain preservatives, and that the antioxidants were derived from natural sources (such as fruits) and were physiologically available when ingested.

51.     Consistent with this understanding, Plaintiff did not see the small statements on some of the product labels that the juices came from concentrate. Plaintiff also read the "no sugar added" statement on the products and believed that these were lower calorie or reduced-calorie drinks and/or were not sweetened using concentrated fruit juice (or other sweeteners) and/or were drawn to the products because of this label. Plaintiff relied on this front-of-the-package

12

1 representation and did not scrutinize the nutrition panel for information on sugar and caloric
2 content.

3    52.    Moreover, Plaintiff believed that sodas fortified with antioxidants and vitamins were
4 healthier for herself and her family because the vitamins and antioxidants were naturally occurring
5 and could represent a source of the specified vitamins and antioxidants needed in their diets.

6    53.    Finally, Plaintiff relied on label representations that Hansen's Diet Soda was
7 sweetened with Splenda, which was preferred to other sweeteners because she believed that it was
8 derived from sugar.

9    54.    Plaintiff not only purchased these products because of the identified representations
10 but knowingly also paid more money than would have been paid for other similar products that did
11 not make similar representations. Indeed, had Plaintiff known that Defendants' representations
12 were false or deceptive, she would not have purchased these products but would have purchased
13 brands that accurately represented the product or, if these were not available, would have
14 purchased less expensive products that did not make such representations. In this way, Plaintiff did
15 not receive the products bargained for and has lost money as a result of paying money to
16 Defendants by paying a premium for Defendants' products owing to the misrepresentations.

17                              **CLASS ALLEGATIONS**

18    55.    Plaintiff brings this action on behalf of herself and those similarly situated as a class
19 action pursuant to Code of Civil Procedure §382. Plaintiff seeks to represent the following class:
20 All persons who were residents in California when they purchased one or more of the Misbranded
21 Products during the period four years prior to the filing of the Complaint and continuing to the
22 present.

23    56.    The class excludes counsel representing the class, governmental entities,
24 Defendants, any entity in which Defendants have a controlling interest, Defendants' officers,
25 directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and
26 assigns, any judicial officer presiding over this matter, the members of their immediate families
27 and judicial staff, and any individual whose interests are antagonistic to other putative class
28 members.

13

1   57.   Plaintiff reserves the right under California Rule of Court 3.765 to amend or modify
2   the class description with greater particularity or further division into subclasses or limitation to
3   particular issues.

4   58.   This action has been brought and may properly be maintained as a class action
5   under the provisions of Code of Civil Procedure §382 because there is a well-defined community
6   of interest in the litigation and the class is easily ascertainable.

7   **A.   Numerosity**

8   59.   The potential members of the class as defined are so numerous that joinder of all
9   members of the class is impracticable. Although the precise number of putative class members has
10  not been determined at this time, Plaintiff is informed and believes that the proposed class includes
11  thousands of members.

12  **B.   Commonality**

13  60.   There are questions of law and fact common to the class that predominate over any
14  questions affecting only individual putative class members. These common questions of law and
15  fact include:

16          a.   Whether Defendants' conduct was a "fraudulent practice" within the
17               meaning of the Unfair Competition Law ("UCL"), Business & Professions
18               Code §17200, in that it was likely to mislead consumers;

19          b.   Whether Defendants' conduct was an "unfair practice" within the meaning
20               of the UCL in that it offended established public policy and is immoral,
21               unethical, oppressive, unscrupulous or substantially injurious to consumers;

22          c.   Whether Defendants' conduct was an "unlawful" practice within the
23               meaning of the UCL;

24          d.   Whether Defendants' conduct was likely to deceive a consumer acting
25               reasonably in the same circumstances;

26          e.   Whether Defendants advertise or market the Misbranded Products in a way
27               that is false or misleading;

28          f.   Whether Defendants violated California Business and Professions Code

14

§§17500, *et seq.*;

g.    Whether Defendants violated California Civil Code §§1750, *et seq.*;

h.    Whether Plaintiff and members of the putative class are entitled to restitution, injunctive, declaratory and/or other equitable relief;

i.    Whether Defendants have been unjustly enriched through the misrepresentations alleged herein; and

j.    Whether Plaintiff and the members of the class sustained monetary loss.

**C.    Adequacy of Representation**

61.    Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel who represent Plaintiff and putative class members are experienced and competent in litigating class actions.

**D.    Superiority of Class Action**

62.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members. Each putative class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies or practices of failing to compensate putative class members properly.

63.    Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## FIRST CAUSE OF ACTION

**Unlawful Business Practices in Violation of
Business and Professions Code §§17200, *et seq.***

64.    Plaintiff incorporates by reference each allegation set forth above.

65.    Defendants' conduct constitutes unlawful business acts and practices under 12 Business & Professions Code §§17200, *et seq.*

66.    Defendants sold Misbranded Products in California during the class period.

15

1  67.  Defendant Hansen is a corporation and, therefore, is a "person" within the meaning
2  of the Sherman Food Drug & Cosmetic Law Act, California Health & Safety Code §§109875, *et
3  seq.* (the "Sherman Act"). The Sherman Act adopts, incorporates and is identical to the federal
4  Food, Drug & Cosmetic Act, 21 U.S.C. §§301, *et seq.* ("FDCA").

5  68.  Defendants' business practices are unlawful under the UCL, §§17200, *et seq.*, by
6  virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Act and
7  the misbranded food provisions of Article 6 of the Sherman Act.

8  69.  Defendants' business practices are also unlawful under Business & Professions
9  Code §§17200, *et seq.* by virtue of Defendants' violations of §§17500, *et seq.*, which forbids untrue
10  and misleading advertising.

11  70.  Defendants' business practices are additionally unlawful under Business &
12  Professions Code §§17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal
13  Remedies Act, Cal. Civ. Code §§1750, *et seq.*

14  71.  Under California law, a food product that is misbranded cannot legally be
15  manufactured, advertised, distributed, held or sold. Misbranded products cannot be legally sold,
16  possessed, have no economic value, and are legally worthless. Indeed the sale, purchase or
17  possession of misbranded food is a criminal act in California and the FDA even threatens food
18  companies with seizure of misbranded products.

19  72.  Defendants sold Plaintiff and members of the putative class Misbranded Products
20  that were not properly being sold or legally held and which had no economic value and were
21  legally worthless. Plaintiff and each putative class member paid a premium price for the
22  Misbranded Products.

23  73.  As a result of Defendants' illegal business practices, Plaintiff and the members of
24  the putative class are entitled to an order enjoining such future conduct and such other orders and
25  judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any
26  putative class member the money paid for the Misbranded Products.

27  74.  Defendants' unlawful business acts present a threat and reasonable continued
28  likelihood of injury to Plaintiff and each member of the putative class.

16

1

## SECOND CAUSE OF ACTION

2

### Unfair Business Practices in Violation of
### Business & Professions Code §§17200, *et seq*.

3

4        75.    Plaintiff incorporates by reference each allegation set forth above.

5        76.    The UCL defines unfair business competition to include any "unlawful, unfair or

6    fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.

7    Cal. Bus. & Prof. Code §17200.

8        77.    A business act or practice is "unfair" under the UCL if the reasons, justifications,

9    and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged

10   victims.

11       78.    Defendants' conduct as set forth herein constitutes unfair business acts and

12   practices.

13       79.    Defendants sold Misbranded Products in California during the class period.

14       80.    Plaintiff and the members of the putative class suffered substantial injury by virtue

15   of buying Defendants' Misbranded Products, which they would not have purchased absent

16   Defendants' illegal conduct.

17       81.    Defendants' deceptive marketing, advertising, packaging and labeling of their

18   Misbranded Products and their sale of unsalable misbranded products that were illegal to possess

19   were of no benefit to consumers, and the harm to consumers and competition is substantial.

20       82.    Defendants sold Plaintiff and the members of the putative class Misbranded

21   Products that were not capable of being legally sold or held and that had no economic value and

22   were legally worthless. Plaintiff and the members of the putative class paid a premium price for the

23   Misbranded Products.

24       83.    Plaintiff and the members of the putative class purchasing Defendants' Misbranded

25   Products had no way of reasonably knowing that the products were misbranded and were not

26   properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided

27   the injury each of them suffered.

28       84.    The consequences of Defendants' conduct as set forth herein outweigh any

17

1 justification, motive or reason therefor. Defendants' conduct is and continues to be unlawful,
2 unscrupulous and contrary to public policy, and is substantially injurious to Plaintiff and the
3 members of the putative class, or otherwise.

4     85.    As a result of Defendants' conduct, Plaintiff and the members of the putative class,
5 pursuant to Business and Professions Code §17203, are entitled to an order enjoining such future
6 conduct by Defendants, and such other orders and judgments which may be necessary to disgorge
7 Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Products by
8 Plaintiff and the members of the putative class.

9 <center>**THIRD CAUSE OF ACTION**</center>

10 <center>**Fraudulent Business Practices in Violation of**
**Business and Professions Code §§17200, *et seq.***</center>
11

12     86.    Plaintiff incorporates by reference each allegation set forth above.

13     87.    Defendants' conduct as set forth herein constitutes fraudulent business practices
14 under California Business and Professions Code sections §§17200, *et seq.*

15     88.    Defendants sold Misbranded Products in California during the class period.

16     89.    Defendants' misleading marketing, advertising, packaging, and labeling of the
17 Misbranded Products and misrepresentation that the products were capable of sale, capable of
18 possession, and not misbranded were likely to deceive reasonable consumers, and in fact Plaintiff
19 and the members of the putative class were deceived.

20     90.    Defendants' fraud and deception caused Plaintiff and the members of the putative
21 class to purchase Misbranded Products that they would not otherwise have purchased had they
22 known the true nature of those products.

23     91.    Defendants sold Plaintiff and the members of the putative class Misbranded
24 Products that were not capable of being sold or legally held and that had no economic value and
25 were legally worthless. Plaintiff and the members of the putative class paid a premium price for the
26 Misbranded Products.

27     92.    As a result of Defendants' conduct as set forth herein, Plaintiff and each member of
28 the putative class, pursuant to Business and Professions Code §17203, are entitled to an order

<center>18</center>

1  enjoining such future conduct by Defendants, and such other orders and judgments which may be
2  necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants'
3  Misbranded Products by Plaintiff and the members of the putative class.

## FOURTH CAUSE OF ACTION

### Misleading Advertising in Violation of
### Business and Professions Code §§17500, *et seq.*

7     93.    Plaintiff incorporates by reference each allegation set forth above.

8     94.    Plaintiff asserts this cause of action for violations of California Business and
9  Professions Code §§17500, *et seq.*, for misleading and deceptive advertising against Defendants.

10    95.    Defendants sold Misbranded Products in California during the class period.
11  Defendants engaged in a scheme of offering the Misbranded Products for sale to Plaintiff and the
12  members of the putative class by way of, *inter alia*, improper product packaging and labeling, and
13  other promotional materials. These materials misrepresented and/or omitted the true contents and
14  nature of Defendants' Misbranded Products.

15    96.    Defendants' advertisements and inducements were made within California and
16  come within the definition of advertising as contained in Business and Professions Code §§17500,
17  *et seq.*, in that such product packaging and labeling, and promotional materials were intended as
18  inducements to purchase Defendants' Misbranded Food Products and are statements disseminated
19  by Defendants to Plaintiff and the members of the putative class that were intended to reach the
20  members of the putative class. Defendants knew, or in the exercise of reasonable care should have
21  known, that these statements were misleading and deceptive as set forth herein.

22    97.    In furtherance of its plan and scheme, Defendants prepared and distributed within
23  California via product packaging and labeling, and other promotional materials, statements that
24  misleadingly and deceptively represented the composition and the nature of Defendants'
25  Misbranded Products. Plaintiff and members of the putative class necessarily and reasonably relied
26  on Defendants' material and were the intended targets of such representations.

27    98.    Defendants' conduct in disseminating misleading and deceptive statements in
28  California and nationwide to Plaintiff and the members of the putative class was and is likely to

19

1 | deceive reasonable consumers by obfuscating the true composition and nature of Defendants'
2 | Misbranded Products, in violation of the "misleading prong" of California Business and
3 | Professions Code §§17500, *et seq.*

4 |       99.    As a result of Defendants' violations of the "misleading prong" of California
5 | Business and Professions Code §§17500, *et seq.,* Defendants have been unjustly enriched at the
6 | expense of Plaintiff and the members of the putative class. Misbranded products cannot be legally
7 | sold or held and have no economic value and are legally worthless. Plaintiff and the members of
8 | each Class paid a premium price for the Misbranded Products.

9 |       100.    Plaintiff and the members of the putative class, pursuant to Business and
10 | Professions Code §17535, are entitled to an order enjoining such future conduct by Defendants,
11 | and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten
12 | gains and restore money paid for Defendants' Misbranded Food Products by Plaintiff and the
13 | members of the putative class.

14 | **FIFTH CAUSE OF ACTION**

15 | **Untrue Advertising in Violation of**
**Business and Professions Code §§17500, *et seq.***
16 |

17 |       101.    Plaintiff incorporates by reference each allegation set forth above.

18 |       102.    Plaintiff asserts this cause of action against Defendant for violations of California
19 | Business and Professions Code §§17500, *et seq.,* regarding untrue advertising. Defendants sold
20 | Misbranded Products in California during the class period.

21 |       103.    Defendants engaged in a scheme of offering Defendants' Misbranded Products for
22 | sale to Plaintiff and the members of the putative class by way of product packaging and labeling,
23 | and other promotional materials. These materials misrepresented and/or omitted the true contents
24 | and nature of Defendants' Misbranded Products. Defendants' advertisements and inducements
25 | were made in California and come within the definition of advertising as contained in Business and
26 | Professions Code §§17500, *et seq.,* in that the product packaging, labeling, and promotional
27 | materials were intended as inducements to purchase Defendants' Misbranded Product and are
28 | statements disseminated by Defendants to Plaintiff and the members of the putative class.

20

1 | Defendants knew, or in the exercise of reasonable care should have known, that these statements
2 | were untrue.

3 |     104.   In furtherance of its plan and scheme, Defendants prepared and distributed in
4 | California and nationwide via product packaging and labeling, and other promotional materials,
5 | statements that falsely advertise the composition of Defendants' Misbranded Products, and falsely
6 | misrepresented the nature of those products. Plaintiff and the members of the putative class were
7 | the intended targets of such representations and would reasonably be deceived by Defendants'
8 | materials.

9 |     105.   Defendants' conduct in disseminating untrue advertising throughout California
10 | deceived Plaintiff and the members of the putative class by obfuscating the contents, nature, and
11 | quality of Defendants' Misbranded Products, in violation of the "untrue prong" of California
12 | Business and Professions Code §17500.

13 |     106.   As a result of Defendants' violations of the "untrue prong" of California Business
14 | and Professions Code §§17500, *et seq.*, Defendants have been unjustly enriched at the expense of
15 | Plaintiff and the members of the putative class. Misbranded products cannot be legally sold or held
16 | and have no economic value and are legally worthless. Plaintiff and the members of the putative
17 | class paid a premium price for the Misbranded Products.

18 |     107.   Plaintiff and the members of the putative class, pursuant to Business and
19 | Professions Code §§17535, are entitled to an order enjoining such future conduct by Defendants,
20 | and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten
21 | gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the
22 | members of the putative class.

23 | **SIXTH CAUSE OF ACTION**

24 | **Violation of the Consumers Legal Remedies Act,**
   **California Civil Code §§1750, *et seq.***
25 |

26 |     108.   Plaintiff incorporates by reference each allegation set forth above.

27 |     109.   This cause of action is brought pursuant to the Consumers Legal Remedies Act,
28 | California Civil Code §§1750, *et seq.* (the "CLRA").

21

1    110.   Plaintiff and each member of the putative class are "consumers" within the meaning
2  of Civil Code §1761(d).

3    111.   The purchases of the Defendants' Misbranded Products by consumers constitute
4  "transactions" within the meaning of Civil Code §1761 (e), and the Misbranded Products offered
5  by Defendants constitute "goods" within the meaning of Civil Code§1761(a).

6    112.   Defendants have violated, and continue to violate, the CLRA in at least the
7  following respects:

8         a.    In violation of Civil Code §1770(a)(5), Defendants represented that the
9               Misbranded Products had characteristics which they did not have;

10        b.    In violation of Civil Code §1770(a)(7), Defendants represented that the
11              Misbranded Products were of a particular standard, quality, or grade, of
12              which they were not; and

13        c.    In violation of Civil Code §1770(a)(9), Defendants advertised the
14              Misbranded Products with the intent not to provide what it advertised.

15    113.   As a direct and proximate cause of Defendants' violation of the CLRA as alleged
16  hereinabove, Plaintiff and members of the putative class have suffered harm by Defendants' efforts
17  to induce them to purchase the Misbranded Products and pay a premium price therefore when such
18  products did not conform to Defendants' representations. As a result, Plaintiff, at this time, seeks
19  injunctive relief against Defendants requiring them to cease and desist from further instances of
20  advertising and selling the Misbranded Products in California.

21    114.   In addition, concurrent and in conjunction with the filing of this Complaint,
22  pursuant to §1782(a) of the CLRA, Plaintiff will separately notify Defendants by certified mail,
23  return receipt requested, of the particular violations of §1770 of the CLRA and demand that
24  Defendants remedy the actions described above and give notice to all similarly affected California
25  consumers of its intention to do so.

26    115.   If Defendants fail to respond to Plaintiff's demand within 30 days of this notice,
27  pursuant to §1782(d) of the CLRA, Plaintiff will amend this Complaint to request actual damages,
28  plus punitive damages, interest and attorneys' fees. Additionally, Plaintiff will seek to recover up

22

1   to $5,000 per eligible Class members as provided for under §1780(b) of the CLRA. Accordingly,

2   at the present time (and without prejudice to Plaintiff's right to further amendment), pursuant to

3   §1782(d) of the CLRA, Plaintiff seeks an order enjoining the above-described wrongful acts and

4   practices of Defendants, plus costs and attorneys' fees, and any other relief which the Court deems

5   appropriate.

6   <div align="center">**SEVENTH CAUSE OF ACTION**</div>

7   <div align="center">**Restitution Based on Quasi-Contract/Unjust Enrichment**</div>

8       116.   Plaintiff incorporates by reference each allegation set forth above.

9       117.   Defendants' conduct in enticing Plaintiff and putative class members to purchase

10   the Misbranded Products through their false and misleading advertising and packaging as described

11   throughout this Complaint is unlawful because the statements contained on Defendants' product

12   labels were untrue.

13       118.   Defendants' took monies from Plaintiff and members of the putative class for

14   products that purported to comply with the representations set forth above, even though the

15   Misbranded Products did not conform to their representations.

16       119.   Defendants have been unjustly enriched at the expense of Plaintiff and the putative

17   class as result of Defendants' unlawful conduct alleged herein, thereby creating a quasi-contractual

18   obligation on Defendants to restore these ill-gotten gains to Plaintiff and putative class members.

19       120.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and

20   putative class members are entitled to restitution or restitutionary disgorgement, in an amount to be

21   proved at trial.

22   <div align="center">**PRAYER FOR RELIEF**</div>

23       WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the

24   putative class, pray as follows:

25     A.   For an order certifying that this action is properly brought and may be maintained as

26   a class action, that Plaintiff be appointed the Class Representatives, and that Plaintiff's counsel be

27   appointed counsel for the class;

28     B.   For restitution in such amount that Plaintiff and all putative class members paid to

<div align="center">23</div>

1  purchase the Misbranded Products, or the premiums paid therefor on account of the
2  misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendants have
3  obtained from those transactions;

4      C.    For compensatory damages for causes of action for which they are available;

5      D.    For injunctive relief allowable under Civil Code §1780;

6      E.    For punitive damages for causes of action for which they are available;

7      F.    For a declaration and order enjoining Defendants from advertising their products
8  misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other
9  applicable laws and regulations as specified in this Complaint;

10     G.    For an order awarding reasonable attorneys' fees and the costs of suit herein;

11     H.    For an award of pre- and post-judgment interest;

12     I.    For an order requiring an accounting for, and imposition of, a constructive trust
13  upon all monies received by Defendants' as a result of the unfair, misleading, fraudulent and
14  unlawful conduct alleged herein; and

15     J.    Such other and further relief as may be deemed necessary or appropriate.

16                                      Respectfully submitted,

17                                      FINKELSTEIN & KRINSK LLP

18
19  Dated: June 19, 2014          By: _____
                                        Mark L. Knutson, Esq.
20                                      Trenton R. Kashima, Esq.

21
22                                      Attorneys for Plaintiff

23
24
25
26
27
28

                              24

CLASS ACTION COMPLAINT
File # 7059.26                                      Exhibit A, Page 28

# EXHIBIT B

FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Mark L. Knutson, Esq. (SBN 131770)
mlk@classactionlaw.com
William R. Restis, Esq. (SBN 246823)
wrr@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
501 West Broadway, Suite 1250
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

MARCY KRINSK *et al.*, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MONSTER BEVERAGE CORPORATION, a Delaware corporation, MONSTER ENERGY COMPANY, a Delaware corporation, f/k/a Hansen Beverage Company , and DOES 1 through 50, inclusive,

Defendants.

Case No: 37-2014-20192-CU-BT-CTL

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

(1) **Unlawful Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

(2) **Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

(3) **Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

(4) **Misleading Advertising (Cal. Bus. & Prof. Code§ 17500, *et seq.*)**

(5) **Untrue Advertising (Cal. Bus. & Prof. Code§ 17500, *et seq.*)**

(6) **Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750. *et seq.***

(7) **Restitution Based on Quasi-Contract/ Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

1   Plaintiffs CHAYLA CLAY and MAYAN MOONEY, on behalf of themselves and all

2   others similarly situated, and plaintiff Marcy Krinsk, individually (collectively "Plaintiffs"), brings

3   this Complaint against defendants MONSTER BEVERAGE CORPORATION, a Delaware

4   corporation, and MONSTER ENERGY COMPANY, a Delaware corporation, f/k/a Hansen

5   Beverage Company, ("Defendants" or "Hansen") and DOES 1 through 50, inclusive, as follows:

6   ## INTRODUCTION

7       1.   Plaintiffs Chayla Clay and Mayan Mooney brings this action pursuant to Code of

8   Civil Procedure § 382 against the Hansen Defendants, and Does 1 through 50, inclusive

9   (collectively with Hansen, "Defendants"), on behalf of all consumers who, while residing within

10  the State of California within four years of the filing of this lawsuit, purchased any of the

11  "Misbranded Products," which include all Hansen's juices, juice box, and  Smoothie Nectar

12  products, and/or all Hubert-branded Lemonade products. The labels for each of these products

13  carry representations about the ingredients or alleged healthful properties of the products that are

14  intended to induce, and have induced, California consumers to purchase the products. These

15  representations, however, are false, misleading, and unlawful for the reasons alleged below.

16      2.   Plaintiff Marcy Krinsk brings that action individual, for her purchases of the

17  Misbranded Products.

18      3.   Plaintiffs alleges that Defendants' conduct violates California's Business and

19  Professions Code sections 17200, *et seq.* (the Unfair Competition Law, or "UCL"), California's

20  Business and Professions Code sections 17500, *et seq.* (the False Advertising Law, or "FAL"), and

21  the Consumers Legal Remedies Act of the California Civil Code sections 1750, *et seq.* (the

22  "CLRA"). Plaintiff also alleges that Defendants' conduct is grounds for restitution on the basis of

23  quasi-contract/unjust enrichment.

24      4.   Plaintiffs seek damages and restitution stemming from Defendants' false labeling

25  and advertising. Plaintiff also seeks declaratory and injunctive relief to ensure that Defendants

26  remove any and all false or misleading labels and advertisements relating to the Misbranded

27  Products and to prevent them from making similar representations in the future.

28

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 37-2014-20192-CU-BT-CTL

**PARTIES**

1.      Plaintiff Marcy Krinsk is, and at all relevant times was, a resident of San Diego, California and was (and remains) a citizen of this State. Ms. Krinsk purchased Defendant's Hansen's juices products at Vons, during the class period. Ms. Krinsk brings her lawsuit individually against the Hansen Defendants.

2.      Plaintiff Chayla Clay is, and at all relevant times was, a resident of San Diego, California and was (and remains) a citizen of this State. Plaintiff Clay purchased Defendant's Hansen's juices, juice box, and Smoothie Nectar products, and/or all Hubert-branded Lemonade products at Henrys and other San Diego stores, during the class period. Ms. Clay brings this action on behalf of herself and all similarly situated.

3.      Plaintiff Mayan Mooney is, and at all relevant times was, a resident of San Diego, California and was (and remains) a citizen of this State. Plaintiff Mooney purchased Defendant's Hubert-branded Lemonade products at Seven-Eleven and other San Diego stores, during the class period. Mr. Mooney brings this action on behalf of himself and all similarly situated.

4.      Hansen has its headquarters in Corona, California, and upon information and belief operates, manages and directs its nationwide sales and business operations from its offices in California. Hansen also maintains manufacturing, storage, and distribution centers in California, from which Hansen operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations. It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Complaint occurred, was conducted, and/or was directed in and emanated from California, including, but not limited to: (a) the design of the Defendants' packaging; (b) the review, approval and revision of Defendants' products and labeling; (c) the selection and integration of ingredients into the Defendants' products; (d) the distribution of the Defendants' products; and (e) the management and supervision of sales operations to Plaintiff and the putative classes (as defined herein).

5.      The true names and capacities, whether individual, corporate, associate, or whatever else, of the defendants sued herein as Does 1 to 50, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names under Code of Civil Procedure § 474.

FIRST AMENDED CLASS ACTION COMPLAINT                      Case No. 37-2014-20192-CU-BT-CTL

Exhibit B, Page 31

1  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein
2  as Does is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will
3  seeks leave of court to amend this Complaint to reflect the true names and capacities of the
4  defendants designated herein as Does when their identities become known. (As used herein,
5  "Defendants" refers to Hansen and Does 1 to 50, inclusive.)

6      6.    Plaintiffs are informed and believe and thereon alleges that each defendant acted in
7  all respects pertinent to this action as the agent of the other Defendants, that Defendants carried out
8  a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each
9  defendant are legally attributable to the other Defendants.

10     7.    Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5
11 because the obligations giving rise to liability occurred in part in the County of San Francisco,
12 State of California.

13                    **BACKGROUND**

14     8.    Hansen deceptively labels and advertises the Misbranded Products in the following
15 ways-all of which create the impression that the Misbranded Products are natural, healthy
16 beverages.

17        *Hansen Unlawfully Claims That the Misbranded Products Are Natural.*

18     9.    Hansen advertises, labels, and represents the Misbranded Products as being
19 "Natural," "100% Natural," or "All Natural." These claims appear on the product labels and even
20 in the product names of the Misbranded Products. This claim is reinforced on Hansen's website,
21 which depicts a verdant field, trees, a blue sky, and butterflies. Some of the Misbranded Products
22 labeled as natural also state that they are "naturally sweetened with Truvia."

23     10.   These representations are false or, at best, deceptive and misleading. Webster's New
24 World Dictionary defines "natural" as "produced or existing in nature; not artificial or
25 manufactured."[1]   Moreover, "all" is defined as "the whole extent or quantity of."[2] Thus the

26 ────────────────
27 [1] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1 984), "natural," definition no. 2 at p.947.
28 [2] *Id.*, "all," definition no. 1 at p. 36.

FIRST AMENDED CLASS ACTION COMPLAINT            Case No. 37-2014-20192-CU-BT-CTL

Exhibit B, Page 32

1   combined use of "all natural" on the labels of the Mislabeled Products indicates to the average

2   reasonable person that "the whole extent or quantity of" the ingredients contained in the food

3   products are "produced or existing in nature; not artificial or manufactured."

4        11.     Although the Food and Drug Administration ("FDA") does not directly regulate the

5   term "natural," the FDA has established a policy defining the outer boundaries of the use of that

6   term by clarifying that a product is not natural if it contains color additives, artificial flavors, or

7   synthetic substances.[3] Specifically, the FDA states: "[T]he agency will maintain its policy (Ref. 32)

8   regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color

9   additives regardless of source) has been included in, or has been added to, a food that would not

10  normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003). The FDA has

11  issued numerous warning letters owing to the presence of synthetic ingredients such as ascorbic

12  and citric acid in so-called "natural" products without proper identification.

13       12.     This policy is consistent with consumers' understanding of the word "natural."

14  Consumers understand "natural" to exclude synthetic ingredients, food additives, or chemical

15  preservatives. In a 2007 survey conducted by the Natural Marketing Institute, the majority of

16  respondents believed that the term "natural" in a product label meant that the product contained

17  100 percent natural ingredients, no artificial flavors, no artificial colors, no preservatives, no

18  chemicals, and a substantial percentage thought that it meant that the product was not highly

19  *processed. Moreover, 81 percent of respondents found products claiming to* be *"natural"*

20  very/somewhat important when purchasing food or beverage products. And large majorities also

21  found that products containing no preservatives, no artificial ingredients, no artificial flavors, and

22  no artificial colors to be very/somewhat important when purchasing food and beverage products.

23  These percentages are even larger among the health-conscious segments of the US population,

24  which are large-approximately 40 percent. What is more, the survey found that these trends have

25  increased from previous years, and consequently the subject labeling statements are probably far

26  more important to consumers today. Significantly, the survey also found that package labeling was

27  _____

[3]   *See*  http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm  and  http://www.fda.gov/AboutFDA/

28  Transparency/Basics/ucm2 14868 .html.

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 37-2014-20192-CU-BT-CTL

Exhibit B, Page 33

1 by far the most important source of information influencing consumers' purchasing decisions,

2 especially among the health-conscious segment of the population.

3   13. The labeling of products as "natural" or "all natural" (or words of similar import)

4 carries implicit health benefits important to consumers-benefits for which consumers are willing to

5 pay a premium over comparable products that are not so labeled and marketed. Defendants have

6 cultivated and reinforced a corporate image based on this theme, which they have emblazoned on

7 almost all of the Misbranded Products and even use the word "natural" in the trade name of certain

8 products (e.g., sodas and juices), despite the use of synthetic ingredients in these products. The

9 presence of synthetic ingredients in the Misbranded Products renders Defendants' product labels

10 and advertising false and misleading.

11   14. Moreover, like the FDA, the United States Department of Agriculture ("USDA"),

12 which regulates the labeling of meat and poultry, has also set limits on the use of the term

13 "natural." The USDA's Food Safety and Inspection Service states that the term "natural" may be

14 used on labeling of meat and poultry products so long as "(1) the product does not contain any

15 artificial flavor or flavorings, color ingredient, or chemical preservative ... or any other artificial or

16 synthetic ingredient, and (2) the product and its ingredients are not more than minimally

17 processed."

18   15. According to the USDA, "[m]inimal processing may include: (a) those traditional

19 processes used to make food edible or to preserve it or to make it safe for human consumption, *e.g.*,

20 smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not

21 fundamentally alter the raw product and/or which only separate a whole, intact food into

22 component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to

23 produce juices."[4] However, "(r)elatively severe processes, *e.g.*, solvent extraction, acid hydrolysis,

24 and chemical bleaching would clearly be considered more than minimal processing."[5]

25   16. Under USDA policy, a product cannot be labeled as being "natural" if an ingredient

26

27 [4] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at
http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy Book_ 082005 .pdf (last visited December 18, 2013).

28 [5] *Ibid.*

FIRST AMENDED CLASS ACTION COMPLAINT     5     Case No. 37-2014-20192-CU-BT-CTL

Exhibit B, Page 34

1  would significantly change the character of the product to the point that it could no longer be

2  considered a natural product. Moreover, any product purporting to be "natural" must conspicuously

3  identify any synthetic ingredients used on the label (*e.g.*, "all natural ingredients except dextrose,

4  modified food starch, *etc.*"). For example, a "turkey roast" cannot be called a "natural" product if it

5  contains beet coloring but can still bear the statement "all natural ingredients modified by beet

6  coloring." Defendants do not, however, include any such limiting language on the Misbranded

7  Products.[6]

8        17.    The terms "synthetic" and "artificial" closely resemble each other and in common

9  parlance are taken as synonymous. The scientific community defines "artificial" as something not

10  found in nature, whereas "synthetic" is defined as something man-made, whether it merely mimics

11  nature or is not found in nature.[7] In the scientific community, "synthetic" includes substances that

12  are also "artificial," but a synthetic substance also can be artificial or non-artificial.[8] However, the

13  common understanding of "artificial" resembles the scientific community's definition of

14  "synthetic." Indeed Webster's New World Dictionary defines "artificial" as "anything made by

15  human work, especially if in intimation of something natural," whereas "synthetic" is defined as "a

16  substance that is produced by chemical synthesis and is used as a substitute for a natural substance

17  which it resembles."[9]

18        18.    Congress has defined "synthetic" to mean "a substance that is formulated or

19  manufactured by a chemical process or by a process that chemically changes a substance extracted

20  from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to

21  substances created by naturally occurring biological processes." 7 U.S.C. § 6502(21). *See also* 7

22  C.P.R. § 205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a

23  substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic

24  [6] *Ibid.*

25  [7] Peter E. Nielsen, *Natural-synthetic-artificial!,* Artificial DNA: PNA & XNA, Volume1, Issue1 (July/August/
26  September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ (last visited December 18,
2013).

   [8] *Ibid.*

27  [9] *See* Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 28 1984),
28  "artificial," definition SYN at p.79.

FIRST AMENDED CLASS ACTION COMPLAINT        Case No. 37-2014-20192-CU-BT-CTL

1 | process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

2 | 19.    The Misbranded Products are not natural because they actually contain synthetic

3 | ingredients (e.g., citric acid, ascorbic acid, phosphoric acid, tartaric acid, calcium lactate, calcium

4 | gluconate) and color additives (e.g., grape skin extract, fruit and vegetable juice). *See* 21 C.P.R. §

5 | 101.9(c)(8)(v), 101.36(d), 101.36(e)(11)(i).

6 | 20.    Although these substances may occur naturally, the ingredients Hansen uses are

7 | chemically manufactured and highly processed-thus rendering them not natural.

8 | 21.    Moreover, Truvia is not natural because its primary ingredient is erythritol, a sugar

9 | alcohol usually made by processing genetically modified corn. In fact, Truvia uses only a small

10 | amount of the stevia extract Rebiana A ("Reb A"), which is itself a chemically processed form of

11 | stevia and hence not natural. However, the ingredient statement on the Misbranded Products

12 | claiming to be "sweetened with Truvia" does not even disclose the existence of erythritol, only Reb

13 | A, even though Reb A constitutes only one percent of Truvia.

14 | 22.    The Misbranded Products also boast that they contain a substantial percentage of

15 | vitamins and antioxidants such as vitamins C and E. These claims appear both on product labels

16 | and in advertising material. For example, Hansen's webpage for Apple Grape Juice states, "Besides

17 | great taste, there's the added benefit of naturally occurring antioxidants, as well as 120% Vitamin

18 | C. Not a drop of sugar or a speck of preservatives added."

19 | 23.    Hansen misrepresents the provenance of the vitamin C and leads consumers to

20 | believe that both it and the claimed antioxidant activity in the Misbranded Products are derived

21 | from fruit and not chemical sources.

22 | 24.    Further, Hansen's Diet Sodas are misbranded because although they purport to be

23 | "naturally flavored," they contain artificial flavors such as citric acid and phosphoric acid, which

24 | impart a tangy or sour taste to the sodas. These artificial flavors appear in the ingredient statement

25 | of the sodas before the natural flavor extracts.  Indeed the natural flavor extract almost always

26 | appears last in the ingredient statement.

27 | 25.    Because the Misbranded Products contain artificial flavoring and chemical

28 | preservatives without stating this fact on the product labels, Defendants violated the *California's*

---

7

1   Sherman Food, Drug, and Cosmetic Law, including California Health & Safety Code § 110740. In

2   this way, Defendants have also violated California Health & Safety Code § 110705 because words,

3   statements, or other information required pursuant to the Sherman Law to appear on the label or

4   labeling are not prominently placed upon the label or labeling with conspicuousness, as compared

5   with other words, statements, designs, or devices in the labeling and in terms as to render them

6   likely to be read and understood by the ordinary individual under customary conditions of purchase

7   and use.

8           ***Hansen Unlawfully Claims the Misbranded Products Contain "No Preservatives."***

9       26.    Rather than disclose the presence of chemical preservatives as required by law,

10  Defendants state the opposite through labeling statements claiming the Misbranded Products

11  contain "no preservatives."

12       27.    The Federal Regulations require food and beverage manufacturers to disclose the

13  presence of chemical preservatives "on the food or on its container or wrapper, or on any two or all

14  three of these, as may be necessary to render such statement likely to be read by the ordinary

15  person under customary conditions of purchase and use of such food." 21 CFR § 101.22( c).

16       28.    "The term chemical preservative means any chemical that, when added to food,

17  tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars,

18  spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood

19  smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 CFR § 101.22(a)(5).

20       29.    Pursuant to 21 C.F.R. § 101.22(j), a food to which a chemical preservative(s) is

21  added shall, except when exempt pursuant to 21 C.F.R. § 101.100 bear a label declaration stating

22  both the common or usual name of the ingredient(s) and a separate description of its function, e.g.,

23  "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote

24  color retention."

25       30.    The Misbranded Products fail to comply with the requirements of 21 C.F.R. §

26  101.22. Because many of the Misbranded Products have lengthy shelf-lives, they contain a number

27  of chemical preservatives such as ascorbic acid, citric acid, and vitamin E; however, the labels of

28  these products fail to describe the function of these chemical preservatives, thus violating the law

FIRST AMENDED CLASS ACTION COMPLAINT         Case No. 37-2014-20192-CU-BT-CTL

1    and concealing their presence.

2          31.      Ascorbic acid, citric acid, and vitamin E are not types of common salt, sugar,

3 vinegar, spice, or oil extracted from spices, nor are they substances added to food by direct

4 exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal

5 properties. As used by Defendants in their products, these chemicals prevent or retard deterioration

6 of the products. Therefore these chemicals are "chemical preservatives" in Hansen's products, as

7 defined in 21 C.F.R. § 101.22(a)(5), and must be disclosed and identified as such.

8        ***Hansen Unlawfully Claims That the Misbranded Products Contain "100% Juice."***

9          32.      Hansen's juice products falsely advertise that they are made with 100 percent juice.

10          33.      However, this is false owing to the addition of numerous synthetic, non-juice

11 ingredients. A beverage purporting to be juice must contain a percentage juice declaration. *See* 21

12 C.F.R. § 101.30(a). Where non-juice ingredients result in a diminution of the juice soluble solids or

13 a change in the volume of the product, then the 100 percent juice declaration is inappropriate. *Id.* at

14 subdiv. (b)(3). Moreover, even where there is no diminution of juice soluble solids or change in

15 volume, a 100 percent juice declaration is unlawful unless it is accompanied by the phrase "with

16 added___," the blank being filled in with a term such as "ingredient(s)," "preservative," or

17 "sweetener," as appropriate (e.g., "1 00% juice with added sweetener"). *Ibid.*

18          34.      Because the Misbranded Products do not contain this additional language, they are

19 mislabeled, and a reasonable consumer would be misled into believing that he or she is purchasing

20 a product that contains 100 percent juice and nothing else.

21        ***Hansen Unlawfully Claims That the Misbranded Products Contain No Added Sugar.***

22          35.      Hansen's juice products are intended to appeal to consumers who are concerned

23 with their sugar and caloric intake. In order to target sales to this demographic Hansen claims that

24 the misbranded juice products contain "No Sugar Added." This claim is reinforced on Hansen's

25 website, which states that certain products, such as Apple Raspberry Juice, are "naturally

26 sweetened" with Truvia.

27          36.      The Misbranded Products are mislabeled because they make the nutrient content

28 claim "No Sugar Added" but are made from concentrated fruit juices. A manufacturer is prohibited

9

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 37-2014-20192-CU-BT-CTL

from using the term "No Added Sugar" where the product contains concentrated fruit juice. *See* 21 C.F.R. § 101.60(c)(2)(ii). A product purporting to have "No Added Sugar" must also bear a statement that the food is not "low calorie" or "calorie reduced" unless the product meets the requirements for making such claims. *Id.* at subdiv. *Id.* at subdiv: (c)(2)(v). These products do not qualify as low-calorie foods because they provide more than 40 calories per reference amount customarily consumed. *See* 21 C.F.R. § 101.60(b)(2). However, the Misbranded Products do not carry the required disclaimer, nor do they, as required "direct[] consumers' attention to the nutrition panel for further information on sugar and calorie content." 21 C.F.R. § 101.60(c)(2)(v).

37.     Because consumers may reasonably be expected to regard terms that represent that a product contains "no sugar added" as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented through the use of phrases like "no sugar added" which they are not allowed to bear owing to high calorie levels and absence of mandated disclaimer or disclosure requirements.

### *Hansen Unlawfully Misbrands the Products Made from Concentrate.*

38.     Hansen's juice products are misbranded because they do not comply with regulations governing juices made from concentrate. *See* 21 C.F.R. § 1 02.33(g)(l). These regulations require the name of a beverage that is made from concentrate to include a term indicating that fact, such as "from concentrate" or "reconstituted." *Ibid.* The regulations further provide that "such terms must be included in the name of each individual juice or ... once adjacent to the product name so that it applies to all the juices." *Ibid.* Further, "[t]he term shall be in a type size no less than one-half the height of the letters in the name of the juice."

39.     Hansen's juice products are misbranded because although the labels include a statement that the juice is from concentrate, in many instances this statement is small, less than one-half the height of the letters in the name of the juice, and purposely positioned to mislead the average consumer, which again violates California law. *See* California Health & Safety Code § 110705.

///

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 37-2014-20192-CU-BT-CTL

*Hansen Unlawfully Claims the Misbranded Products Are unsweetened with Splenda.*"

40.    Hansen's Diet Sodas claim to be sweetened with Splenda, an artificial sweetener purportedly derived from sugar, and the front labels often show a Splenda logo.

41.    This claim is deceptive because these products lead consumers to believe they are sweetened only or primarily with Splenda when in fact they are also sweetened with acesulfame potassium, a different artificial sweetener that has been linked to medical conditions such as impaired cognitive function and is therefore avoided by many consumers.[10]

42.    The statement "Sweetened with Splenda" is rendered additionally deceptive because the ingredient statements disclose that acesulfame potassium is often the *primary* sweetener in these products, with Splenda being secondary.

*Hansen Unlawfully Fortifies the Misbranded Products.*

43.    Hansen claims that many of the Misbranded Products such as its Blue Sky sodas contain vitamins and antioxidants including ascorbic acid (synthetic vitamin C), beta carotene (synthetic vitamin A), and tocopherols (synthetic vitamin E). However, these vitamins and antioxidants are not naturally occurring; rather, Hansen fortifies these products with synthetic vitamins and antioxidants.

44.    This is improper. "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify ... snack foods such as candies and carbonated beverages." 21 CFR § 104.20(a). A nutrient cannot be added to a food or beverage unless it is physiologically available from the food. *Id.* at sub.(g).   A manufacturer may not make false or misleading statements regarding the addition of vitamins or minerals. *Id.* at sub.(h).

45.    Hansen violates federal labeling law by fortifying snack foods and carbonated beverages with vitamins and antioxidants. What is more, vitamins such as vitamins A and E are not physiologically available when added to beverages because they are fat soluble, meaning that they

[10] *See* Cong, et al. "Long-Term Artificial Sweetener Acesulfame Potassium Treatment Alters Neurometabolic Functions in C57BL/6J Mice," *Plus ONE,* Aug. 7, 2013, available at 28 http://www.plosone.org/article/ info%3Adoi%2F 10. 13 71 %2Fjournal.pone.0070257 Center for Science in the Public Interest, http://www. cspinet.org/reports/asekquot.html.

1  cannot be absorbed by the body in the absence of fat, which the Misbranded Products do not
2  contain.

3      46.    Moreover, Hansen deceptively represents that these sodas contain naturally
4  occurring vitamins and antioxidants through the depiction on product labels of images of fruits
5  such as raspberries and grapes with well-known antioxidant activity and vitamin content when in
6  fact the Misbranded Products contain *added* vitamins and antioxidants.

7                      *Allegations as to the Named Plaintiffs*

8      47.    Plaintiffs are and, throughout the entire class period, has been a resident of San
9  Diego County, California. Plaintiffs, are concerned about and try to avoid consuming foods that are
10  not natural, such as products containing synthetic, artificial or chemical ingredients, as well as
11  products that are high in sugar. For this reason, Plaintiffs are willing to pay and has paid a premium
12  for foods that are natural and has endeavored to refrain from buying equivalent foods which are not
13  natural and which do contain synthetic, artificial, or chemical ingredients and are high in sugar.

14      48.    During the class period, Plaintiffs purchased, among other products, multiple
15  Hansen Juices and Juice Boxes, and Hubert's Lemonade from various grocery store markets
16  throughout California.

17      49.    Before buying Hansen's products, Plaintiffs saw pictures of fruit on the product
18  labels and read statements that these products were "Natural," "100% Natural," "All Natural,"
19  "naturally flavored," "naturally sweetened with Truvia," "GMO Free," and contained "No
20  Preservatives," "100% juice," and specified antioxidants and vitamins, and Plaintiffs relied on
21  these representations in deciding to buy the products. Plaintiffs understood these representations as
22  meaning there was nothing artificial, synthetic, or chemically fabricated in the products, that they
23  did not contain preservatives, and that the antioxidants were derived from natural sources (such as
24  fruits) and were physiologically available when ingested.

25      50.    Consistent with this understanding, Plaintiffs did not see the small statements on
26  some of the product labels that the juices came from concentrate. Plaintiffs also read the "no sugar
27  added" statement on the products and believed that these were lower calorie or reduced-calorie
28  drinks and/or were not sweetened using concentrated fruit juice (or other sweeteners) and/or were

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 37-2014-20192-CU-BT-CTL

1   drawn to the products because of this label. Plaintiffs relied on this front-of-the-package
2   representation and did not scrutinize the nutrition panel for information on sugar and caloric
3   content.

4        51.    Moreover, Plaintiffs believed that sodas fortified with antioxidants and vitamins
5   were healthier for themselves and their families because the vitamins and antioxidants were
6   naturally occurring and could represent a source of the specified vitamins and antioxidants needed
7   in their diets.

8        52.    Finally, Plaintiffs relied on label representations that Hansen's Diet Soda was
9   sweetened with Splenda, which they preferred to other sweeteners because they believed that it was
10  derived from sugar.

11       53.    Plaintiffs not only purchased these products because of the identified representations
12  but also paid more money than they would have had to pay for other similar products that did not
13  make similar representations. Indeed, had Plaintiffs known that Defendants' representations were
14  false or deceptive, it would not have purchased these products but would have purchased brands
15  that accurately represented the product or, if these were not available, would have purchased less
16  expensive products that did not make such representations. In this way, Plaintiffs did not receive
17  the products it had bargained for and have lost money as a result in the form of paying money to
18  Defendants and paying a premium for Defendants' products owing to the misrepresentations.

19  <div align="center">**CLASS ALLEGATIONS**</div>

20       54.    Plaintiffs Chayla Clay and Mayan Mooney bring this action on behalf of themselves
21  and those similarly situated as a class action pursuant to Code of Civil Procedure § 382. Plaintiffs
22  Chayla Clay and Mayan Mooney seek to represent the following class: All persons who were
23  residents in California when they purchased one or more of the Misbranded Products from four
24  years prior to the filing of the Complaint and continuing to the present.

25       55.    The class excludes counsel representing the class, governmental entities,
26  Defendants, any entity in which Defendants have a controlling interest, Defendants' officers,
27  directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and
28  assigns, any judicial officer presiding over this matter, the members of their immediate families

1  and judicial staff, and any individual whose interests are antagonistic to other putative class
2  members.

3      56.    Plaintiffs Chayla Clay and Mayan Mooney reserve the right under California Rule
4  of Court 3.765 to amend or modify the class description with greater particularity or further
5  division into subclasses or limitation to particular issues.

6      57.    This action has been brought and may properly be maintained as a class action
7  under the provisions of Code of Civil Procedure § 382 because there is a well-defined community
8  of interest in the litigation and the class is easily ascertainable.

9      **A.    Numerosity**

10     58.    The potential members of the class as defined are so numerous that joinder of all
11 members of the class is impracticable. Although the precise number of putative class members has
12 not been determined at this time, Plaintiffs are Chayla Clay and Mayan Mooney informed and
13 believes that the proposed classes include thousands of members.

14     **B.    Commonality**

15     59.    There are questions of law and fact common to the class that predominate over any
16 questions affecting only individual putative class members. These common questions of law and
17 fact include:

18              a.    Whether Defendants' conduct was a "fraudulent practice" within the
19                    meaning of the Unfair Competition Law ("UCL"), Business & Professions
20                    Code § 17200, in that it was likely to mislead consumers;

21              b.    Whether Defendants' conduct was an "unfair practice" within the meaning
22                    of the UCL in that it offended established public policy and is immoral,
23                    unethical, oppressive, unscrupulous or substantially injurious to consumers;

24              c.    Whether Defendants' conduct was an "unlawful" practice within the
25                    meaning of the UCL;

26              d.    Whether Defendants' conduct was likely to deceive a consumer acting
27                    reasonably in the same circumstances;

28              e.    Whether Defendants advertise or market the Misbranded Products in a way

14

FIRST AMENDED CLASS ACTION COMPLAINT            Case No. 37-2014-20192-CU-BT-CTL

Exhibit B, Page 43

1    that is false or misleading;

2    f.    Whether Defendants violated California Business and Professions Code

3          §§17500, *et seq.*;

4    g.    Whether Defendants violated California Civil Code §§ 1750, *et seq.*;

5    h.    Whether Plaintiffs and members of the putative class are entitled to

6          restitution, injunctive, declaratory and/or other equitable relief;

7    i.    Whether Defendants have been unjustly enriched through the

8          misrepresentations alleged herein; and

9    j.    Whether Plaintiffs and the members of the class sustained monetary loss.

10   **C.    Adequacy of Representation**

11   60.    Plaintiffs Chayla Clay and Mayan Mooney will fairly and adequately represent and

12   protect the interests of the class. Counsel who represent Plaintiffs and putative class members are

13   experienced and competent in litigating class actions.

14   **D.    Superiority of Class Action**

15   61.    A class action is superior to other available means for the fair and efficient

16   adjudication of this controversy. Individual joinder of putative class members is not practicable,

17   and questions of law and fact common to putative class members predominate over any questions

18   affecting only individual putative class members. Each putative class member has been damaged

19   and is entitled to recovery by reason of Defendants' illegal policies or practices of failing to

20   compensate putative class members properly.

21   62.    Class action treatment will allow those persons similarly situated to litigate their

22   claims in the manner that is most efficient and economical for the parties and the judicial system.

23   Plaintiffs Chayla Clay and Mayan Mooney are unaware of any difficulties in managing this case

24   that should preclude class action.

25   **FIRST CAUSE OF ACTION**

26   **Unlawful Business Practices in Violation of**
     **Business and Professions Code §§ 17200, *et seq.***

27

28   63.    Plaintiffs incorporate by reference each allegation set forth above.

---

15

64.     Defendants' conduct constitutes unlawful business acts and practices under 12 Business & Professions Code §§ 17200, *et seq.*

65.     Defendants sold Misbranded Products in California during the class period.

66.     Defendant Hansen is a corporation and, therefore, is a "person" within the meaning of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code §§ 109875, *et seq.* (the "Sherman Act"). The Sherman Act adopts, incorporates and is identical to the federal Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA").

67.     Defendants' business practices are unlawful under § 17200, *et seq.*, by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Act and the misbranded food provisions of Article 6 of the Sherman Act.

68.     Defendants' business practices are unlawful under Business & Professions Code §§ 17200, *et seq.* by virtue of Defendants' violations of§ 17500, *et seq.*, which forbids untrue and misleading advertising.

69.     Defendants' business practices are unlawful under Business & Professions Code §§ 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

70.     Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold. Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.

71.     Defendants sold Plaintiffs and members of the putative class Misbranded Products that were not capable of being sold or legally held and which had no economic value and were legally worthless. Plaintiffs and each putative class member paid a premium price for the Misbranded Products.

72.     As a result of Defendants' illegal business practices, Plaintiffs and the members of the putative class are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any

16

putative class member any money paid for the Misbranded Products.

73.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiffs and each member of the putative class.

## SECOND CAUSE OF ACTION

### Unfair Business Practices in Violation of
### Business & Professions Code §§ 17200, *et seq.*

74.     Plaintiffs incorporate by reference each allegation set forth above.

75.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

76.     A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

77.     Defendants' conduct as set forth herein constitutes unfair business acts and practices.

78.     Defendants sold Misbranded Products in California during the class period.

79.     Plaintiffs and the members of the putative class suffered a substantial injury by virtue of buying Defendants' Misbranded Products, which they would not have purchased absent Defendants' illegal conduct.

80.     Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Products and their sale of unsalable misbranded products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

81.     Defendants sold Plaintiffs and the members of the putative class Misbranded Products that were not capable of being legally sold or held and that had no economic value and were legally worthless. Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

82.     Plaintiffs and the members of the putative class who purchased Defendants' Misbranded Products had no way of reasonably knowing that the products were misbranded and

17

1 | were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably
2 | avoided the injury each of them suffered.

3 |     83.   The consequences of Defendants' conduct as set forth herein outweigh any
4 | justification, motive or reason therefor. Defendants' conduct is and continues to be unlawful,
5 | unscrupulous and contrary to public policy, and is substantially injurious to Plaintiffs and the
6 | members of the putative class.

7 |     84.   As a result of Defendants' conduct, Plaintiffs and the members of the putative class,
8 | pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future
9 | conduct by Defendants, and such other orders and judgments which may be necessary to disgorge
10 | Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Products by
11 | Plaintiffs and the members of the putative class.

12 | <center>**THIRD CAUSE OF ACTION**</center>

13 | <center>**Fraudulent Business Practices in Violation of**
14 | **Business and Professions Code §§ 17200, *et seq.***</center>

15 |     85.   Plaintiffs incorporate by reference each allegation set forth above.

16 |     86.   Defendants' conduct as set forth herein constitutes fraudulent business practices
17 | under California Business and Professions Code sections §§ 17200, *et seq.*

18 |     87.   Defendants sold Misbranded Products in California during the class period.

19 |     88.   Defendants' misleading marketing, advertising, packaging, and labeling of the
20 | Misbranded Products and misrepresentation that the products were capable of sale, capable of
21 | possession, and not misbranded were likely to deceive reasonable consumers, and in fact Plaintiffs
22 | and the members of the putative class were deceived.

23 |     89.   Defendants' fraud and deception caused Plaintiffs and the members of the putative
24 | class to purchase Misbranded Products that they would otherwise not have purchased had they
25 | known the true nature of those products.

26 |     90.   Defendants sold Plaintiffs and the members of the putative class Misbranded
27 | Products that were not capable of being sold or legally held and that had no economic value and
28 | were legally worthless. Plaintiffs and the members of the putative class paid a premium price for

<center>18</center>

FIRST AMENDED CLASS ACTION COMPLAINT      Case No. 37-2014-20192-CU-BT-CTL

1    the Misbranded Products.

2        91.    As a result of Defendants' conduct as set forth herein, Plaintiffs and each member of

3    the putative class, pursuant to Business and Professions Code § 17203, are entitled to an order

4    enjoining such future conduct by Defendants, and such other orders and judgments which may be

5    necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants'

6    Misbranded Products by Plaintiffs and the members of the putative class.

7                            **FOURTH CAUSE OF ACTION**

8                        **Misleading Advertising in Violation of**
                     **Business and Professions Code §§ 17500, *et seq.***
9

10       92.    Plaintiffs incorporate by reference each allegation set forth above.

11       93.    Plaintiffs asserts this cause of action for violations of California Business and

12   Professions Code §§ 17500, *et seq.,* for misleading and deceptive advertising against Defendants.

13       94.    Defendants sold Misbranded Products in California during the class period.

14   Defendants engaged in a scheme of offering the Misbranded Products for sale to Plaintiffs and the

15   members of the putative class by way of, *inter alia,* product packaging and labeling, and other

16   promotional materials. These materials misrepresented and/or omitted the true contents and nature

17   of Defendants' Misbranded Products.

18       95.    Defendants' advertisements and inducements were made within California and

19   come within the definition of advertising as contained in Business and Professions Code §§ 17500,

20   *et seq.,* in that such product packaging and labeling, and promotional materials were intended as

21   inducements to purchase Defendants' Misbranded Food Products and are statements disseminated

22   by Defendants to Plaintiffs and the members of the putative class that were intended to reach the

23   members of the putative class. Defendants knew, or in the exercise of reasonable care should have

24   known, that these statements were misleading and deceptive as set forth herein.

25       96.    In furtherance of its plan and scheme, Defendants prepared and distributed within

26   California via product packaging and labeling, and other promotional materials, statements that

27   misleadingly and deceptively represented the composition and the nature of Defendants'

28   Misbranded Products. Plaintiffs and members of the putative class necessarily and reasonably

                                        19

1    relied on Defendants' material and were the intended targets of such representations.

2        97.    Defendants' conduct in disseminating misleading and deceptive statements in

3    California and nationwide to Plaintiffs and the members of the putative class was and is likely to

4    deceive reasonable consumers by obfuscating the true composition and nature of Defendants'

5    Misbranded Products, in violation of the "misleading prong" of California Business and

6    Professions Code §§ 17500, *et seq.*

7        98.    As a result of Defendants' violations of the "misleading prong" of California

8    Business and Professions Code §§ 17500, *et seq.*, Defendants have been unjustly enriched at the

9    expense of Plaintiffs and the members of the putative class. Misbranded products cannot be legally

10   sold or held and have no economic value and are legally worthless. Plaintiffs and the members of

11   each Class paid a premium price for the Misbranded Products.

12       99.    Plaintiffs and the members of the putative class, pursuant to Business and

13   Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants,

14   and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten

15   gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the

16   members of the putative class.

17

18                              **FIFTH CAUSE OF ACTION**

19                          **Untrue Advertising in Violation of**
                     **Business and Professions Code §§ 17500, *et seq.***
20

21       100.   Plaintiffs incorporate by reference each allegation set forth above.

22       101.   Plaintiffs asserts this cause of action against Defendant for violations of California

23   Business and Professions Code §§ 17500, *et seq.*, regarding untrue advertising. Defendants sold

24   Misbranded Products in California during the class period.

25       102.   Defendants engaged in a scheme of offering Defendants' Misbranded Products for

26   sale to Plaintiffs and the members of the putative class by way of product packaging and labeling,

27   and other promotional materials. These materials misrepresented and/or omitted the true contents

28   and nature of Defendants' Misbranded Products. Defendants' advertisements and inducements

                                         20

were made in California and come within the definition of advertising as contained in Business and Professions Code §§ 17500, *et seq.,* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Product and are statements disseminated by Defendants to Plaintiffs and the members of the putative class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

103.   In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Products, and falsely misrepresented the nature of those products. Plaintiffs and the members of the putative class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

104.   Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiffs and the members of the putative class by obfuscating the contents, nature, and quality of Defendants' Misbranded Products, in violation of the "untrue prong" of California Business and Professions Code § 17500.

105.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code §§ 17500, *et seq.,* Defendants have been unjustly enriched at the expense of Plaintiffs and the members of the putative class. Misbranded products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiffs and the members of the putative class paid a premium price for the Misbranded Products.

106.   Plaintiffs and the members of the putative class, pursuant to Business and Professions Code §§ 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiffs and the members of the putative class.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT                    Case No. 37-2014-20192-CU-BT-CTL

## SIXTH CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act,
### California Civil Code §§ 1750, *et seq.*

107.    Plaintiffs incorporate by reference each allegation set forth above.

108.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

109.    Plaintiffs and each member of the putative class are "consumers" within the meaning of Civil Code§ 1761(d).

110.    The purchases of the Defendants' Misbranded Products by consumers constitute "transactions" within the meaning of Civil Code § 1761 (e), and the Misbranded Products offered by Defendants constitute "goods" within the meaning of Civil Code§ 1761(a).

111.    Defendants have violated, and continue to violate, the CLRA in at least the following respects:

        a.     In violation of Civil Code § 1770(a)(5), Defendants represented that the Misbranded Products had characteristics which they did not have;

        b.     In violation of Civil Code § 1770(a)(7), Defendants represented that the Misbranded Products were of a particular standard, quality, or grade, of which they were not; and

        c.     In violation of Civil Code § 1770(a)(9), Defendants advertised the Misbranded Products with the intent not to provide what it advertised.

112.    As a direct and proximate cause of Defendants' violation of the CLRA as alleged hereinabove, Plaintiffs and members of the putative class have suffered harm by Defendants' to induce them to purchases Misbranded Products and pay a premium therefore where such products did not conform to Defendants' representations.   As a result, Plaintiffs, at this time, seeks injunctive relief against Defendants requiring them to cease and despite from further instances of advertising and selling Misbranded Products in California.

113.    In addition, concurrent with the filing of this Complaint, ppursuant to § 1782(a) of the CLRA, in conjunction with the filing of this action, Plaintiffs will separately notify Defendants

22

1   by certified mail, return receipt requested, of the particular violations of § 1770 of the CLRA and

2   demand that Defendants remedy the actions described above and give notice to all similarly

3   affected California consumers of its intention to do so.

4        114.   If Defendants fail to respond to Plaintiff's demand within 30 days of this notice,

5   pursuant to § 1782(d) of the CLRA, Plaintiff will amend this Complaint to request actual damages,

6   plus punitive damages, interest and attorneys' fees. Additionally, Plaintiffs will seek to recover up

7   to $5,000 per eligible Class members as provided for under § 1780(b) of the CLRA. Accordingly,

8   at the present time (and without prejudice to plaintiff's right to further amendment), pursuant to §

9   1782(d) of the CLRA, plaintiffs only seeks an order enjoining the above-described wrongful acts

10  and practices of defendant, plus costs and attorneys' fees, and any other relief which the Court

11  deems proper.

12  **SEVENTH CAUSE OF ACTION**

13  **Restitution Based on Quasi-Contract/Unjust Enrichment**

14       115.   Plaintiffs incorporate by reference each allegation set forth above.

15       116.   Defendants' conduct in enticing Plaintiffs and putative class members to purchase

16  the Misbranded Products through their false and misleading advertising and packaging as described

17  throughout this Complaint is unlawful because the statements contained on Defendants' product

18  labels are untrue.

19       117.   Defendants' took monies from Plaintiffs and members of the putative class for

20  products that purported to comply with the representations set forth above, even though the

21  Misbranded Products did not conform to these representations.

22       118.   Defendants have been unjustly enriched at the expense of Plaintiffs and the putative

23  class as result of Defendants' unlawful conduct alleged herein, thereby creating a quasi-contractual

24  obligation on Defendants to restore these ill-gotten gains to Plaintiffs and putative class members.

25       119.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and

26  putative class members are entitled to restitution or restitutionary disgorgement, in an amount to be

27  proved at trial.

28

23

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 37-2014-20192-CU-BT-CTL

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves self and on behalf of the other members of the putative class, pray as follows:

A.    For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff Chayla Clay and Mayan Mooney be appointed the Class Representatives, and that Plaintiffs' counsel be appointed counsel for the class;

B.    For restitution in such amount that Plaintiffs and all putative class members paid to purchase the Misbranded Products, or the premiums paid therefor on account of the misrepresentation as alleged above, or restitutionary disgorgement of the profits Defendants have obtained from those transactions;

C.    For compensatory damages for causes of action for which they are available;

D.    For injunctive relief allowable under Civil Code § 1780;

E.    For punitive damages for causes of action for which they are available;

F.    For a declaration and order enjoining Defendants from advertising their products misleadingly in violation of California's Sherman Food, Drug, and Cosmetic Law, and other applicable laws and regulations as specified in this Complaint;

G.    For an order awarding reasonable attorneys' fees and the costs of suit herein;

H.    For an award of pre- and post-judgment interest;

I.    For an order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants' as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

J.    Such other and further relief as may be deemed necessary or appropriate.

///

///

///

///

///

24

FIRST AMENDED CLASS ACTION COMPLAINT          Case No. 37-2014-20192-CU-BT-CTL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

Dated: ~~January 30, 2014~~  March 10, 2015

By: _____

Mark L. Knutson, Esq. (SBN 131770)
mlk@classactionlaw.com
William R. Restis, Esq. (SBN 246823)
wrr@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
501 West Broadway, Suite 1250
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Attorneys for Plaintiffs

25

FIRST AMENDED CLASS ACTION COMPLAINT

## AFFIDAVIT OF VENUE BY PLAINTIFF CHAYLA CLAY

I, CHAYLA CLAY, hereby declare that:

1.     I am one of the plaintiffs in the above captioned case and assert a cause of action against Defendants MONSTER BEVERAGE CORPORATION and MONSTER ENERGY COMPANY for violations of the California Consumer Legal Remedies Act. I am a competent adult, over eighteen years of age, and at times material to this action I have been a citizen of the United States and a resident of the State of California. I am making this declaration in support of the First Amended Class Action Complaint, attached hereto.

2.     I purchased Defendants' Hansen branded juices, juice boxes, and Smoothie Nectar products at Henry's and other San Diego stores, during the past four years. As such, the transaction which gave rise to this Complaint occurred within the County of San Diego.

3.     Additionally, Defendant advertises and distributes its Hansen branded juices, juice boxes, and Smoothie Nectar products through San Diego County, thus Defendant conducts substantial business within this County.

4.     Accordingly, pursuant to California Code of Civil Procedure, section 1780, the Superiour Court of the State of California, County of San Diego is the proper venue for Plaintiff's Consumer Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on March ___ 2015 in San Diego, California.

CHAYLA CLAY

FINKELSTEIN & KRINSK LLP
Mark L. Knutson, Esq. (SBN 131770)
mlk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
501 West Broadway, Suite 1250
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| MARCY KRINSK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MONSTER BEVERAGE CORPORATION, a Delaware corporation, dba HANSEN BEVERAGE COMPANY, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: 37-2014-00020192-CU-BT-CTL<br><br>**PROOF OF SERVICE**<br><br>Judge:     Hon. Joel R. Wohlfeil<br>Dept.:      C-73<br>Trial Date: October 23, 2015 |

I, the undersigned, declare that I am over the age of eighteen (18) years and not a party to the within action. I am employed in the County of San Diego, State of California. My business address is 501 West Broadway, Suite 1250, San Diego, California 92101-3593.

I served the following document(s) on March 10, 2015:

## FIRST AMENDED CLASS ACTION COMPLAINT

On the person(s) listed below:

Dan Marmalefsky, Esq.
dmarmalefsky@mofo.com
Purvi G. Patel, Esq.
ppatel@mofo.com
Adam M. Sevell, Esq.
asevell@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543

1

Telephone: 213.892.5200
Facsimile: 213.892.545

By the following means:

__xx__   **VIA U.S. MAIL:** I enclosed the documents in a sealed envelope or package addressed to the person(s) at the address(es) listed above. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is place for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

___   **VIA OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address listed above. I placed the envelope or package for collection and overnight delivery to an office or a regularly utilized drop box of the overnight delivery carrier.

___   **VIA FACSIMILE TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the person(s) at the fax number(s) listed above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

___   **VIA ELECTRONIC TRANSMISSION:** Based on a court order or agreement of the parties to accept electronic service, I caused the documents to be sent to the person(s) at the electronic service address(es) listed above.

___   **VIA PERSONAL SERVICE:** I personally delivered the documents to the person(s) at the address(es) listed above. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by 1 leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court, at whose direction the within service was made. Executed: March 10, 2015, at San Diego, California.

REBECKA GARCIA

PROOF OF SERVICE
File # 7059.26

Case No. 37-2014-00020192-CU-BT-CTL

FROM

**FINKELSTEIN & KRINSK LLP**
ATTORNEYS AT LAW
THE KOLL CENTER
501 WEST BROADWAY, SUITE 1250
SAN DIEGO, CALIFORNIA 92101-3579

TO:

Dan Marmalefsky, Esq.
Purvi G. Patel, Esq.
Adam M. Sevell, Esq.
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543

RECEIVED
MAR 1 3 2015
DAN MARMALEFSKY

SENT TO DOCKET
ON: 03-13-15

COURT DOCS

638384

P-DRIVE



Exhibit B, Page 58

# EXHIBIT C

1   Jordan L. Lurie (SBN 130013)
    Jordan.Lurie@capstonelawyers.com
2   Mark S. Greenstone (SBN 199606)
    Mark.Greenstone@capstonelawyers.com
3   Tarek H. Zohdy (SBN 247775)
    Tarek.Zohdy@capstonelawyers.com
4   Cody R. Padgett (SBN 275553)
    Cody.Padgett@capstonelawyers.com
5   Capstone Law APC
    1840 Century Park East, Suite 450
6   Los Angeles, California 90067
    Telephone:  (310) 556-4811
7   Facsimile:  (310) 943-0396

8   Attorneys for Plaintiffs
    Frank Cuzakis and Jack Hudson

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  FOR THE COUNTY OF LOS ANGELES

12

13  FRANK CUZAKIS and JACK HUDSON,          Case No.:  BC513620
    individually, and on behalf of other
14  members of the general public similarly   [*Initially Assigned to Judge Lee Smalley Edmon;*
    situated,                                  *Judge Amy D. Hogue Currently Presiding*]
15
                Plaintiffs,                   **THIRD AMENDED CLASS ACTION
16                                            COMPLAINT**
            v.
17                                            (1)   Violation of Unfair Competition Law
    MONSTER ENERGY COMPANY;                         (Cal. Business & Professions Code
18  MONSTER BEVERAGE                                §§ 17200 *et seq.*);
    CORPORATION; and DOES 1 through 10,      (2)   Violation of False Advertising Law (Cal.
19  inclusive,                                      Business & Professions Code §§ 17500 *et
                                                    seq.*);
20              Defendants.                   (3)   Violation of the Consumers Legal
                                                    Remedies Act (Cal. Civil Code §§ 1750 *et
21                                                  seq.*);
                                             (4)   Negligent Misrepresentation; and
22                                           (5)   Breach of Quasi-Contract.

23                                            **Jury Trial Demanded As To All Claims That
                                             Are So Triable**
24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT**

Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

1. Plaintiffs FRANK CUZAKIS and JACK HUDSON (hereinafter "Plaintiffs") bring this class action complaint against Defendants MONSTER ENERGY COMPANY and MONSTER BEVERAGE CORPORATION (hereinafter "Defendants") to stop Defendants' practice of releasing misbranded products into the stream of commerce and to obtain redress for all California residents injured by this conduct.

2. Specifically, this action arises out of unlawful "No Sugar Added" statements placed by Defendants on the labels and/or packaging of Hansen's-branded beverages, including but not limited to Hansen's Apple Juice.[1]  Food and Drug Administration ("FDA") regulations promulgated pursuant to the Food, Drug, and Cosmetics Act of 1938 ("FDCA") specify the precise nutrient content claims concerning sugar that may be made on a food label. 21 C.F.R. § 101, Subpart D.  Hansen's "No Sugar Added" labels fail to comply with these requirements, as set forth below.   As a result, Defendants have violated California's Sherman Law and California consumer protection statutes, which wholly adopt the federal requirements.

3. This action is not pre-empted by federal law.  State law claims based on a food product's non-conforming, misleading, or deceptive label are expressly permitted where, as here, they impose legal obligations identical to the FDCA and corresponding FDA regulations, including FDA regulations concerning naming and labeling.

**NATURE OF THE CASE**

**& COMMON ALLEGATIONS OF FACT**

4. According to the American Heart Association, most Americans consume more than double the daily recommended amount of added sugars.[2]  The steady increase in added

---

[1] Other Hansen's Products that similarly include the unlawful "No Sugar Added" statement include those referenced in Paragraph 15 of the Complaint.
[2] *See* http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-

THIRD AMENDED CLASS ACTION COMPLAINT

sugar consumption over the past 30 years has led to an obesity epidemic in the United States, which has the highest level of obesity among industrialized nations.[3]  Moreover, even in non-obese individuals, excess sugar consumption can have negative health consequences. Overconsumption of sugar has been associated with a variety of health problems, many of which can cause serious complications or death, including, but not limited to, heart disease, tooth decay, diabetes, and cancer.  As a result, consumers have become increasingly sugar- and calorie-conscious.

5.     Monster Energy Company is one of the country's most widely-distributed fruit juice manufacturers.

6.     To profit from the public's well-placed, increasing focus on sugar consumption and overall caloric content, Defendants have prominently featured a "No Sugar Added" statement on the label and/or packaging of a number of beverage products.  The image below depicts the "No Sugar Added" statement as featured on several Hansen's-branded Products[4] (the offending labels at issue in this complaint, including, but not limited to, the Apple Juice label depicted below, shall hereinafter be collectively referred to as the "No Sugar Added Label"):



101_UCM_306024_Article.jsp (last visited June 1, 2013).
    [3] *See, e.g.*, "US and Global Obesity Levels:  The Fat Chart – Obesity – Procon.org" http://obesity.procon.org/view.resource.php?resourceID=004371 (last visited May 20, 2013).
    [4] Not actual size.

7.     The FDCA provides the FDA with the authority to oversee the safety of food, drugs, and cosmetics.  21 U.S.C. § 301, *et seq.*  Pursuant to this authority, the FDA has promulgated regulations that spell out in painstaking detail what nutrient content claims may be made on food labels, and how they must be presented.  The FDA regulations controlling nutrient content claims provide, in pertinent part:

> (a) **This section and the regulations in subpart D of this part apply to foods that are intended for human consumption and that are offered for sale, including conventional foods and dietary supplements.**
> (b) A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter.
> (1) **An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., "low sodium" or "contains 100 calories."**
> (2) An implied nutrient content claim is any claim that:
> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
> (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat")

21 C.F.R. § 101.13 (emphasis added).

8.     21 C.F.R. Section 101, Subpart D, in turn, regulates nutrient content claims regarding sugar and specifically provides that phrase "No Sugar Added"  may not be made *at all* if the product contains concentrated fruit juice, if the food it resembles and for which it substitutes normally does not contain added sugars, or if it fails to bear a statement that it is not a low or reduced calorie food:

> (c) *Sugar content claims* --(1)*Use of terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar."* Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories. Consequently, except as provided in paragraph (c)(2) of this section, a food may not be

labeled with such terms unless:

(i) The food contains less than 0.5 g of sugars, as defined in 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar;" and

(iii)(A) It is labeled "low calorie" or "reduced calorie" or bears a relative claim of special dietary usefulness labeled in compliance with paragraphs (b)(2), (b)(3), (b)(4), or (b)(5) of this section, or, if a dietary supplement, it meets the definition in paragraph (b)(2) of this section for "low calorie" but is prohibited by 101.13(b)(5) and 101.60(a)(4) from bearing the claim; or

(B) Such term is immediately accompanied, each time it is used, by either the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control."

**(2) The terms "no added sugar," "without added sugar," or "no sugar added" may be used only if:**

(i) No amount of sugars, as defined in 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and

**(ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and**

(iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and

**(iv) The food that it resembles and for which it substitutes normally contains added sugars; and**

**(v) The product bears a statement that the food is not "low calorie" or "calorie reduced" (unless the food meets the requirements for a "low" or "reduced calorie" food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.**

21 C.F.R 101, Subpart D, §101.60(c)(1)-(2) (emphasis added).

      9.    A food product with a reference amount customarily consumed ("RACC") of

greater than 30 grams is considered to be "low calorie" only if it does not provide more than

40 calories per RACC.  21 C.F.R. § 101.60(b)(2)(i)(A).  A food product is considered to be

"calorie reduced" only when it contains at least twenty-five percent fewer calories per RACC

than an appropriate reference food as described in Section 101.13(j)(1).  *Id.* at §

101.60(b)(4)(i).  Under Section 101.13(j)(1), an appropriate reference food for a reduced

calorie claim is a similar competing product, such as one brand of potato chips compared to

another; the manufacturer's regular product, such as the original manufacturer's product

compared to a reformulated version of the same product; or an appropriate representative

value for that type of food from, among other things, a valid database.

10.     These regulations are carefully crafted to require that nutrient content claims

concerning the presence, and addition, of sugars in food products be presented in a qualified

and contextualized manner so that consumers are not misled.  The FDA has explained: "In

implementing the guidelines, the purpose of the 'no added sugar' claim is to present

consumers with information that allows them to differentiate between similar foods that would

normally be expected to contain added sugars, with respect to the presence or absence of

added sugars.  Therefore, the 'no added sugar' claim is not appropriate to describe foods that

do not normally contain added sugars."  58 Fed. Reg. 2302, 2327 (Jan. 6, 1993).  The FDA

goes on to cite fruit juices as an example of a food group for which "no sugar added" claims

are inappropriate due to their "substantial inherent sugar content."  *Id.*

11.     Hansen's Products are offered in virtually every supermarket, drugstore, and

convenience store in this country, yet its products featuring the statement "No Sugar Added"

do not conform with the FDCA requirements and related regulations.

12.     For example, Hansen's Natural Apple Juice (depicted above) prominently

features the statement "No Sugar Added" on its front label, notwithstanding the fact that it is

made from concentrate, as confirmed by the label.  However, 21 C.F.R 101, Subpart D,

Section 101.60(c)(2) (ii) unequivocally states that the statement "No Sugar Added" may not

be made on food and beverage products that contain concentrated fruit juice.

13.     Moreover, there is no food that Hansen's Natural Apple Juice resembles and for

1    which it substitutes that normally contains added sugars.  The most closely related food

2    products—other brands of apple juice—generally do not contain added sugars either, due to

3    the substantial inherent sugar content of apple juice.  As a result, the use of the No Sugar

4    Added Label is inappropriate and in violation of 21 C.F.R 101, Subpart D, Section

5    101.60(c)(2)(iv).

6         14.    Defendants also fail to state that their Natural Apple Juice is not a "low calorie"

7    or "calorie reduced" product anywhere on its front or back label, notwithstanding the fact that

8    it contains 120 calories per reference serving greater than 30 grams.  This is about as many

9    calories as a conventional 12 ounce soft drink and nearly three times greater than the 40

10   calories per RACC allowed to qualify as a low calorie food.  The caloric content per RACC of

11   Defendants' Natural Apple Juice is the same as, or substantially similar to, the caloric content

12   per RACC of other comparable apple juice products offered by Defendants' competitors.

13   Defendants' Natural Apple Juice's caloric content is also greater than the 114 calories per

14   eight ounce serving listed on the USDA National Nutrient Database for Standard Reference

15   for apple juice.[5]  Moreover, Defendants offer no "regular" apple juice for which Defendants'

16   Natural Apple Juice is a substitute – this *is* its regular product.  Defendants' Natural Apple

17   Juice is therefore neither a low or reduced calorie food by any measure, and Defendants'

18   failure to include a statement to this effect violates 21 C.F.R 101, Subpart D, Section

19   101.60(c)(2)(v).

20        15.    Various other Hansen's-branded beverages also bear labels and/or packaging

21   which state "No Sugar Added" despite the fact that they are made from concentrated fruit

22   juice, and/or do not resemble and substitute for foods that normally contain added sugars,

23   and/or fail to indicate they are not low or reduced calorie foods when in fact they are not,

24   including, but not limited to, the following: Hansen's Natural Apple Grape Juice, Hansen's

25

26   [5]*See* U.S. Department of Agriculture, Agricultural Research Service: USDA National Nutrient
     Database for Standard Reference, Release 26, http://ndb.nal.usda.gov/ndb/search/list (search
27   "Apple Juice"; then follow hyperlink for "09400 Apple Juice, canned or bottled, unsweetened,
     with ascorbic acid"; and input "8" in "Nutrient Unit, fl oz.") (last visited February 7, 2014).
28

THIRD AMENDED CLASS ACTION COMPLAINT

Natural Pineapple Juice, Hansen's Natural Apple Strawberry Juice, and Hansen's Natural Organic 100% Apple Juice.  Hansen's Natural Apple Juice and the above-identified products shall hereinafter be referred to as the "Hansen's Products."  True and correct photos of the offending labels are attached hereto as Exhibit A.

16.     The Hansen's Products with No Sugar Added Label are misbranded products under applicable California law.  By way of this complaint, Plaintiffs seek to impose requirements that are identical to and do not exceed the federal requirements.

17.     Specifically, California's Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA" as "the food labeling regulations of this state."  Cal. Health & Saf. Code § 110100(a).

18.     Moreover, the Sherman Law specifically adopts and incorporates specific federal food laws and regulations.  Under California's Sherman Law, "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."  Cal. Health & Saf. Code § 110670.  Similarly, a food product is "misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. § 343(q)) of the federal act and the regulations adopted pursuant thereto."  Cal. Health  & Saf. Code § 110665.  A food product is misbranded if words, statements, and other information required by the Sherman Law to appear on its labeling are either missing or not sufficiently conspicuous.  Cal. Health & Saf. Code § 110705.  Finally, the Sherman Law holds "any food is misbranded if its labeling is false or misleading in any particular."  Cal. Health & Saf. Code § 110660.

19.     State law claims based on a food product's non-conforming, misleading, or deceptive label are expressly permitted when they impose legal obligations identical to the FDCA and corresponding FDA regulations, including FDA regulations concerning naming and labeling.  *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1094-95 (2008).  Defendants' conduct thus constitutes a violation of California law for which Plaintiffs and class members are entitled to seek redress under the Unfair Competition Law ("UCL"),

1    Consumers Legal Remedies Act ("CLRA"), and other California consumer protection statutes.

2        20.    On behalf of the class, Plaintiffs seek an injunction requiring Defendants to

3    cease circulation of misbranded beverage products and an award of damages to the class

4    members, together with costs and reasonable attorneys' fees.

5    <div align="center">**PARTIES**</div>

6        21.    Plaintiff FRANK CUZAKIS is a citizen and resident of the State of California,

7    County of Los Angeles.

8        22.    Plaintiff JACK HUDSON is a citizen and resident of the State of California.

9        23.    Defendant MONSTER ENERGY COMPANY is a corporation with its

10   principal office at 550 Monica Circle, Suite 201, Corona, California 92880.

11       24.    Defendant MONSTER BEVERAGE CORPORATION is a corporation with its

12   principal office at 550 Monica Circle, Suite 201, Corona, California 92880.

13       25.    Plaintiffs are informed and believe, and thereon allege, that MONSTER

14   ENERGY COMPANY is a wholly owned subsidiary of MONSTER BEVERAGE

15   CORPORATION.

16       26.    Plaintiffs are informed and believe, and thereon allege, that each and all of the

17   acts and omissions alleged herein was performed by, or is attributable to, MONSTER

18   ENERGY COMPANY, MONSTER BEVERAGE CORPORATION, and/or DOES 1 through

19   10 (collectively "Defendants") each acting as the agent for the other, with legal authority to

20   act on the other's behalf.  The acts of any and all Defendants were in accordance with, and

21   represent, the official policy of Defendants.  Plaintiffs are unaware of the true names or

22   capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but

23   will seek leave of this Court to amend the complaint and serve such fictitiously-named

24   Defendants once their names and capacities become known.

25       27.    Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10

26   were the partners, agents, owners, shareholders, managers, or employees of MONSTER

27   ENERGY COMPANY and/OR MONSTER BEVERAGE CORPORATION,  at all relevant

28   times.

28.     Plaintiffs are informed and believe, and thereon allege, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all the other Defendants in proximately causing the damages herein alleged.

29.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions as alleged herein.

## JURISDICTION AND VENUE

30.     This class action is brought pursuant to California Code of Civil Procedure Section 382.  Plaintiffs are California residents and the action is only brought on behalf of classes of California residents and purchasers.  The monetary damages and restitution sought by Plaintiffs exceeds the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.

31.     This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10.  The statutes under which this action is brought do not specify any other basis for jurisdiction.

32.     This Court has jurisdiction over all Defendants because, upon information and belief, Defendants are either citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.  Additionally, both Defendants have their principal place of business in the State of California.

33.     Because Defendants are corporations whose principal places of business are in the State of California, Plaintiffs are citizens of California, and this class action is only brought on behalf of classes of California residents and purchasers, there is no diversity of citizenship.

34.     Venue is proper in this Court because, upon information and belief, Defendants reside, transact business, or have offices in this county and the acts and omissions alleged

1  herein took place in this county.

2  <div align="center">**PLAINTIFFS' FACTS**</div>

3      35.    Plaintiff FRANK CUZAKIS is a health-conscious individual who is currently

4  afflicted with diabetes.  He was diagnosed with diabetes twenty-seven (27) years ago and, for

5  the past seven (7) years, has required the use of an insulin pump.  Based on his condition, he

6  actively seeks out and purchases products that are low in sugar and/or contain no added

7  sugars.

8      36.    Through about January of 2013, Mr. Cuzakis regularly purchased one or more

9  of the Hansen's Products with No Sugar Added Label, including Hansen's Natural Apple

10  Juice and Hansen's Natural Apple Grape Juice, about every two weeks at Food 4 Less grocery

11  store in Pasadena, California, and a Walmart in Duarte, California.

12      37.    Plaintiff JACK HUDSON is a health-conscious individual who is currently

13  afflicted with diabetes.  Based on his condition, he actively seeks out and purchases products

14  that are low in sugar and/or contain no added sugars.

15      38.    Through about April of 2013, Mr. Hudson regularly purchased one or more of

16  the Hansen's Products with No Sugar Added Label, including Hansen's Natural Pineapple

17  Juice, about once or twice a month at retail stores in California.

18      39.    Before purchasing the misbranded Hansen's Products, Plaintiffs read and

19  reasonably relied upon the product packaging and specifically the No Sugar Added Label.

20  The No Sugar Added Label caused Plaintiffs to believe that the Hansen's Products they

21  purchased contained less sugar than, and were healthier than, other comparable products.  For

22  example, while shopping, Plaintiff Cuzakis observed that the label of Defendants' competitor

23  Treetop did not contain a "no sugar added" claim.  This caused Plaintiff Cuzakis to believe

24  that Hansen's Natural Apple Juice contained less sugar than, and was healthier than, Treetop's

25  Apple Juice.  That is not, in fact, the case, and is the very kind of misleading perception that

26  the laws governing "no sugar added" claims were designed to protect against.  The inclusion

27  of the No Sugar Added Label on the Hansen's Products misled Plaintiffs and is likely to

28  mislead the consuming public to believe that the Hansen's Products products contain less

sugar and are healthier than comparable products when they are not.  Had Plaintiffs not observed the No Sugar Added Label on the Hansen's Products, they would not have purchased them.

40.     Plaintiffs' reliance was reasonable in light of consumer shopping habits and the impression created by Defendants' products when viewed in context alongside competitor products.

41.     All five of the Hansen's Products are high in sugar and calories relative to many other beverages typically consumed by the public.  For example, a Coca-Cola Classic contains approximately 97 calories per eight ounce serving.  The Hansen's products, in contrast, contain anywhere from approximately 110 to 135 calories per eight ounce serving. These products sell on supermarket and drugstore shelves alongside competitor brands that contain approximately the same amount of sugar and calories per ounce, but which do not make "no sugar added" claims.  Such competitor brands include, but are not limited to: Treetop Apple Juice and Safeway Kitchens Apple Juice (which compete with Hansen's Natural Apple Juice); O Organics Apple Juice (which competes with Hansen's Organic Apple Juice); Dole Pineapple Juice and Safeway Kitchens Pineapple Juice (which compete with Hansen's Natural Pineapple Juice); and Treetop Apple Grape Juice (which competes with Hansen's Natural Apple Grape Juice).

42.     The placement  of a "no sugar added" claim on products such as the Hansen's Products (which have significant intrinsic sugar content and which sell alongside competing brands with similar nutritional values that do not contain "no sugar added" claims) is misleading and causes a genuine risk of consumer deception.  This is because the "no sugar added" claim suggests that there is something special about the Hansen's Products which differentiates them from competing brands, *i.e.*, that they contain less sugar.

43.     Indeed, even viewed in isolation (without reference to competing products), the "no sugar added" claim on the Hansen's products is misleading.  Because the Hansen's Products, which are intrinsically high in sugar, are not a type of food that normally contains added sugars, the No Sugar Added claim serves no useful purpose other than to confuse

consumers into believing that these products are somehow especially healthy, low in calories, or low in sugar.

44.     Plaintiffs did not know at the point of sale, and had no reason to know, that the Hansen's Products with No Sugar Added Label were misbranded and bore food labeling claims that Defendants were not legally permitted to make.  Notably, the packaging (and resulting violations) of all the Hansen's Products is identical or substantially similar.  *See* Exhibit A.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, and thus seek class certification under California Code of Civil Procedure section 382.

46.     All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

47.     The classes Plaintiffs seek to represent (the "Classes") are defined as follows:

(1)     All California residents who purchased one or more of the Hansen's Products, with a label and/or packaging stating "No Sugar Added," and which contain concentrated fruit juice, at any time between four years prior to the filing of the original complaint in this action until the date of certification.

(2)     All California residents who purchased one or more of the Hansen's Products, with a label and/or packaging stating "No Sugar Added," and which have a reference amount customarily consumed of greater than 30 grams and more than 40 calories per reference amount customarily consumed, and which do not contain at least 25 percent fewer calories per reference amount customarily consumed than an appropriate reference food, but do not bear a statement that the food is not "low calorie" or "calorie reduced" and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content, between four years prior to the filing of the original complaint in this action until the date of certification.

(3)      All California residents who purchased one or more of the Hansen's Products, with a label and/or packaging claiming "No Sugar Added," and which do not resemble and substitute for a food that normally contains added sugars, between four years prior to the filing of the

1    original complaint in this action until the date of certification.

2    48.    As used herein, the term "Class Members" shall mean and refer to the members

3    of the Classes described above.

4    49.    Excluded from the Class are Defendants, their affiliates, employees, agents, and

5    attorneys, and the Court.

6    50.    Plaintiffs reserve the right to amend the Classes, and to add additional

7    subclasses, if discovery and further investigation reveals such action is warranted.

8    51.    This action is brought and properly may be maintained as a class action

9    pursuant to the provisions of California Code of Civil Procedure Section 382 and satisfies the

10   requirements thereof.

11   52.    The exact number of Class Members is presently unknown, but, given

12   Defendants' sales volume, it is reasonable to presume that the members of the Classes are so

13   numerous that joinder of all members is impracticable.  The disposition of their claims in a

14   class action will provide substantial benefits to the parties and the Court.

15   53.    This action involves common questions of law and fact, including:

16          (a)    Whether Defendants engaged in unlawful, unfair or deceptive business

17                 practices by failing to properly package and label food products sold to

18                 consumers;

19          (b)    Whether the food products at issue were misbranded as a matter of law;

20          (c)    Whether Defendants labeled certain food and beverage products with

21                 "No Sugar Added" claims;

22          (d)    Whether Defendants had a duty to include a statement explaining its

23                 food products were not "low calorie" or "calorie reduced;"

24          (e)    Whether Defendants made false, misleading and/or untrue statements

25                 via its labeling;

26          (f)    Whether Defendants violated the California Consumers Legal Remedies

27                 Act (Cal. Civil Code §§ 1750 *et seq.*);

28          (g)    Whether Defendants violated California Business & Professions Code

§§ 17200 *et seq.*;

(h)     Whether Defendants violated California Business & Professions Code §§ 17500 *et seq.*;

(i)     Whether Defendants violated the Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, §§ 109875 *et seq.*);

(j)     Whether Defendants were unjustly enriched by the sale of misbranded Hansen's food and beverage products;

(k)     Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

(l)     Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

(m)     The method of calculation and extent of damages for Plaintiffs and Class Members.

54.     Plaintiffs' claims are typical of those of the class because Plaintiffs and Class Members suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

55.     Plaintiffs will adequately protect the interests of Class Members and have retained counsel experienced in consumer class action litigation. Plaintiffs have no interests that are adverse to or conflict with those of Class Members. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class actions on behalf of consumers.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the amount suffered by individual Class Members may be relatively small, the expense and burden of individual litigation make it impossible for Class Members to individually redress the wrongs done to them. There will be no difficulty in the management of this case as a class action.

57.     Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude class certification.

58.     Among other things, each class member's interest in individually controlling the prosecution of the claims herein makes it virtually impossible to assert those claims outside the class action context.

59.     There are no likely difficulties in managing this case as a class action and the Plaintiff's counsel is experienced in class actions.

60.     Moreover, the class definition is ascertainable and lends itself to class certification because Defendants' packaging and labeling is the same for all Class Members in that it fails to comply with California's Sherman Law by including statements such as "No Sugar Added," which are impermissible when concentrated fruit juice is an ingredient, when the products does not resemble and substitute for a food that normally contains added sugars, or when it fails to include a statement explaining it is not a low or reduced calorie food product.

## FIRST CAUSE OF ACTION

## Violation of Unfair Business Practices Act

## (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

61.     Plaintiffs incorporate by reference all allegations set forth in Complaint.

62.     California Business and Professions Code Section 17200, *et seq*. prohibits "any unlawful, unfair or fraudulent business act or practice."

63.     As set forth above, under FDA regulations wholly adopted by California's Sherman Law, food products containing fruit juice concentrate cannot include the statement "No Sugar Added." 21 C.F.R 101, Subpart D, §101.60(c)(2)(ii). Nor may a food or beverage product include a "No Sugar Added" statement if it fails to indicate that it is not "low calorie" or "calorie reduced" (unless it qualifies as low or reduced calorie). 21 C.F.R 101, Subpart D, §101.60(c)(2) (v). In addition, a "No Sugar Added" claim is prohibited on foods that do not resemble and substitute for a food that normally contains added sugar. 21 C.F.R 101, Subpart D, §101.60(c)(2)(iv). The Hansen's Products prominently feature a "No Sugar Added" statement on their label and/or packaging notwithstanding the fact that they contain concentrated fruit juice, and/or that do not resemble and substitute for a food that normally

1   contains added sugars, and/or fail to indicate they are not low or reduced calorie foods.  This

2   is a clear violation of California's Sherman Law and, thereby, an "unlawful" business practice

3   or act under Business and Professions Code Section 17200 *et seq.*

4        64.   Defendants' use of the No Sugar Added Label, as set forth herein, also

5   constitutes an "unfair" business act or practice within the meaning of California Business and

6   Professions Code Sections 17200 *et seq.*, because any utility for Defendants' conduct is

7   outweighed by the gravity of the consequences to Plaintiffs and Class Members and because

8   the conduct offends public policy.  As discussed above, the overconsumption of sugar has

9   been associated with a variety of health problems, many of which can cause serious

10  complications or death, including, but not limited to, heart disease, tooth decay, diabetes, and

11  cancer.  Deceptive practices of the type upon which Plaintiffs' claims contribute to the

12  overconsumption of sugars and are thereby directly linked to these grave social ills.

13       65.   In addition, Defendants' use of the No Sugar Added Label constitutes a

14  "fraudulent" business practice or act within the meaning of Business and Professions Code

15  Sections 17200 *et seq.*  The applicable food labeling regulations are carefully crafted to

16  require that nutritional content claims be presented in a qualified and contextualized manner

17  to protect the consuming public from being deceived.  Defendants' non-compliant No Sugar

18  Added Label is an unqualified nutritional content claim that poses the very risk of deception

19  the regulations were promulgated to protect against. By labeling products "No Sugar Added"

20  which do not normally contain added sugars in the first place, and/or are not low or reduced

21  calorie, and/or are made from concentrate, Defendants have created the impression that its

22  products that contain less sugar than other comparable products.  For example, a reasonable

23  consumer observing the label of Hansen's Natural Apple Juice would be likely to believe that

24  the product contains less sugar than competitors' brands that lack the No Sugar Added claim.

25  This is precisely the consumer confusion that that the labeling laws aim to prevent.

26       66.   Moreover, there were reasonable alternatives available to Defendants to further

27  their legitimate business interests, other than the conduct described herein.  For example,

28  Defendants could have complied with FDA requirements by excluding the "No Sugar Added"

1    claim.

2         67.    Defendants used the No Sugar Added Label to induce Plaintiffs and Class

3    Members to purchase the Hansen's Products.  Had Defendants not included the "No Sugar

4    Added" claim, Plaintiffs and Class Members would not have purchased the products, would

5    have purchased less of the products and/or would have paid less for the products.  Defendants'

6    conduct therefore caused and continues to cause economic harm to Plaintiffs and Class

7    Members.

8         68.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts

9    entitling Plaintiffs and Class Members to judgment and equitable relief against Defendants, as

10   set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code

11   Section 17203, Plaintiffs and Class Members seek an order requiring Defendants to

12   immediately cease such acts of unlawful, unfair, and fraudulent business practices and

13   requiring Defendants to correct their actions.

14                          **SECOND CAUSE OF ACTION**

15                 **Violation of the California False Advertising Act**

16                   **(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

17        69.    Plaintiffs incorporate by reference all allegations set forth in Complaint.

18        70.    Pursuant to California Business and Professions Code Sections 17500, *et seq.*,

19   it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or

20   which by the exercise of reasonable care should be known, to be untrue or misleading."

21        71.    As explained above, Defendants' No Sugar Added Label accompanies beverage

22   products that contain concentrated fruit juice, and/or that do not resemble and substitute for a

23   food that normally contains added sugars, and/or fail to state they are not low calorie foods, in

24   violation of governing food labeling regulations.

25        72.    As also explained above, the applicable food labeling regulations are carefully

26   crafted to protect the consuming public from being deceived.  Defendants' No Sugar Added

27   Label is an unqualified nutritional content claim that poses the very risk of deception the

28   regulations were promulgated to protect against.

73.     Monster Energy Company, and its parent company Monster Beverage Corporation, are multi-million dollar companies advised by skilled counsel who, on information and belief, are or by the exercise of reasonable care should be aware of the governing regulations and their purpose, and the fact that the No Sugar Added Label does not comply with them.

74.     Defendants' use of the No Sugar Added Label therefore constitutes untrue and/or misleading advertising within the meaning of Business and Professions Code Sections 17500 *et seq.*

75.     Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against Defendants for restitution, disgorgement, injunctive relief, and all other relief afforded under Business & Professions Code Sections 17500, plus interest, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION

## Violation of the Consumers Legal Remedies Act

## (Cal. Civil Code §§ 1750 *et seq.*)

76.     Plaintiffs incorporate by reference all allegations set forth in Complaint.

77.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code Sections 1750 *et seq.* ("CLRA").

78.     The CLRA has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.   The self-declared purposes of the act are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

79.     Each defendant named herein is a "person," as defined by Civil Code Section 1761(c), because they are corporations and/or companies as set forth above.

80.     Plaintiffs and Class Members are "consumers," within the meaning of Civil Code Section 1761(d), because they are individuals who purchased the Hansen's Products for personal and/or household use.

THIRD AMENDED CLASS ACTION COMPLAINT

81.     Defendants' beverage products are "goods," within the meaning of California Civil Code Section 1761(a), in that they are tangible products bought by Plaintiffs and Class Members for personal, family, and/or household use.

82.     Plaintiffs' and Class Members' payments for the goods of Hansen's Products are "transaction[s]," as defined by Civil Code Section 1761(e), because Defendants entered into an agreement to sell those products in exchange for Plaintiffs' and Class Members' monetary compensation.

83.     Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money as a result of Defendants' actions as set forth herein.  Specifically, Plaintiffs purchased Hansen's Products on various occasions. Had Defendants not included the offending No Sugar Added Label on their beverage products, Plaintiffs would not have purchased the products, would have purchased less of the products, and/or would have paid less for the products.

84.     Section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ."   As discussed above, Defendants' No Sugar Added Label accompanies beverage products that contain concentrated fruit juice, and/or that do not resemble and substitute for a food that normally contains added sugars, and/or fail to state they are not low or reduced calorie foods, in violation of governing food labeling regulations. As a result, by employing the No Sugar Added Label, Defendants effectively represented that the Hansen's Products have sponsorship, approval, characteristics, uses, and benefits which they do not have under the governing law.

85.     Section 1770(a)(7) of the CLRA prohibits anyone from "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  By employing the non-compliant No Sugar Added Label, Defendants similarly represented the Hansen's Products to be of a particular standard, quality, or grade which they are not under the governing law.

86.     Section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or

1    services with intent not to sell them as advertised."  As noted above, Monster Energy

2    Company and its parent company Monster Beverage Corporation are multi-million dollar

3    companies advised by skilled counsel who, on information and belief, are or by the exercise of

4    reasonable care should be aware of the governing regulations and their purpose, and the fact

5    that the No Sugar Added Label does not comply with them.  By introducing Hansen's

6    Products with non-compliant No Sugar Added Label into the stream of commerce

7    notwithstanding this knowledge, Defendants thus intentionally sold misbranded products.

8        87.    Plaintiffs have attached hereto, as Exhibit B, the declaration of venue required

9    by Civil Code section 1780(d).

10       88.    On June 25, 2013, pursuant to section 1782 of the CLRA, Plaintiffs notified

11   Defendants in writing of their particular violations of the CLRA and demanded that

12   Defendants rectify the violations associated with the behavior detailed above, which acts and

13   practices are in violation of Civil Code section 1770.  True and correct copies of the letters are

14   attached hereto as Exhibit C.

15       89.    Plaintiffs seek an order enjoining the acts and practices described above,

16   restitution of property, and any other equitable relief that the Court deems proper.

17       90.    Because Defendants failed to rectify or agree to adequately rectify the problems

18   associated with the actions detailed above, Plaintiffs additionally seek actual, statutory, and

19   punitive damages to the extent available, attorneys' fees and costs, and any other relief under

20   section 1780(a) of the CLRA pursuant to Civil Code section 1782(d).

**FOURTH CAUSE OF ACTION**

**Negligent Misrepresentation**

23       91.    Plaintiffs incorporate by reference all allegations set forth in Complaint.

24       92.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable

25   care in making representations about its beverage products they offered for sale to consumers.

26       93.    Defendants knew, or should have known by the exercise of reasonable care,

27   that a "No Sugar Added" statement may not be placed on the label of a beverage product that

28   contains fruit juice concentrate, and/or that does not resemble and substitute for a food that

1  normally contains added sugars, and/or that fails to indicate it is not a low or reduced calorie

2  food.  Nevertheless, Defendants negligently and/or recklessly included the non-compliant No

3  Sugar Added Label described above on their widely distributed Hansen's Products that are

4  sold in virtually every supermarket and drugstore nationwide and consumed by millions of

5  people annually.

6       94.    Plaintiffs and Class Members reviewed, believed, and relied upon the No Sugar

7  Added Label when deciding to purchase Hansen's Products, and how much to pay for

8  Hansen's Products.

9       95.    As a direct and proximate result of Defendants' negligent and/or reckless

10  conduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

11  <center>**FIFTH CAUSE OF ACTION**</center>

12  <center>**Breach of Quasi-Contract**</center>

13       96.    Plaintiffs incorporate by reference all allegations set forth in Complaint.

14       97.    As a direct and proximate result of Defendants' acts, as set forth above,

15  Defendants have been unjustly enriched.

16       98.    Through unlawful and deceptive conduct in connection with the advertising,

17  marketing, promotion, and sale of the Hansen's Products, Defendants have reaped the benefits

18  of Plaintiffs' and Class Members' payments for a misbranded product.

19       99.    Defendants' conduct created a contract or quasi-contract through which

20  Defendants received a benefit of monetary compensation without providing the consideration

21  promised to Plaintiffs and Class Members.  Accordingly, Defendants will be unjustly enriched

22  unless ordered to disgorge those profits for the benefit of Plaintiffs and Class Members.

23       100.   Plaintiffs and Class Members are entitled to and seek through this action

24  restitution of, disgorgement of, and the imposition of a constructive trust upon all profits,

25  benefits, and compensation obtained by Defendants from their improper conduct as alleged

26  herein.

27  <center>**MISCELLANEOUS**</center>

28       101.   Plaintiffs and Class Members allege that they have fully complied with all

contractual and other legal obligations and fully complied with all conditions precedent to bringing this action, or that all such obligations or conditions are excused.

### REQUEST FOR JURY TRIAL

102.   Plaintiffs request a trial by jury of all issues which may be tried by a jury.

### PRAYER FOR RELIEF

103.   Plaintiffs, on behalf of themselves and the Class, request the following relief:

(a)   An order certifying the Class and appointing Plaintiffs as Representatives of the Class;

(b)   An order certifying the undersigned counsel as Class Counsel;

(c)   A declaratory judgment that the No Sugar Added Label on the Hansen's Products is unlawful;

(d)   An order requiring Defendants, at their own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(e)   An order requiring Defendants to change the product packaging for all Hansen's Products such that it complies with all applicable food labeling rules and regulations;

(f)   An order requiring Defendants to engage in corrective advertising regarding the conduct discussed above;

(g)   Actual damages suffered by Plaintiffs and Class Members as applicable or full restitution of all funds acquired from Plaintiffs and Class Members from the sale of misbranded Hansen's Products during the relevant class period;

(h)   Punitive damages, as allowable, in an amount determined by the Court or jury;

(i)   Any and all statutory enhanced damages;

(j)   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(k)   Pre- and post-judgment interest; and

1

     (l)    All other relief, general or special, legal and equitable, to which

2

         Plaintiffs and Class Members may be justly entitled as deemed by the

3

         Court.

4

5   Dated:  February 10, 2014        Respectfully submitted,

6                      Capstone Law APC

7

8               By: _____

9                      Jordan L. Lurie
                          Mark S. Greenstone

10                 Tarek H. Zohdy
                       Cody R. Padgett

11                 Attorneys for Plaintiffs Frank Cuzakis and Jack
                     Hudson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



THIRD AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



THIRD AMENDED CLASS ACTION COMPLAINT

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

      I am employed in the State of California, County of Los Angeles.  I am over the age of 18 and not a party to the within suit; my business address is 1840 Century Park East, Suite 450, Los Angeles, California 90067.

4

5

      On **February 10, 2014** I served the document described as **THIRD AMENDED COMPLAINT** on the interested parties in this action by sending [   ] the original [or] [✓] a true copy thereof [✓] to interested parties as follows [or] as stated on the attached service list:

6

7

    Dan Marmalefsky
    David McDowell

8

    Purvi G. Patel
    MORRISON & FOERSTER LLP

9

    707 Wilshire Boulevard

10

    Los Angeles, CA 90017-3543

11

[   ]    **BY MAIL (ENCLOSED IN A SEALED ENVELOPE):** I deposited the envelope(s) for mailing in the ordinary course of business at Los Angeles, California.  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles, California.

12

13

14

[✓]    **BY ELECTRONIC MAIL:** I hereby certify that a true and correct copy of the document was electronically served by transmission to the interested parties through CASE ANYWHERE.

15

16

[   ]    **BY FAX:** I hereby certify that this document was served from Los Angeles, California, by facsimile delivery on the parties listed herein at their most recent fax number of record in this action.

17

18

[   ]    **BY PERSONAL SERVICE:** I delivered the document, enclosed in a sealed envelope, by hand to the offices of the addressee(s) named herein.

19

20

[   ]    **BY OVERNIGHT DELIVERY:** I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery.  Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid.  The packages are picked up by the carrier at our offices or delivered by our office to a designated collection site.

21

22

23

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

24

      Executed this **February 10, 2014,** at Los Angeles, California.

25

26

Matthew Krout
Type or Print Name                                 Signature

27

28