Anthony J. Orshansky, SBN 199364
anthony@counselonegroup.com
Alexandria R. Kachadoorian, SBN 240601
alexandria@counselonegroup.com
Justin Kachadoorian, SBN 260356
justin@counselonegroup.com
COUNSELONE, P.C.
9301 Wilshire Boulevard, Suite 650
Beverly Hills, California 90210
Telephone: (310) 277-9945
Facsimile: (424) 277-3727

Attorneys for Plaintiffs
OSIE MARSHALL, YASNA CUEVAS,
JOHN VAN ES, on behalf of themselves
and others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSIE MARSHALL, YASNA CUEVAS, JOHN VAN ES, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MONSTER ENERGY COMPANY, dba HANSEN BEVERAGE COMPANY, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:14-cv-06311-MMM (PLAx) <br><br> [Assigned to the Honorable Margaret M. Morrow] <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO MAYAN MOONEY'S MOTION TO INTERVENE** <br><br> Hearing Date:  October 26, 2015 <br> Time:  10:00 a.m. <br> Location:  Courtroom 780 <br><br> Complaint Filed:  April 4, 2014 <br> FAC Filed:  September 29, 2014 <br> Trial Date:  April 12, 2016 |

# <u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

INTRODUCTION...................................................................................... 1

BACKGROUND....................................................................................... 2

STANDARD ON MOTION TO INTERVENE…………………..……............... 4

ARGUMENT…………………………………………………………...… 5

    A.   The Motion to Intervene Should be Stricken for Failure to Comply with Local Rule 7.3.................................................................................5

    B.   Mooney's Motion to Intervene Is Not Timely and Should Be Denied…………………………………………………..…………5

           1.    Mooney Has Moved to Intervene Late in the Proceedings………………………………...……………....6

           2.    Mooney Has No Excuse for Waiting to Intervene…......…………7

           3.    Plaintiffs and the Proposed Class Will Be Prejudiced by Mooney's Intervention.……………………………………….……..10

    C.   Mooney Does Not Have an Interest in the Subject Matter of the Parties' *Ex Parte* Request..……………………………………………...…………11

    D.   Granting Preliminary Approval Will Not Impair or Impede Mooney's Interests..……………………………………………...…………12

    E.   Mooney's Interest Is Adequately Represented in This Action...…………16

CONCLUSION…………………………………………..…………19

1
2

# <u>TABLE OF AUTHORITIES</u>

3
4

<u>CASES</u>                                                                 <u>Page No.</u>

5
6

<u>Allen v. Bedolla</u>
    787 F.3d 1218 (9th Cir. 2015)…………………………..................................7, 10

7
8

<u>Arakaki v. Cayetano</u>
    324 F.3d 1078 (9th Cir. 2003)…………………………..................................16

9
10

<u>Banco Popular de Puerto Rico v. Greenblatt</u>
    946 F.2d 1227 (1st Cir. 1992)…………………….....................................9

11

<u>Behrens v. Wometco Enters., Inc.</u>
    118 F.R.D. 534 (S.D. Fla. 1988)………………………..............................17

12
13

<u>Bush v. Viterna</u>
    740 F.2d 350 (5th Cir. 1984)…………………………..................................16

14

<u>Cabazon Band of Mission Indians v. Wilson</u>
    124 F.3d 1050 (9th Cir. 1997)………………………....…...............4

15
16

<u>Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.</u>
    309 F.3d 1113 (9th Cir. 2002)……………………………………......6, 8

17

<u>Chavez v. PVH Corp.</u>
    2014 WL 6617142 (N.D. Cal. Nov. 20, 2014)…………………….......passim

18
19

<u>Cohorst v. BRE Properties, Inc.</u>
    2011 WL 3475274 (S.D. Cal. Aug. 5, 2011)………………….......8, 11, 14, 15

20

<u>Davis v. J.P. Morgan Chase & Co.</u>
    775 F. Supp. 2d 601 (W.D.N.Y. 2011)…………………...........7, 10, 15, 17

21
22

<u>Doe v. Cin-Lan, Inc.</u>
    2011 WL 37970 (E.D. Mich. Jan. 5, 2011)………………...…...7, 12, 15, 16

23

<u>Donnelly v. Glickman</u>
    159 F.3d 405 (9th Cir. 1998)……………………………..…….......4, 5

24
25

<u>Dubeau v. Sterling Sav. Bank</u>
    2013 WL 4591034 (D. Or. Aug. 28, 2013)……………………..................15

26

<u>Engra, Inc. v. Gabel</u>
    958 F.2d 643 (5th Cir. 1992)……………………………................................6

27

<u>Freedom from Religion Found., Inc. v. Geithner</u>
    644 F.3d 836 (9th Cir. 2011)…………………………..................................16

28

<u>Hammon v. Barry</u>
    752 F. Supp. 1087 (D.D.C. 1990)……………….........................13, 14

ii.

Hanlon v. Chrysler Corp.
   150 F.3d 1011 (9th Cir. 1998)…………………................................9

Hodgson v. United Mine Workers of America
   473 F.2d 118 (D.C. Cir. 1972)…………………………….…...........5

In re Armored Car Antitrust Litigation
   472 F. Supp. 1357 (N.D Ga. 1979)……………….............................14

In re Chicken Antitrust Litigation
   560 F. Supp. 957 (N.D. Ga. 1980)…………………......................13

In re Chinese-Manufactured Drywall Products Liab. Litig.
   2011 WL 2313866 (E.D. La. June 9, 2011)………………....................9

In re ConAgra Foods, Inc.
   2015 WL 1062756 (C.D. Cal. Feb. 23, 2015)…………………...............18

In re DHP Indus., Inc. Class Action Litigation
   2007 WL 2907262 (E.D.N.Y. Sept. 30, 2007)…………………...............15

Linney v. Cellular Alaska P'ship
   151 F.3d 1234 (9th Cir. 1998)…………………...............................17

Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.
   834 F.2d 677 (7th Cir. 1987)…………………................................13

North County Contractor's Assn., Inc. v. Touchstone Ins. Services
   27 Cal.App.4th 1085 (1994)………………………….…...............13

Perry v. Proposition 8 Official Proponents
   587 F.3d 947 (9th Cir. 2009)…………………………….…......5, 16

Priddy v. Edelman
   883 F.2d 438 (6th Cir. 1989)…………………................................13

Rodriguez v. West Publ. Corp.
   2007 U.S. Dist. LEXIS 74767 (C.D. Cal. August 10, 2007)……….......13, 14

Sandoval v. Tharaldson Emp. Mgmt., Inc.
   2010 WL 2486346 (C.D. Cal. June 15, 2010)…………………...............17

Smith v. CRST Van Expedited, Inc.
   2012 WL 5873701 (S.D. Cal. Nov. 20, 2012)…………………...............8

Smith v. Marsh
   194 F.3d 1045 (9th Cir. 1999)…………………................................10

Snyder v. Flowords, Inc.
   2007 WL 2429451 (N.D. Cal. 2007) ………………………....…..........6, 9

Sommers v. Abraham Lincoln Federal Savings & Loan Association
   79 F.R.D. 571 (E.D. Pa. 1978)…………………................................14

iii.

Southwest Center for Biological Civersity v. Berg
    268 F.3d 810 (9th Cir. 2001)……………………….............11, 12

Thompson v. Metro. Life. Ins. Co.
    216 F.R.D. 55 (S.D.N.Y. 2003)……………………......................................15

United States v. British American Tobacco Australia Services, Ltd.
    437 F.3d 1235 (D.C. Cir. 2006)………………………….....…...........5

United States v. State of Washington
    86 F.3d 1499 (9th Cir. 1996)…………………………......….…......6

Weeks v. Kellogg Co.
    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)…………………….......17, 18

Zamora v. Ryder Integrated Logistics, Inc.
    2014 WL 9872803 (S.D. Cal. Dec. 23, 2014)…………………….........8, 15

Zepeda v. PayPal, Inc.
    2014 WL 1653246 (N.D. Cal. Apr. 23, 2014)…………………….......passim

## OTHER

2 McLaughlin on Class Actions § 6:7 (8th ed.)…………..................................17

Central District of California Local Rule 7.3…………................................................5

Federal Rules of Civil Procedure Rule 23…………..................................................11, 18

Federal Rules of Civil Procedure Rule 24…………......................................................5

Manual for Complex Litigation (Second) (1985) ("MCL 2d") § 30.44......................13

Newberg § 11.25…………....................................................................................13

Newberg § 11.51…………....................................................................................13

iv.

# INTRODUCTION

In a classic example of sour grapes, proposed intervener Mayan Mooney seeks to intervene in this action to frustrate approval of a settlement that will provide real and prompt monetary benefits to a class of California consumers.  Mooney's regret is understandable—because Plaintiffs in this action extended multiple offers to jointly prosecute the case with his counsel, all of which they rebuffed.  By Mooney's own admission, the motion to intervene strives to undo a beneficial settlement that, of his own choosing, Mooney played no role in achieving.  It is against this backdrop that the Court should consider, and ultimately reject, Mooney's arguments in support of intervention.

First, Mooney's motion to intervene comes late in these proceedings—after the parties have expended a substantial amount of time investigating, mediating, and negotiating a settlement, and moving for preliminary approval.  Mooney had no reason to delay moving to intervene because his counsel knew about this action from its inception—indeed they even plagiarized Plaintiffs' complaint—and had multiple communications from Plaintiffs' counsel about the status of this litigation.  Allowing Mooney to intervene now for the purpose of opposing preliminary approval would only prejudice the parties, who have devoted a substantial amount of time and effort to broker a settlement, and the class at large, which stands to benefit from it.

Second, granting the parties' motion for preliminary approval will do nothing to impair Mooney's interest in this litigation, however minimal those interests may be.  Mooney will have every right to object to the settlement before final approval or opt out altogether and pursue his claims in state court if he is unhappy with the result or thinks he can do better for himself.  Although the settlement calls for an injunction of related actions, including Mooney's, this injunction would only be in place temporarily for the purpose of protecting this Court's jurisdiction pending final settlement approval, and it would not interfere with Mooney's state-court action if he decides to opt out of the settlement class.

1  Third, Mooney has not met his burden of showing how his interests have been
2  inadequately represented in this action. Although Mooney may wish the terms of the
3  settlement were more favorable, the cornerstone of a settlement is compromise, and
4  the benefit obtained for the class is reasonable and adequate in light of the defenses
5  to certification and the merits, as well as the inevitable delay from further
6  proceedings, including appeals. Moreover, to the extent that Mooney does not like
7  the settlement, he can state his objections or opt out of the class entirely in due
8  course. Hijacking another plaintiff's action through intervention is simply not an
9  appropriate mechanism for challenging a class settlement.

10  In sum, the Court should deny Mooney's motion to intervene and grant the
11  parties' *ex parte* application for an order granting preliminary approval of the class
12  action settlement.

13  **BACKGROUND**

14  Plaintiffs began investigating this case in early 2013, and in September 2013,
15  Plaintiffs' counsel sent a demand letter to Monster Beverage Corporation ("Monster"
16  or "Defendant") for relief associated with various labeling violations on a range of
17  Hansen's products. Thereafter the parties attempted to reach a pre-litigation
18  resolution, including by engaging in formal mediation. When those settlement
19  discussions failed to resolve the dispute, on April 4, 2014, Plaintiffs filed a putative
20  class action complaint against MBC in the Superior Court of the State of California,
21  County of San Francisco, entitled *Osie Marshall, et al. v. Monster Beverage*
22  *Corporation*, Case No. CGC-14-538447 ("*Marshall* action"). Defendant
23  subsequently removed the *Marshall* action to United States District Court for the
24  Northern District of California (Case No. 3:14-CV-02203-JD), from which it was
25  transferred to United States District Court for the Central District of California.
26  [ECF Nos. 1, 15, 27.]

27  The parties have engaged in a substantial amount of work over the past nearly
28  two years, including conducting formal and information discovery, meeting and

2

conferring regarding the discovery, engaging in law-and-motion practice, preparing for and participating in a mediation with the Honorable Steven J. Stone (Ret.) of JAMS, consulting with and retaining expert witnesses, preparing for class certification, reviewing voluminous documents, negotiating a class settlement, drafting the settlement agreement and related documents, and moving for preliminary approval.

A little more than two months after Plaintiffs filed this action,[1] Marcy Krinsk copied the *Marshall* complaint verbatim and filed a nearly identical putative class in San Diego Superior Court entitled *Krinsk v. Monster Beverage Corp.*, Case No. 37-2014-20192-CU-BT-CTL ("*Krinsk* action").   Mrs. Krinsk, the putative class representative, is and was the wife of one of the named partners of Finkelstein & Krinsk, the law firm representing Mrs. Krinsk and the putative class.   Because Plaintiffs' complaint herein was plagiarized, the *Marshall* action entirely subsumes the *Krinsk* action, which alleges a California as opposed to a nationwide class.   (*See* Pls.' Mot. for Prelim. App'l 19:1-21:14, Dkt. No. 51-1.)   In response to Monster's motion to disqualify Finkelstein & Krinsk, Mrs. Krinsk filed an amended complaint in which she remained in the case in her individual capacity only and substituted in two new named plaintiffs as proposed class representatives, one of whom is the proposed intervener Mayan Mooney.   (*See* Patel Decl. ISO Joint *Ex Parte* App'l for Prelim. App'l, ¶¶ 3-5, Dkt. No. 52)

After Krinsk filed her action, despite the blatant plagiarism, Plaintiffs' counsel made numerous attempts to coordinate joint prosecution with Mooney's lawyers. (Orshansky Decl. ¶ 5.)   During one phone call Plaintiffs' counsel informed Mooney's lawyers about the procedural posture of the *Marshall* action, including Plaintiffs' deadline to file their motion for class certification and negotiations with Monster aimed at resolving the case.   (*Id.* at ¶¶ 6, 7.)   Among other things, Plaintiffs' counsel

---

[1]   Despite the fact that the *Krinsk* action was filed after the *Marshall* action and plagiarized the complaint, Mooney states that *Krinsk* is the "prior filed action." (Mot. 3:22.)  Mooney is wrong.

3

1  offered to coordinate discovery, share expert-witness costs, and coordinate a

2  negotiation strategy. (*Id.*) These overtures fell on deaf ears, however, as Mooney's

3  attorneys refused to respond to repeated telephone calls and emails. (*Id.* at ¶¶ 8-11.)

4      Hearing nothing from Mooney's lawyers, and with Plaintiffs' class

5  certification deadline approaching, Plaintiffs' counsel continued and intensified

6  negotiations, agreed on the principal terms of the settlement, and applied ex parte for

7  an order granting preliminary approval of the proposed class settlement. (*Id.* at ¶ 12.)

8      Mooney filed his motion to intervene on July 31, 2015, without contacting

9  Plaintiffs' counsel to meet and confer.  (*Id.* at ¶ 14.)

10     Following the filing of Mooney's motion to intervene, Plaintiffs' counsel

11  again tried to communicate with Mooney's attorneys. (*Id.* at ¶ 15.) Eventually

12  Plaintiffs' counsel received a call from Mr. Knutson, who again stated he would

13  speak with Mr. Krinsk and then respond to Plaintiffs' counsel but suggested that his

14  hands were tied because it was "Marcy's case"—referring to founding-partner

15  Jeffrey Krinsk's non-attorney wife who originally filed that action and tried to serve

16  as the class representative. (*Id.*) Plaintiffs' counsel again did not receive a response

17  from Mr. Knutson. (*Id.*)

18                **STANDARD ON MOTION TO INTERVENE**

19     Courts in the Ninth Circuit apply a four-part test to determine whether

20  intervention should be granted as a matter of right:  (1) the applicant must assert a

21  "significantly protectable" interest relating to the property or transaction that is the

22  subject of the action; (2) the applicant's interest must be inadequately represented by

23  the parties to the action; (3) disposition of the action without intervention may as a

24  practical matter impair or impede its ability to protect that interest; and (4) the

25  applicant's motion must be timely. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th

26  Cir.1998); *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th

27  Cir.1997).

28  ///

The applicant bears the burden of establishing all of the criteria.  *Donnelly*, 159 F.3d at 409.  Failure to satisfy any one of the requirements is fatal to the application, and a court "need not reach the remaining elements if one of the elements is not satisfied."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir.2009).

## ARGUMENT

### A. The Motion to Intervene Should Be Stricken for Failure to Comply with Local Rule 7.3

Local Rule 7.3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion.  If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall include in the notice of motion a statement to the following effect:  'This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date).'"

This statement of compliance with the local rules does not appear in Mooney's motion to intervene because he never attempted to contact Plaintiffs' counsel to discuss the substance of his contemplated motion.  Because Mooney has not complied with the local rules, his motion to intervene should be stricken.

### B. Mooney's Motion to Intervene Is Not Timely and Should Be Denied.

Mooney incorrectly asserts that his motion is timely.  (Mot. at p. 2.) Rule 24(a) and (b) require that a motion be "timely."  Intervention can be granted only "[o]n timely motion."  FRCP 24(a), (b)(1); *see also United States v. British American Tobacco Australia Services, Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (citing *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972) (timeliness is a prerequisite to any claim for intervention under Rule 24.").  If the Court finds that the motion to intervene was not timely, it need not reach any of

1  the remaining elements of Rule 24.  *See United States v. State of Washington*, 86
2  F.3d 1499, 1502 (9th Cir. 1996).  *See also Snyder v. Flowords, Inc.*, 2007 WL
3  2429451 (N.D. Cal. 2007).

4  "A potential intervenor must act 'as soon as he [or she] knows or has reason to
5  know that his [or her] interests might be adversely affected by the outcome of the
6  litigation."  *Chavez v. PVH Corp.*, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20,
7  2014) (quoting *Cal. Dept. of Toxic Substances Control v. Commercial Realty*
8  *Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (emphasis in original)). Thus,
9  "[t]he timeliness inquiry ... does not allow a potential intervenor to wait until a
10  potential harm 'crystallizes' or becomes 'certain.' "  *Id.* at *6.

11  Courts generally consider the following factors relevant to the issue of
12  timeliness:  (1) the stage of the proceedings at the time applicant seeks to intervene;
13  (2) prejudice to the existing parties from applicant's delay in seeking leave to
14  intervene; and (3) any reason for a length of delay between the application and how
15  long the prospective interveners knew or reasonablly should have known of their
16  interest in the litigation.  *See United States v. State of Washington*, 86 F.3d 1499,
17  1502 (9th Cir. 1006); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).  These
18  factors do not support Mooney's motion.

19  **1.    Mooney Has Moved to Intervene Late in the Proceedings.**

20  Courts find that motions to intervene are untimely where class proceedings
21  have progressed to the settlement approval phase.  For example, in *Zepeda v. PayPal,*
22  *Inc.*, 2014 WL 1653246, at *1 (N.D. Cal. Apr. 23, 2014), *objections overruled*, 2014
23  WL 4354386 (N.D. Cal. Sept. 2, 2014), the court denied a motion to intervene filed
24  by the plaintiffs in an earlier-filed class action.  The parties in the subsequently-filed
25  class action reached a settlement and had a forthcoming deadline to file an amended
26  motion for preliminary approval.  *Id.* at *8.  Under these circumstances the court
27  denied the motion to intervene:  "The Court notes that intervention at this stage—
28  after extensive mediated settlement negotiations and when an amended motion for

6

1    preliminary approval is to be filed soon—would delay the potential resolution of this

2    case. [citation] Allowing the Putative Interveners to opt out or object to the

3    settlement in the fairness hearings would be far less disruptive than allowing them to

4    intervene, and it would still preserve their interests. ”  *See also Doe v. Cin-Lan, Inc.*,

5    2011 WL 37970, at *1 (E.D. Mich. Jan. 5, 2011)(denying motion to intervene where

6    preliminary approval motion was pending); *Davis v. J.P. Morgan Chase & Co.*, 775

7    F. Supp. 2d 601, 610 (W.D.N.Y. 2011) (denying motion to intervene and granting

8    preliminary approval).  In *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015), the

9    Ninth Circuit affirmed the denial of a motion to intervene because it was made "on

10   the eve settlement."

11        Similarly, in *Chavez v. PVH Corp.*, 2014 WL 6617142, at *3 (N.D. Cal. Nov.

12   20, 2014), the court denied a motion to intervene in a class action as untimely where

13   discovery and mediation had occurred and court had substantially engaged the issues.

14        Here, Plaintiffs have invested a great deal of time investigating the case,

15   conducting substantial discovery, meeting and conferring, consulting with and

16   retaining expert witnesses, engaging in law-and-motion practice, attending hearings

17   and status conferences, mediating the case, negotiating a settlement, drafting the

18   settlement agreement and related papers, and moving for court approval.  The Court

19   has actively monitored the progress of this litigation and substantially engaged the

20   issues.   And the parties are prepared to resolve this case through a negotiated

21   settlement that provides monetary benefits to putative class members.   Allowing

22   Mooney to intervene now would delay this resolution and forestall, or even entirely

23   frustrate, provision of the settlement benefits to putative class members.

24        **2.    Mooney Has No Excuse for Waiting to Intervene.**

25        Mooney contends that his motion to intervene is timely because it was made

26   not long after Plaintiff moved for preliminary approval.   But the truth is that

27   Mooney's counsel knew about this action all along.   Indeed, as demonstrated at

28   length in the parties Joint Ex Application for an Order Granting Preliminary

Approval, the *Krinsk* action effectively plagiarized the original complaint filed in this action, copying the *Marshall* allegations verbatim.  (Ex Parte Appl. 3:8-5:17, Dkt. No. 51.)  Mooney's counsel knew that the *Marshall* action subsumed the *Krinsk* action, and yet for more than a year Mooney failed to intervene.  (Orshansky Decl. ¶ 4-11.)  Mooney's counsel also knew that the *Marshall* action was more advanced procedurally than the *Krinsk* action, with a deadline for Plaintiffs to file their motion for class certification in August.  (*Id.* at ¶ 7.)  They knew this because of telephonic conversations initiated by Plaintiffs' counsel and aimed at jointly prosecuting the case to conserve the parties' resources, *id.*, and from the Court docket in this action, with which Mooney's counsel have demonstrated familiarity.  *See Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *5 (S.D. Cal. Nov. 20, 2012) ("Cole concedes that he has been aware of the present case since its inception (2009), yet made no attempt to intervene before now. … As such, his request is untimely."); *Chavez*, *supra*, 2014 WL 6617142, at *5 (denying as untimely motion to intervene where proposed interveners knew about overlap in proposed class claims and had telephonic conversations with proposed class counsel in settling action); *Zamora v. Ryder Integrated Logistics, Inc.*, 2014 WL 9872803, at *2 (S.D. Cal. Dec. 23, 2014) (finding motion to intervene untimely where intervener knew about the overlap in class claims but did nothing); *Cohorst v. BRE Properties, Inc.*, 2011 WL 3475274, at *5 (S.D. Cal. Aug. 5, 2011) (denying motion to intervene where intervener knew of the existence of the other action but failed to intervene).

Mooney's counsel knew or should have known that settlement was an option that would completely dispose of his claims.  *See Cal. Dept. of Toxic Substances Control v. Comm. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (holding that a potential intervener must act "as soon as he [or she] knows or has reason to know that his [or her] interests ***might*** be adversely affected by the outcome of the litigation.")(emphasis added).  And his counsel should have also known that any settlement would not only dispose of overlapping class claims raised in the

1   *Krinsk* action but would also seek to enjoin similar actions to guard against the

2   possibility of inconsistent rulings by state courts that could threaten the settlement.

3   *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 2011 WL 2313866,

4   at *5 (E.D. La. June 9, 2011), *aff'd* (Jan. 28, 2014)(noting necessary-in-aid-of-

5   jurisdiction exception to Anti-Injunction Act permits district courts to enjoin state-

6   court action in class or complex proceedings where "settlement is imminent";

7   collecting cases); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1024-25 (9th Cir.

8   1998)(affirming injunction of state-court action where overlapping federal action had

9   settled).

10      In short, the commonplace provision of the settlement agreement requiring the

11   injunction of other actions brought by putative class members involving similar

12   claims is not the kind of novel fact the justifies Mooney's delay in moving to

13   intervene.  Moreover, if Mooney decides to opt out of the instant settlement, as is his

14   right, *see* Settlement Agreement § 3.11, then his state-court action may proceed

15   regardless of the injunction.  *See id.* at § 4.2 (stating that the injunction would only

16   bind class members who do not opt out).

17      Nevertheless Mooney's attorneys sat on their hands for more than a year rather

18   than attempting to intervene in this action, and only do so now to frustrate a

19   settlement of which, through their own choosing, they wanted no part.  *See Snyder*,

20   *supra*, at *5 (denying motion to intervene where would-be intervener "ha[d]

21   doubtless[ly] been aware that it had some sort of stake in th[e] litigation since the

22   suit was filed."); *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1232

23   (1st Cir. 1992) (potential intervener must move to protect its interest as soon as it has

24   actual knowledge a "measurable right exists").

25      Given this state of affairs, Mooney can point to no reason to delay moving to

26   intervene until this late stage in the proceedings.  "While Proposed Intervenors may

27   not have been 'certain that the [settlement] would be adverse to their interests, they

28   had reason to know that negotiations might produce a settlement that would affect

9

1   their own interests based on the overlapping causes of action, identical Defendant,
2   and overlapping proposed class definitions." *Chavez* at \*5 (citing *Cal Dept. of Toxic*
3   *Substances*, 309 F.3d at 1120); *Zepeda*, *supra*, 2014 WL 4354386 at \*4 (denying
4   motion to intervene despite the fact that it was filed before court granted preliminary
5   approval).

6        Rather than taking action upon learning of Plaintiffs' action, and especially
7   after learning that the case was more advanced procedurally than the *Krinsk* action,
8   Mooney essentially lay in wait for the right moment to pounce on a resolution of this
9   matter.  This stratagem was a not-so-thinly-disguised attempt to increase Defendant's
10  litigation costs (*see* Mot. 6:8-17), thus putting pressure on Defendant, while at the
11  same time riding in the wake of this first-filed action.  The Court should not sanction
12  this gamesmanship by allowing Mooney to intervene now.

13       **3. Plaintiffs and the Proposed Class Will Be Prejudiced by Mooney's**
14          **Intervention.**

15       Finally, Plaintiffs—and other members of the proposed class—will be
16  prejudiced by Mooney's motion to intervene at this late stage in the proceedings.
17  Jeopardizing a settlement causes prejudice to existing parties to a lawsuit and
18  warrants denial of a motion to intervene.  *See Davis v. J.P. Morgan Chase & Co*.,
19  775 F. Supp. 2d 601, 606 (W.D.N.Y. 2011) (denying motion to intervene because of
20  prejudice to existing parties; citing cases); *Allen*, *supra*, 787 F.3d at 1222 (denying
21  motion to intervene where it threatened to "derail[] settlement talks").  Moreover, the
22  delay caused by intervention also causes prejudice to the parties and the class.  *See*
23  *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (holding that while delay alone
24  is not decisive, it is prejudice that the court can consider).

25       Mooney moves to intervene for the sole purpose of opposing Plaintiffs'
26  motion for preliminary approval of the class action settlement.  Mooney effectively
27  seeks to undo the settlement entered into by the parties.  Plaintiffs have obtained a
28  beneficial result for the proposed class, which should not be frustrated or delayed

1   because Mooney's lawyers' belated decision to inject themselves into this action.

2   *See Cohorst*, 2011 WL 3475274 at *6 (noting that "once a consumer class action

3   reaches a settlement, the court is obligated to diligently implement the procedures

4   identified in Rule 23(e) of the Federal Rules of Civil Procedure").

5   Moreover, Plaintiffs and Defendant will be prejudiced because they have

6   expended a substantial amount of time and money to reach this point in the

7   proceedings, including substantial investigation and discovery, meeting and

8   conferring over discovery, engaging in law-and-motion practice, preparing clients for

9   depositions, submitting joint reports and attending status conferences, applying for

10  and opposing ex parte relief, amending the pleadings, preparing for class

11  certification, mediating the case with Justice Stone, negotiating the class settlement

12  and drafting the attendant papers, and moving for preliminary approval.  *See Chavez*,

13  *supra*, at *4 (denying motion to intervene where parties, *inter alia*, engaged in

14  discovery, mediation, and negotiations, and moved for preliminary approval).

15  Moreover, as noted above, the Court has also substantially engaged the issues in this

16  case and, in particular, set the pace of these proceedings through its scheduling order

17  and its denial of Plaintiffs' attempts to amend the scheduling order to provide for an

18  extension of the deadlines relating to class certification.

19  In short, because all of the foregoing factors show that Mooney's motion to

20  intervene is untimely, the Court may and should deny Mooney's motion without

21  considering the other factors.  However, each of these factors also militates in favor

22  of denial.

23  **C. Mooney Does Not Have an Interest in the Subject Matter of the Parties'**

24  ***Ex Parte* Request.**

25  The second factor when determining whether intervention is appropriate is

26  whether the proposed intervener has a "significantly protectable interest relating to

27  the property or transaction that is the subject of the action."  *Cohorst*, 2011 WL

28  3475274, at *6 (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

11

810, 817 (9th Cir.2001)).

There is simply no support for Mooney's contention that he has an interest in the *Marshall* action merely because he may be a member of a proposed class.  (*See* Mot. 4:4-5.)  Mooney has his own pending action and can, regardless of whether the Court approves the settlement, proceed with that action because the settlement agreement affords him the opportunity to opt out.  (*See* Settlement Agreement § 3.11, Dkt. No. 51-5.)

Mooney contends that his interest consists in the proposed injunction of his state-court action pending settlement approval.  Of course, this Court has not granted any injunction, and Mooney has had every right to litigate to his heart's content until now.  Moreover, any injunction will be temporary and will not impact Mooney's state-court action if he decides to opt out of the settlement, *see Doe v. Cin-Lan, Inc.*, 2011 WL 37970, at *1 (E.D. Mich. Jan. 5, 2011)(granting injunction and denying motion to intervene under similar circumstances), and the proposed injunction is solely intended to protect this Court's jurisdiction pending settlement approval so that the settlement is not undermined by inconsistent ruling on certification or the merits in the state-court actions.  (*See* Pls' Mot. for Prelim. App'l, 22:1-23:14, Dkt. No. 51-1.)

Because Mooney's interest in intervening is minimal to nil, this element weighs against intervention.

**D. Granting Preliminary Approval Will Not Impair or Impede Mooney's Interests.**

The third factor also militates against intervention.  Granting preliminary approval of the proposed settlement will not impair or impair Mooney's interests because Mooney can opt out of or object to the settlement.

Class-action settlement approval is accomplished in two steps:  (1) an early, preliminary review by the trial court, and (2) a detailed review after the notice has been distributed to the class members for their comments or objections.  In this

1  regard, the Manual for Complex Litigation (Second) explains:

2      A two-step process is followed when considering class
3  settlements … If the proposed settlement appears to be the
   product of serious, informed, non-collusive negotiations,
4  has no obvious deficiencies, does not improperly grant
5  preferential treatment to class representatives or segments
   of the class, and falls within the range of possible approval,
6  then the court should direct that notice be given to the class
7  members of a formal fairness hearing, at which evidence
   may be presented in support of and in opposition to the
8  settlement.

9  *See Manual for Complex Litigation (Second)* (1985) ("MCL 2d") at § 30.44.  The

10  preliminary approval of the class action settlement by the district court is simply a

11  conditional finding that the settlement appears to be within the range of acceptable

12  settlements.  *See*, *e.g.*, *Newberg*, § 11.25; *North County Contractor's Assn., Inc. v.*

13  *Touchstone Ins. Services* (1994) 27 Cal.App.4th 1085, 1094-195; MCL 2d at § 30.44

14  ("[P]reliminary approval is appropriate if the agreement is "fair, reasonable, and

15  adequate under the circumstances.").  Thus the preliminary approval of the class-

16  action settlement by the trial court is a conditional finding that the settlement appears

17  to be within the range of acceptable settlements, though it is by no means merely a

18  "rubber stamp," as Mooney repeatedly suggests.  (*See*, *e.g.*, Mot. 4:9.)

19      Moreover, courts presume the absence of fraud or collusion in the negotiation

20  of a settlement unless evidence to the contrary is offered.  In short, there is a

21  presumption that the negotiations were conducted in good faith.  *Newberg*, § 11.51;

22  *Rodriguez v. West Publ. Corp.* (C.D. Cal. August 10, 2007) 2007 U.S. Dist. LEXIS

23  74767, 24-25; *In re Chicken Antitrust Litigation* (N.D. GA 1980) 560 F. Supp. 957,

24  962; *Priddy v. Edelman* (6th Cir. 1989) 883 F.2d 438, 447; *Mars Steel Corp. v.*

25  *Continental Illinois National Bank and Trust Co.* (7th Cir. 1987) 834 F.2d 677, 681.

26  Courts do not substitute their judgment for that of the proponents, particularly when

27  settlement has been reached by experienced counsel familiar with the litigation.

28

1    *Rodriguez*, 2007 U.S. Dist. LEXIS 74767 at 24; *Hammon v. Barry* (D.D.C. 1990)

2    752 F. Supp. 1087; *In re Armored Car Antitrust Litigation* (N.D. GA 1979) 472 F.

3    Supp. 1357; *Sommers v. Abraham Lincoln Federal Savings & Loan Association* (ED

4    PA 1978) 79 F.R.D. 571.

5         Here, the proposed settlement was reached at arm's length after a mediation

6    with a respected third-party neutral between parties with substantial class action

7    experience and after meaningful discovery occurred.  There is no evidence of fraud

8    or collusion.  Consequently, the instant settlement satisfies the requirements for

9    conditional settlement approval, and notice should be disseminated to putative class

10   members, who can submit claims, object, or opt out of the proposed class altogether.

11        Because Mooney will have the right to exercise these options after the Court

12   grants preliminary approval of the proposed settlement, his interests are in no way

13   impaired.  "Courts have frequently denied intervention in the class action settlement

14   context, citing concerns about prejudice, as well as putative interveners' ability to

15   protect their interests by less disruptive means, such as opting out of the settlement

16   class or participating in the fairness hearing process."  *Zepeda*, *supra*, 2014 WL

17   1653246, at *4 (collecting cases denying motions to intervene based on prejudice to

18   the parties and concluding that potential interveners could protect their interests by

19   opting out or participating in the approval process).

20        The court in *Cohorst* addressed the same question presented in this case,

21   namely, whether a plaintiff in a proposed class action filed in another court may

22   intervene in a different class action that is awaiting settlement approval.  The court

23   found that the proposed intervener could protect her interest simply by opting out of

24   or objecting to the proposed class settlement:

25        Fatal to [Intervener's] claim, however, she fails to identify how
         resolution of this action will impair or impede her ability to protect her
26        interests.  [Intervener] is able to opt-out of the class and pursue her own
         damages action against Defendants.  Alternatively, [Intervener] may raise
27        any objections to the settlement at the time of the Final Hearing.
28

1    *Cohorst*, 2011 WL 3475274 at *6 (citing *Davis v. J.P. Morgan Chase & Co.*, 2011

2    WL 1327860, *2 (W.D.N.Y. April 6, 2011) (denying motion to intervene in class

3    case and noting that "there are alternatives open to them which would be less

4    disruptive to these proceedings and to the interests of the settling parties.");

5    *Thompson v. Metro. Life. Ins. Co.*, 216 F.R.D. 55, 70 (S.D.N.Y. 2003) (denying

6    intervention because, among other reasons, proposed class members had option of

7    opting out of settlement); *In re DHP Indus., Inc. Class Action Litigation*, 2007 WL

8    2907262, *2 (E.D.N.Y. Sept. 30, 2007) (same).

9    So too here, Mooney's interests, if any, will not be impaired or impeded

10   because he can object to the settlement at final approval.   Moreover, because

11   Mooney has the right to opt out of the proposed settlement herein and pursue his

12   individual claims against Monster in state court, granting preliminary approval will

13   not "impair or impede the movant's ability to protect its interest[.]"  *Zamora v. Ryder*

14   *Integrated Logistics, Inc.*, 2014 WL 9872803, at *11 (S.D. Cal. Dec. 23, 2014)

15   ("Because Martinez has opted out, the settlement will have no impact on Martinez's

16   individual claims, which is the only relevant interest.")  If Mooney opts out, he can

17   proceed with his action in state court.

18   Nor does the injunction proposed herein impair Mooney's right.   The

19   injunction falls within the "necessary-in-aid-of-jurisdiction" exception of the Anti-

20   Injunction Act because of the risk that the state courts in *Krinsk* and *Cuzakis* could

21   issue rulings on class certification or the merits that would be inconsistent with the

22   terms of the proposed settlement, thus endangering both the jurisdiction of this Court

23   and the benefits to be received by the conditional settlement class.   (*See* Mot. for

24   Prelim. App'l 22:1-23:14.)  Just as in *Doe v. Cin-Lan, Inc.*, *supra*, 2011 WL 37970,

25   at *2 where the court denied intervention, the proposed injunction here is only

26   temporary and Mooney's action will proceed to the extent he decides to opt out.  *See*

27   *also Dubeau v. Sterling Sav. Bank*, 2013 WL 4591034, at *5 (D. Or. Aug. 28, 2013)

28   (granting settlement approval, denying motion to intervene, and enjoining class

15

1   members who did not opt out from prosecuting claims against defendant).   The

2   proposed settlement will enjoin only class members who do not opt out from

3   prosecuting actions.  (*See* Settlement Agreement § 4.2, Dkt. No. 51-5.)  So nothing is

4   preventing Mooney from attempting to obtain greater individual relief, whether

5   monetary or injunctive, in his own state court action if he decides to opt out.  No

6   order of this Court will affect Mooney's rights in that action provided he opts out.

7   This is not a case, for example, where intervention should be granted because of a

8   potential *stare decisis* effect of an adverse ruling.  *See Doe v. Cin-Lan, Inc.* at *3

9   (citing cases).  Here, any Court order granting settlement approval will have no effect

10   whatsoever on any putative class members who have effectively opted out.

11        Because granting preliminary approval will not impair or impede Mooney's

12   interest, this element also weighs heavily against intervention.

13   **E. Mooney's Interest Is Adequately Represented in This Action.**

14        Moreover, the existing parties adequately represent any interest Mooney's has

15   in this action.  *See* FRCP 24(a)(2).  However minimal the burden to show inadequacy

16   of representation, it cannot be treated as so minimal as to write the requirement out

17   of the rule."  *Zepeda*, *supra*, 2014 WL 1653246, at *6 (quoting *Bush v. Viterna*, 740

18   F.2d 350, 355 (5th Cir. 1984)).  Indeed a presumption of adequacy applies where the

19   party and the proposed intervener share the same "ultimate objective."  *Id.* (quoting

20   *Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 841 (9th Cir.2011));

21   *Perry v. Proposition 8 Official Proponents,* 587 F.3d 947, 951 (9th Cir.2009);

22   *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003).

23        Mooney's discussion regarding this factor is opaque.  (*See* Mot. 6:8-7:4.)

24   Plaintiffs here share the same ultimate objective that Mooney does—namely, to

25   obtain the greatest benefit for the class in the most expedient manner.  In furtherance

26   of that objective, Plaintiffs have conducted substantial discovery in this action since

27   they began their investigation in the summer of 2013 and reached this settlement

28   through arm's-length negotiations including with the assistance of a respected third-

16

party mediator.  *See* S*andoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); 2 *McLaughlin on Class Actions* § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").  Moreover, proposed class counsel have substantial experience litigating and resolving class actions, including numerous consumer class actions.  (*See* Orshansky Decl. ISO Prelim. App'l ¶¶ 17-19, Dkt. No. 51-4.)  The resulting settlement provides real and prompt relief to putative class members for the alleged misconduct and provides them with an opportunity to opt out or voice their objections if they do not like the settlement.

Mooney presents no evidence or argument that whatever interest he has in the preliminary approval of the proposed settlement has not been adequately represented by Plaintiffs' counsel herein.  In sum, Mooney has failed to rebut the presumption in favor of adequacy of representation.  *See Davis*, *supra*, 775 F.Supp. at 606.

Although Mooney would doubtless like to obtain greater relief from Monster, a settlement is a compromise taking into account the merits of the action and defenses to it, the risk of non-recovery, and the delay resulting from further litigation, including likely appeals.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean that the settlement is unfair and inadequate"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of settlement is … yielding of absolutes and an abandoning of highest hopes") (internal quotations and citations omitted).

The specific concerns Mooney raises in his opposition to the *ex parte* application are groundless.  Although he faults the notice plan (Mot. 5:20-6:9), the notice plan here is modeled on the one approved by this Court in *Weeks v. Kellogg Co.*, No. CV 09-08102-MMM (RZx), 2013 WL 6531177, at *11 (C.D. Cal. Nov. 23,

17

1   2013)(Morrow, M.) and provides for a robust regime of publication notice in the

2   California edition of *USA Today*, Internet banner advertisements on an array of

3   websites, and the creation of a settlement website and toll-free number.  Nor should

4   the Court credit Mooney's criticism of the remedial measures set forth in the

5   settlement.  Plaintiffs have moved for certification of a settlement class under FRCP

6   23(b)(3) for restitution, not under Rule 23(b)(2).  The fact that Plaintiffs' lawsuit

7   precipitated some remediation from Monster is icing on the cake, but it was not the

8   primary relief they were after, especially given that this Court has declined to certify

9   injunctive relief classes in similar mislabeling cases.  *See In re ConAgra Foods, Inc.*,

10  No. CV 11-05379-MMM (AGRx), 2015 WL 1062756, at *33 (C.D. Cal. Feb. 23,

11  2015).  Mooney remains free to pursue more robust injunctive relief against Monster

12  in his state court action if he decides to opt out.  Alternatively, if Mooney decides to

13  remain a class member, he may object to the adequacy of representation in due

14  course, but consideration of this issue is, once again, premature.  *See Zepeda*, *supra*,

15  2014 WL 1653246, at *8.

16          Consequently, this element does not support Mooney's motion for

17  intervention.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Mooney's motion to intervene be denied. The Court should approve the parties' *ex parte* application for an order granting preliminarily approval of the class-action settlement.

Dated: September 30, 2015                COUNSELONE, P.C.


By:   /s/ *Anthony J. Orshansky*
         Anthony J. Orshansky
         Justin Kachadoorian

         ***Attorneys for Plaintiffs***
         ***Osie Marshall, Yasna Cuevas,***
         ***and John Van Es***


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 30th day of September, 2015, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


         /s/ Anthony J. Orshansky

         Anthony J. Orshansky
         ***Attorneys for Plaintiffs***
         ***Osie Marshall, Yasna Cuevas,***
         ***and John Van Es***