1  Anthony J. Orshansky, SBN 199364
   anthony@counselonegroup.com
2  Alexandria R. Kachadoorian, SBN 240601
   alexandria@counselonegroup.com
3  Justin Kachadoorian, SBN 260356
   justin@counselonegroup.com
4  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
5  Beverly Hills, California 90210
   Telephone: (310) 277-9945
6  Facsimile: (424) 277-3727

7  Attorneys for Plaintiffs
8  OSIE MARSHALL, YASNA CUEVAS,
   JOHN VAN ES, on behalf of themselves
9  and others similarly situated

10

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14  OSIE MARSHALL, YASNA CUEVAS,        Case No. 2:14-cv-06311-MWF (PLAx)
15  JOHN VAN ES, on behalf of themselves
    and others similarly situated,       [Assigned to the Hon. Michael W.
16                                        Fitzgerald]
17              Plaintiffs,
                                          **PLAINTIFFS' REPLY IN**
18        v.                              **SUPPORT OF MOTION FOR**
                                          **PRELIMINARY APPROVAL OF**
19  MONSTER ENERGY COMPANY, dba          **CLASS ACTION SETTLEMENT**
20  HANSEN BEVERAGE COMPANY, and
    DOES 1 through 10, inclusive,         Hearing Date: January 25, 2016
21                                        Time: 10:00 a.m.
                Defendants.               Location: Courtroom 1600
22
23                                        Complaint Filed: April 4, 2014
                                          FAC Filed: September 29, 2014
24                                        Trial Date: April 12, 2016

25

26

27

28

**INTRODUCTION**

In an attempted end-run around established class-action procedure, proposed intervenors Mayan Mooney, Frank Cuzakis, and Jack Hudson (collectively, "Proposed Intervenors") once again prematurely interject themselves into this proceeding, this time to oppose preliminary approval of the class-action settlement. (ECF Nos. 82, 85.)  The Court should reject their oppositions.

First, the Court should not consider Proposed Intervenors' objections to the settlement and their oppositions should be stricken. As non-parties, Proposed Intervenors lack standing to object to preliminary approval of the settlement.

Second, their objections to the settlement are premature.  Proposed Intervenors will have full opportunity to object to the settlement prior to the final fairness hearing, but they cannot derail the settlement process before it has begun.

Third, Proposed Intervenors' substantive arguments against preliminary approval lack merit.  At preliminary approval the Court need only make a conditional finding that the settlement is within the range of possible outcomes.  Because the settlement provides adequate consideration to class members and is fair, reasonable, and adequate, the Court should conditionally certify the class and grant preliminary approval.

**ARGUMENT**

**A. Proposed Intervenors Lack Standing to Oppose Preliminary Approval of the Settlement.**

Only parties may file motions in a pending lawsuit other than a procedurally proper and noticed motion to intervene.  *See*, *e.g.*, *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2013 WL 2147410, at *3 (N.D. Cal. May 15, 2013) ("Unless and until Burgess and/or any other non-parties to this action have been granted leave to intervene, such requests are premature.")

Proposed Intervenors are not parties to the instant action; they have merely filed motions to intervene on which the Court has yet to rule.  (*See* ECF Nos. 53, 59.)

1   Moreover, because a settlement class has not yet been preliminarily approved, they
2   are not even class members at this point. *See Standard Fire Ins. Co. v. Knowles*, 133
3   S. Ct. 1345, 1349 (2013) (" '[A] nonnamed class member is [not] a party to the class-
4   action litigation before the class is certified' ").

5   As non-parties, Proposed Intervenors lack standing to oppose Plaintiffs'
6   motion for preliminary approval. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th
7   Cir. 1989)("We hold, therefore, that non-class members have no standing to object,
8   pursuant to a Rule 23(e) notice directed to class members, to a proposed class
9   settlement."); *Braynen v. Nationstar Mortgage, LLC*, No. 14-CV-20726, 2015 WL
10  4043012, at *1 (S.D. Fla. Jan. 30, 2015)(preliminarily approving settlement
11  notwithstanding "lengthy and minutely-detailed" objections by non-parties).

12  **B. Proposed Intervenors' Objections to the Settlement Are Premature.**

13  Even if Proposed Intervenors had standing, their opposition to the proposed
14  settlement is premature.  "The proposed intervenors' interests in this action can be
15  fully protected at the fairness hearing for final approval of the settlement. …  In
16  addition, any class members who do not want to be bound by the settlement will be
17  given an opportunity to opt out and pursue their own claims separately." *Davis v.*
18  *J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011)(citing cases).

19  In *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *2 (N.D.
20  Cal. Oct. 23, 2009), the plaintiffs filed a motion for preliminary approval of the class
21  settlement.  The plaintiffs in a previously filed related class action moved to
22  intervene and object to preliminary approval. *Id.*  The court denied the motion to
23  intervene and overruled the proposed intervenors' objections. *Id.* at *5. "Proposed
24  Intervenors … have failed to establish that their rights to raise these issues are not
25  adequately protected through the process for submitting objections that will follow
26  upon preliminary approval of the settlement agreement." *Id.*

27  Now is not the proper time to object to the class settlement.  Just as in *Lane*
28  and numerous other actions, Proposed Intervenors will have every right to object to

the settlement before final approval or opt out altogether and pursue their claims separately if they are unhappy with the result or think they can do better for themselves.  (Settlement Agreement §§ 3.8, 3.11.)  *See Zepeda*, *supra*, 2014 WL 1653246, at *4 (holding that proposed intervenors could protect their interests by objecting or opting out; citing cases); *Cohorst v. BRE Properties, Inc.*, 2011 WL 3475274 at *6 (S.D. Cal. Aug. 5, 2011) (same).  "[S]uch motions [  ] unnecessarily consume[] the Court's time and resources" and should be denied.  *Zepeda*, *supra*, 2013 WL 2147410, at *3.

## C. The Court Should Grant Preliminary Approval over Proposed Intervenors' Objections.

### A. The Two-Step Approval Process

Class-action-settlement approval is accomplished in two steps:  (1) an early, preliminary review by the trial court, and (2) a detailed review after the notice has been distributed to the class members for their comments or objections.  The Manual for Complex Litigation (Second) explains:

> A two-step process is followed when considering class settlements … If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* (2d ed. 1985) ("MCL 2d"), at § 30.44.  *See also Lane*, *supra*, 755 F.Supp.2d at 607 ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.")(internal quotation marks omitted).

///

3

1    The preliminary approval of the class action settlement by the district court is
2    simply a conditional finding that the settlement appears to be within the range of
3    acceptable settlements.  *See*, *e.g.*, *Newberg on Class Action*, § 11.25; *North County*
4    *Contractor's Assn., Inc. v. Touchstone Ins. Services* (1994) 27 Cal.App.4th 1085,
5    1094-195; MCL 2d at § 30.44.

6    "Preliminary approval of a settlement agreement requires only an 'initial
7    evaluation' of the fairness of the proposed settlement on the basis of written
8    submissions and, in some cases, an informal presentation by the settling parties.
9    [Citations] ***Courts often grant preliminary settlement approval without requiring a***
10   ***hearing or a court appearance.***"  *In re Penthouse Executive Club Comp. Litig.*, No.
11   10 CIV. 1145 KMW, 2013 WL 1828598, at *1 (S.D.N.Y. Apr. 30, 2013) (emphasis
12   added).  Thus the preliminary approval of the class-action settlement by the trial
13   court is a conditional finding that the settlement appears to be within the range of
14   acceptable settlements, and the Court should not deny preliminary approval where
15   the settlement suffers from no "obvious defects." *Id.* at *3.

16   Preliminary approval is simply not the appropriate time to consider every
17   objection to the proposed settlement blow by blow.  *See Lane*, *supra*, 755 F.Supp.2d
18   at 608 (granting preliminary approval over the proposed intervenors' objections,
19   finding that their objections could be properly addressed in the context of the final
20   fairness hearing); *Davis*, *supra*, 775 F.Supp.2d at 609 (same); *In re Penthouse*
21   *Executive Club Comp. Litig.*, No. 10 CIV. 1145 KMW, 2013 WL 1828598, at *2
22   (S.D.N.Y. Apr. 30, 2013) ("[A] plaintiffs' dissatisfaction with certain settlement
23   terms is not a bar to preliminary approval.  The proper time for the Court to consider
24   objections to a settlement is at the final approval hearing.")(citing cases).

25   **B.    The Proposed Settlement Is within the Range of Possible Approval.**

26   **1.    The Settlement Consideration Is Fair and Adequate.**

27   Proposed Intervenors challenge several aspects of the settlement, but these
28   objections should be made at final approval, as discussed above.

4

1    Nonetheless Proposed Intervenors' objections lack merit. Proposed
2  Intervenors' principal qualm is that the settlement does not provide enough of a
3  benefit.  Proposed Intervenors would like to see a common-fund settlement garnering
4  their attorneys "millions" of dollars.[1]   But "[a]n objection to the amount of a
5  settlement is not the type of 'obvious defect' that should derail a settlement process
6  before it begins.  A complaint about the settlement amount should be addressed at the
7  final approval hearing after all of the Class Members have had a chance to weigh in
8  and the all parties have made full presentations."  *See also Behrens v. Wometco*
9  *Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("the fact that a proposed
10  settlement amounts to only a fraction of the potential recovery does not mean that the
11  settlement is unfair and inadequate"); *Linney v. Cellular Alaska P'ship*, 151 F.3d
12  1234, 1242 (9th Cir. 1998) ("the very essence of settlement is … yielding of
13  absolutes and an abandoning of highest hopes") (internal quotations and citations
14  omitted).

15    The settlement consideration, which Proposed Intervenors recognize is the
16  most important factor (*see* Cuzakis/Hudson Opp'n to Prelim. App'l, ECF No. 82, at
17  12-9:14), is reasonable because the challenged products sell for little or no price
18  premium and because the settlement benefit represents a large percentage—up to 37
19  percent—of the retail price of the disputed products.  (*See* Kachadoorian Decl. filed
20  in support of Preliminary Approval [ECF No. 76-2], *passim.*)  *See In re Tableware*
21  *Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (granting preliminary approval of
22  proposed class settlement where the settlement consideration is not obviously
23  deficient).

24  ///

25

26  [1]  *See* Mooney's Mot. for Lead Counsel, ECF No. 70-1, 6:9-10 ("*The Settlement provides no*
    *common fund*[.]")(emphasis in original); Cuzakis and Hudson Opp'n to Prelim. App'l, ECF No. 82,
27  9:20-22 ("Here, there is no specific amount that Hansen's would pay if the settlement is
    approved."); Friedl Decl. filed in support of motion to intervene, ECF No. 59, ¶ 9 (opining that the
28  case should have settled for "millions").

1
2

          **2.**      **The Notice Plan Is Robust and Satisfies Recognized Federal Benchmarks.**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Recognizing that the settlement consideration itself is within the range of possible approval, Proposed Intervenors retort that the class notice is inadequate and speculate that the claims rate will be low.  Again, this argument is better addressed at final approval, after the class notice has been disseminated and the claims rate is known.  The notice plan itself is modeled after one approved by the Court in *Weeks v. Kellogg Co.*, No. CV 09-08102-MMM (RZx), 2013 WL 6531177, at *11 (C.D. Cal. Nov. 23, 2013)(Morrow, J.) and provides for a robust regime of publication notice in the California edition of *USA Today*, Internet banner advertisements on an array of websites, and the creation of a settlement website and toll-free number.  (*See* Pls.' Mot. for Preliminary Approval, ECF No. 76, at 17:19-19:8.)  *See also In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)("Because defendants do not have a list of potential class members … the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the Lenox settlement.") (citing *Manual for Complex Litigation* (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort")).

20
21
22
23
24
25
26
27

The parties are currently evaluating notice proposals from various claims administrators; ***these proposals contemplate a total reach that meets or exceeds the 70 percent threshold recognized by the Federal Judicial Center.***  *See Federal Judicial Center*, Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges, at p. 27 (3d ed. 2010).  Consequently, the manner of giving notice satisfies due process.  At the time of final approval the parties will submit evidence from the settlement administrator testifying to the actual reach of the notice program.

28

1   The Proposed Intervenors also fault the fraud-prevention procedures set forth
2   in the settlement.  (*See* Cuzakis/Hudson Opp'n to Prelim. App'l, ECF No. 82, at
3   9:22-10:6; Mooney's Mot. for Interim Class Counsel, ECF No. 70-1, at 8:28-9:19.)
4   But merely including commonplace fraud-prevention procedures, like submission of
5   claim forms under penalty of perjury, will not depress the claims rate.   Such
6   safeguards merely serve to deter fraudulent claims and are routinely approved by
7   courts.  *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at \*7, fn. 3 (C.D.
8   Cal., Apr. 9, 2014) (approving fraud detection process, including submission of
9   claim forms under penalty of perjury, in mislabeling class action); *Schulte v. Fifth*
10  *Third Bank*, 805 F.Supp.2d 560, 568 (N.D. Ill. 2011) (approving settlement where
11  class members were required declaration "under penalty of perjury" for claims by
12  class members).

13          **3.      Proposed Class Counsel Have Conducted a Thorough**
14                   **Investigation to Apprise Themselves of the Range of Possible**
15                   **Outcomes.**

16          Proposed Intervenors also query whether Plaintiffs have obtained sufficient
17  discovery to evaluate liability and damages.  (Cuzakis/Hudson Opp'n to Prelim.
18  App'l, ECF No. 82, at 9:6-11; Mooney's Mem. ISO Mot. for Interim Class Counsel,
19  ECF No. 70-1, at 3:16-19; 4:13-5:13.)[2]

20          Plaintiffs have obtained sufficient discovery from Defendant and conducted an
21  independent investigation to apprise themselves of the range of reasonable outcomes

22

---

23  [2]  Proposed Intervenors' attack on Plaintiffs' investigation in this action is a misguided attempt to
     distract the Court from their own deficiencies.  Cuzakis and Hudson's prosecution of their state-
24  court action was lackluster.  (*See* Pls' Opp'n to Cuzakis/Hudson Mot. to Intervene, ECF No. 79, at
     4:4-5:11.)  The same is true of Mooney's prosecution.  Indeed, after Plaintiffs filed their opposition
25  to Mooney's ill-advised motion for interim lead counsel, *see* ECF No. 81, Mooney's counsel Bill
     Restis admitted to news media that his firm had plagiarized Plaintiffs' complaint, going so far as to
26  say that "[c]opying complaints has been very common in class actions for decades.  *It is merely a*
     *pleading to initiate a lawsuit, nothing more[.]*"  (Orshansky Decl., filed herewith, Ex. A.)  Mr.
27  Restis's cavalier approach to a class-action complaint as "nothing more" than an initiating document
28  betrays his law firm's own inadequate investigation prior to slapping Marcy Krinsk onto the caption.

7

1   prior to settling.  Although Plaintiffs' counsel did apply ex parte for additional time
2   to conduct discovery, that request was driven largely by the Court's ruling in *In re*
3   *ConAgra Foods, Inc.*, No. CV 11-05379-MMM (AGRx), 2015 WL 1062756, at *33
4   (C.D. Cal. Feb. 23, 2015), a mislabeling case that raised an additional layer of
5   complexity not at issue here.[3]  In particular, even a cursory examination of the retail
6   prices of Defendant's products versus competitors showed that the price premium for
7   Defendant's products, whether attributable to the labeling representations or not, was
8   virtually non-existent.  *See In re Vioxx Class Cases*, 180 Cal.App.4th 116, 131
9   (2009) (observing that "[t]he difference between what the plaintiff paid and the value
10   of what the plaintiff received is a proper measure of restitution.")  In short, the
11   potential recovery to be expected in this case, independent of Monster's defenses and
12   the significant procedural hurdles, simply did not justify a greater outlay of attorney
13   time and money if a favorable outcome could be obtained sooner rather than later.
14   And that is just what Plaintiffs' counsel helped achieve.

### 4.   The Court Should Conditionally Certify a Settlement Class.

16   Cuzakis and Hudson also level an argument against the certifiability of the
17   class.  This argument is likewise premature for determination at the preliminary-
18   approval stage.

19   In *Davis*, *supra*, 775 F.Supp.2d at 609, the Court overruled the proposed
20   intervenors' argument that the class was not certifiable.  At issue there was a
21   proposed nationwide class and variations in state law.  *Id.*  The court conditionally

---

23   [3] The plaintiffs in *ConAgra* alleged that the defendant's "all natural" representations were false
24   because of the use of genetically modified organisms (GMO).  The Court originally denied
     certification because the plaintiffs' damages model failed to isolate the price premium, if any, for
25   the "all natural" claim that was attributable specifically to the use of GMOs.  The instant action is
     not over GMOs, and consequently the damages conundrum that originally frustrated certification in
26   *ConAgra* simply does not exist.  Plaintiffs' counsel here simply wanted more time and cash-register
     data to run a preliminary regression analysis, but there is no hard-and-fast requirement to do so at
27   certification.  Moreover, even if the Court had required a preliminary regression analysis at
     certification in this case, there is no reason to believe that the Court would not have allowed
28   Plaintiffs to file an amended motion for class certification just as it had in *ConAgra*.

1   certified the class notwithstanding the variations in state law.  *Id.*  "[I]t must be borne
2   in mind that certification is sought here for settlement purposes, not for trial…. [t]he
3   state-law variations impact trial manageability, which is relevant principally with
4   respect to litigation at trial."  *Id.*   The court also found that the certification is
5   conditional, so the proposed intervenors will be able to fully air their objections to
6   certification at trial, along with their other objections.  *Id.  See also Alberto v. GMRI,*
7   *Inc.*, 252 F.R.D. 652, 663 (E.D. Cal. 2008).

8        Cuzakis and Hudson challenge commonality because they contend this case
9   involves 198 different products with different labels.  (Opp'n at 6:24-25.)  That is not
10  true.  This case does not involve 198 different *products* but merely different *flavors*
11  of several categories of products.  (FAC ¶ 2.)  The labeling representations and
12  product composition in each category is substantially similar and have not changed
13  materially over the class period.  Although Plaintiffs, for the sake of analysis,
14  dissects Defendant's labels in the FAC (*see* ¶¶ 8-80), there is substantial overlap
15  among the labeling misrepresentations, as Plaintiffs have specifically alleged (*see*,
16  *e.g.*, FAC ¶¶ 30, 41, 47, 56, 62), such that the labels, when viewed as whole, convey
17  a false message to consumers about the beverage products—generally that what they
18  are buying is a product unmolested by high processing or manmade ingredients.  *See*
19  *Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, *1, 4 (C.D. Cal. Mar. 17, 2011)
20  ("even if certain statements would be non-actionable on their own, where there are
21  multiple statements at issue, we must consider the packaging as a whole."); *Williams*
22  *v. Gerber Prods. Co.*, 552 F.3d 934, 939, fn. 3 (9th Cir. 2008).  Thus, contrary to
23  Proposed Intervenors' argument, these "theories" are not "unrelated."  (*See* Opp'n at
24  7:16-8:7 (citing *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9,
25  2013)[4] and *Red v. Kraft Foods, Inc.*, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011).[5]

26  _____
27  [4] In *Trazo*, the plaintiffs alleged a wide variety of products—from Eskimo Pies to Alfredo sauce—
    each with differing labeling representations.  2013 WL 4083218, at *1.  *Red v. Kraft* is similar.
28  There, the plaintiffs alleged claims arising from a variety of *different* labeling representations on "13
    products with 57 different iterations of packaging purchased by consumers over an 11-year period.")

9

1   Moreover, if this case were further litigated, Plaintiffs could have certified

2   separate classes relating to each product category.  Of course, any management

3   difficulties associated with this approach are irrelevant for the purposes of certifying

4   a settlement class.  *See Davis*, *supra*, 775 F.Supp.2d at 609.

5   Finally, *Red* and *Trazo* are not appellate opinions and are therefore not binding

6   on this Court.  In contrast, numerous other courts have certified mislabeling class

7   actions.  *See*, *e.g.*, *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *17-

8   18 (N.D. Cal. Nov. 18, 2014); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113

9   (N.D. Cal. Jun. 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365,

10   378-379 (N.D. Cal. 2010); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537

11   (N.D. Cal. 2012); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *1

12   (N.D. Cal. May 23, 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *13

13   (C.D. Cal., Apr. 9, 2014); *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *10

14   (S.D. Cal. Jul. 30, 2013); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11

15   (C.D. Cal.  Jul. 1, 2013).

16   Because of the divergent rulings by district courts on certification in

17   mislabeling cases, the risk of non-certification is another legitimate factor justifying

18   settlement.  *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL

19   3404531, at *4 (N.D. Cal. July 11, 2014)(***"Settlement is favored where, as here,***

20   ***significant procedural hurdles remain, including class certification and an***

21   ***anticipated appeal."***)(emphasis added).  *See also* Cuzakis/Hudson Opp'n at 8:13-15

22   2011 WL 4599833, at *14.  *See also id.* at *1 (noting that plaintiffs' case was originally about trans
23   fats, but then "Plaintiffs added a number of claims that were either unrelated or only tangentially
24   related to their trans fat claims.")  Plaintiffs' claims here involve a discrete set of beverages with
     consistent labels over a much shorter class period than in *Red* all of which are mislabeled in a
     similar way.
25   [5]  The Ninth Circuit is currently considering appeals in two food mislabeling class action that will
26   likely affect certifiability.  *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. Jun. 13,
     2014); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015).  As Proposed Intervenors
27   acknowledge, the Court may consider the risks of maintaining class action status through trial when
     deciding whether to approve the settlement, *see* Cuzakis/Hudson Opp'n at 8, and the potential effect
28   of appellate ruling in these cases also militates in favor of settlement.

1    (recognizing that courts consider "the risk of maintaining class action status

2    throughout the trial" when deciding whether to grant settlement approval).

3              **5.      The Court Should Temporarily Enjoin the Related State-**

4                        **Court Actions.**

5              Finally, Proposed Intervenors regurgitate their arguments against the proposed

6    temporary injunction.  Plaintiffs have already addressed those arguments, which the

7    Court should reject.  (*See* Pls' Opp'n to Cuzakis/Hudson Mot. to Intervene, ECF No.

8    79, at 22:1-24:5.)

9                                    **CONCLUSION**

10             Plaintiffs respectfully request that the Court grant preliminary approval of the

11   proposed settlement.

12   Dated:  January 11, 2016                   COUNSELONE, P.C.

13

14                                              /s/ Anthony J. Orshansky_____
                                                Anthony J. Orshansky

15                                              Justin Kachadoorian

16
                                                ***Attorneys for Plaintiffs Osie Marshall,***
17                                              ***Yasna Cuevas, and John Van Es***

18

19

20                                **CERTIFICATE OF SERVICE**

21             The undersigned hereby certifies that on the 11th day of January, 2016, the

22   foregoing document was filed electronically on the CM/ECF system, which caused

23   all CM/ECF participants to be served by electronic means.

24
                                                /s/ Anthony J. Orshansky_____
25                                              Anthony J. Orshansky

26                                              ***Attorneys for Plaintiffs***
                                                ***Osie Marshall, Yasna Cuevas,***
27                                              ***and John Van Es***

28

---

11