UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV-14-06311-MWF-PLA**          **Date:  February 29, 2016**
Title:    Osie Marshal, et al. -*v*- Monster Energy Company

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
|  |  |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings (In Chambers):**    ORDER RE MOTIONS TO INTERVENE; MOTION
FOR APPOINTMENT OF INTERIM COUNSEL;
AND MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL [55] [63] [70] [76]

Four Motions are before the Court:

1.  Mayan Mooney's Motion to Intervene (the "*Krinsk* Motion"), filed on
August 3, 2015 (Docket No. 55).  Plaintiffs and Defendant filed separate
Oppositions to the *Krinsk* Motion on September 30, 2015.  (Docket Nos.
60, 61).  Mooney (the "*Krinsk* Intervenor") submitted an omnibus Reply
to the Oppositions on October 7, 2015.  (Docket No. 67).  (The parties
refer to the related state action as the "*Krinsk*" action, and therefore the
Court will do likewise, although Ms. Mooney is in fact the potential
intervenor.)

2.  Frank Cuzakis and Jack Hudson's Motion to Intervene (the "*Cuzakis*
Motion"), filed on October 5, 2015 (Docket No. 63).  Plaintiffs and
Defendant filed separate Oppositions to the *Cuzakis* Motion on January 4,
2016.  (Docket Nos. 79, 84).  Cuzakis and Hudson (the "*Cuzakis*
Intervenors") submitted an omnibus Reply to the Oppositions on January
11, 2016.  (Docket No. 89).

3.  Motion for Appointment of Finkelstein & Krinsk LLP as Interim Class
Counsel ("Motion for Appointment of Interim Counsel"), filed on October

_____

**CIVIL MINUTES—GENERAL**                                                    **1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016
Title:     Osie Marshal, et al. -*v*- Monster Energy Company

22, 2015 (Docket No. 70).  Plaintiffs, Defendant, and *Cuzakis* Intervenors
submitted separate Oppositions to the Motion for Appointment of Interim
Counsel on January 4, 2016.  (Docket Nos. 80, 81, 83).  The *Krinsk* filed
an omnibus Reply to those Oppositions on January 11, 2016.  (Docket No.
87).

4. Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Motion
   for Preliminary Approval"), filed on December 28, 2015.  (Docket No.
   76).  The *Cuzakis* Intervenors filed an Opposition to the Motion for
   Preliminary Approval on January 4, 2016, followed by Plaintiffs' Reply
   on January 11, 2016.  (Docket Nos. 82, 90).

The Court reviewed and considered all papers submitted on the Motions, and held a
hearing on **February 29, 2016**.  The Court rules as follows:

The *Cuzakis* and *Krinsk* Motions are **DENIED**.  Both the *Cuzakis* Intervenors
and the *Krinsk* Intervenor (collectively, the "Proposed Intervenors") have failed to
demonstrate that their Motions are timely and that their interests would be impaired in
the absence of intervention.  The record makes clear that the Proposed Intervenors
should have been aware of the possibility that their claims would be impaired in this
action long before they sought intervention.  In any event, the objection and opt-out
procedures under Rule 23 are sufficient protect any interests the Proposed Intervenors
may have in opposing the terms of the proposed settlement agreement reached by the
parties (the "Settlement Agreement").

The Motion for Appointment of Interim Counsel is **DENIED *as moot*** because
the *Krinsk* Intervenor may not intervene in this action.  Her request is an improper
attempt to circumvent the objection procedures established under Rule 23 by
challenging the terms of the Settlement Agreement before the final stage of settlement
approval.

The Motion for Preliminary Approval is **DENIED *without prejudice***.  Plaintiffs
fail to meet the commonality and predominance requirements of Rule 23(a) and (b)(3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA               Date:  February 29, 2016**

Title:     Osie Marshal, et al. -*v*- Monster Energy Company

because the class involves numerous different advertisements that implicate individual
questions.  The problem can be likely overcome by fracturing the class into multiple
sub-classes.  These deficiencies aside, the Court determines that the Settlement
Agreement, although problematic in some aspects, falls "within the range" of possible
judicial approval.

## I.     BACKGROUND

The chronology of the various actions is set forth at the end of this Order.

This dispute began in September 2013, when Plaintiffs' counsel sent Defendant
a letter demanding relief for certain labels placed on Defendant's products.
(Declaration of Anthony J. Orshansky ("Orshansky Decl.") ¶ 2 (Docket No. 76-1)).
Those products, to which the Court and the parties refer as "Qualifying Products,"
consist of a variety of beverages, including juices, smoothies, and sodas, that are sold
to consumers throughout the nation.  (*See* First Amended Complaint ("FAC") ¶ 2
(Docket No. 38)).  Following the demand letter, the parties attempted to reach a pre-
litigation resolution of Plaintiffs' claims through formal mediation.  (Orshansky Decl. ¶
5).  When those efforts failed, Plaintiffs initiated this class action in the San Francisco
Superior Court, alleging violations of California's false advertisement laws.  (*Id.* ¶ 2).
The action was removed to the Northern District of California on May 13, 2014, and
transferred to the Central District on August 6, 2014.  (*See* Notice of Removal (Docket
No. 1); Order Transferring Case to the Central District of California (Docket No. 27)).
The action was assigned to this Court on January 4, 2016.  (Docket No. 86).

The parties served initial disclosures under Rule 26(a) and engaged in formal
discovery.  (Orshansky Decl. ¶ 4).  Defendants have responded, Plaintiffs aver, to
almost 200 requests for production of documents and over 20 interrogatories.  (*Id.*).
Among the discovery produced was information relating to the labeling, packaging,
advertising, sales, and pricing of the products at issue.  (*Id.*).  A number of experts have
assisted Plaintiffs in framing the discovery requests and identifying the information
relevant to Plaintiffs' claims.  (*Id.*).  With the benefit of such information, the parties

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV-14-06311-MWF-PLA** **Date: February 29, 2016**
Title: Osie Marshal, et al. -*v*- Monster Energy Company

have reached the Settlement Agreement. (*Id.* ¶¶ 7-8, Ex. A (the "Settlement Agreement")).

The Settlement Agreement is a detailed document providing for relief to putative class members. (Settlement Agreement §§ 1.11, 1.12, 2.3, 2.4). Those members consist of "[a]ll residents of California who, between June 27, 2009 and entry of the Preliminary Approval Order, purchased one or more Qualifying Products from an authorized retailer in California." (Orshansky Decl. ¶ 11). Under the Settlement Agreement, the members may choose either a cash payment of $0.50 or a $1.00 discount certificate per purchase of up to twenty purchases. (Settlement Agreement § 2.3). The Settlement Agreement also provides for an injunction of two related state court actions: *Cuzakis v. Monster Energy Company*, Los Angeles Superior Court, Case No. BC513620 ("*Cuzakis* Action"), and *Krinsk, et al. v. Monster Beverage Corporation*, San Diego Superior Court, Case No. 37-2014-20192-CU-BT-CTL ("*Krinsk* Action"). (*Id.* § 3.1).

The *Cuzakis* Action was filed on June 27, 2013, approximately ten months prior to this action. (Declaration of Robert K. Friedl ("Friedl Decl.") ¶ 2 (Docket No. 63-1)). The claims involved in the *Cuzakis* Action are subsumed by the Settlement Agreement because they concern mislabeling of a portion of the Qualified Products. (*Id.* ¶ 3, Ex. A). Shortly after the *Cuzakis* Action was filed, the Superior Court entered a discovery stay that was not lifted until April 23, 2015. (Declaration of Purvi G. Patel ("Patel Decl.") ISO Defendant's Opposition to Cuzakis Motion ¶ 3 (Docket No. 84-1)). The parties then engaged in discovery until the Superior Court again issued a stay on December 14, 2015—this time of the entire action—pending approval of the Settlement Agreement in this litigation. (*Id.* ¶ 4).

The *Krinsk* Action was filed on June 19, 2014, approximately two months after this action. (Patel Decl. ISO Motion for Preliminary Approval ¶ 2 (Docket No. 77)). The plaintiffs in the *Krinsk* Action copied Plaintiffs' Complaint verbatim and proceeded with parallel litigation in state court. (*See id.*, Ex. A). The Superior Court stayed the *Krinsk* Action on September 9, 2015 in light of the Motion for Preliminary Approval. (*Id.* ¶ 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016

Title:     Osie Marshal, et al. -v- Monster Energy Company

The Proposed Intervenors now seek to participate in this action in order to voice their concerns over the Settlement Agreement.  The *Krinsk* Intervenor also requests the Court to replace Plaintiffs' counsel with her own due to perceived inadequacies in the class representation.  The Court analyzes the propriety of intervention at this juncture before turning to Plaintiffs' Motion for Preliminary Approval.

## II.     **PROPOSED INTERVENTION**

### A.     **Intervention as of Right**

The Proposed Intervenors claim that they, as putative class members in this action, are entitled to intervene under Rule 24(a)(2).  (*Cuzakis* Motion at 2; *Krinsk* Motion at 2).  The Ninth Circuit employs a four-part test to determine whether intervention should be granted as a matter of right:  (1) the motion to intervene must be timely; (2) the proposed intervenor must have a "significant protectable interest" in the action; (3) the disposition of the action must impede that interest; and (4) the existing parties must not adequately represent that interest.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

The Proposed Intervenors identify two separate interests warranting intervention:  the interest in obtaining a better settlement and the interest in pursuing their own litigation in Superior Court.  (*Cuzakis* Motion at 8-9; *Krinsk* Motion at 4-5).  Those interests, even if valid, are insufficient to support intervention because (1) the Proposed Intervenors' Motions are untimely, and (2) the Proposed Intervenors' interests are already protected under Rule 23.  The Proposed Intervenors, in essence, seek to elevate their interests over those of other putative class members by intervening **not** to actively participate in this litigation but to object to the Settlement Agreement. The Ninth Circuit has held (as have various district courts) that such objections are properly addressed through the regular objection process during final settlement approval, not intervention.  *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) ("We are not persuaded that Objectors' motion [to intervene] was timely, because the motion was filed after four years of ongoing litigation, on the eve of [class] settlement, and threatened to prejudice settling parties by potentially derailing

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA**              **Date:  February 29, 2016**

Title:     Osie Marshal, et al. *-v-* Monster Energy Company

settlement talks, and especially where Objectors' concerns could largely be addressed through the normal objection process [under Rule 23].").

### 1.    Timeliness of Intervention

"A potential intervenor must act 'as soon as he [or she] knows or ***has reason to know*** that his [or her] interests might be adversely affected by the outcome of the litigation.'"  *Chavez v. PVH Corp.*, No. 13-CV-01797 LHK, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20, 2014) (emphasis and alterations in original) (quoting *Cal. Dept. of Toxic Substances Control v. Comm. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002)).  Courts generally consider the following factors in determining whether a motion to intervene is timely:  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (holding that the motion to intervene was not timely when it was brought late in the proceedings without any explanation for the delay).

There is little doubt that the Proposed Intervenors seek to participate in this action at a late stage of the proceedings, and that such participation would prejudice the existing parties by compromising or postponing final settlement.  The Ninth Circuit emphasized such prejudice in *Allen*, where the panel refused to permit intervention by putative class members "on the eve of settlement" because such intervention would "potentially derail[] settlement talks."  *Allen*, 787 F.3d at 1222.  The same is true here, and even Proposed Intervenors do not seriously argue otherwise.

Instead, the Proposed Intervenors focus on their reasons for the delay, contending that they intervened as soon as it became clear that the Settlement Agreement was (in their view) inadequate.  (*Cuzakis* Motion at 6-7; *Krinsk* Motion at 2).  But this contention misconstrues the relevant inquiry.  The key question under Rule 24(a) is not when the Proposed Intervenors were on notice that their interests ***would*** be affected but when there was notice that those interests ***could*** be affected.  *See Cal. Dept. of Toxic Substances Control*, 309 F.3d at 1120 (holding that a litigant must intervene when he has "reason to know that his interests ***might*** be adversely affected")

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA                 Date:  February 29, 2016**

Title:     Osie Marshal, et al. -*v*- Monster Energy Company

(emphasis added); *Allen*, 787 at 1222 (rejecting the proposed intervenors' argument that they acted "promptly after receiving notice of a proposed settlement that would not adequately represent their interests").  After reviewing the record in the *Cuzakis* Action, the Court is convinced that the *Cuzakis* Intervenors should have known about this action since April 20, 2015, at the latest, when Defendant first brought up the possibility of a stay.  (Patel Decl. ISO Defendant's Opposition to *Cuzakis* Motion ¶ 2).  And the Proposed *Krinsk* Intervenor has been well aware of her claims in this action for years since she copied Plaintiffs' Complaint verbatim.  The Proposed Intervenors, therefore, knew or had reason to know for a substantial period of time that this action **could** adversely affect their interests due to an inadequate class counsel.  The Proposed Intervenors' wait-and-see approach is fatal in light of such information.

Multiple district courts faced with analogous circumstances have reached the same conclusion.  As is the case here, putative class members in *Lane v. Facebook* sought to intervene immediately after the parties filed a motion for preliminary settlement approval.  No. C 08-3845 RS, 2009 WL 3458198, at *2 (N.D. Cal. Oct. 23, 2009).  The district court denied intervention as untimely, reasoning that "[w]hatever rights or interests Proposed Intervenors may have had . . . , those rights and interests (if any) necessarily arose the moment this action was filed, and were known or should have been known to Proposed Intervenors when they learned of the very **existence** of this lawsuit." *Id.* at *3 (emphasis in original).  Another district court used identical reasoning to deny intervention as untimely, stating, "While Proposed Intervenors may not have been 'certain that the [settlement] would be adverse to their interests, they had reason to know that negotiations might produce' a settlement that would affect their own interests based on the overlapping causes of action, identical Defendant, and overlapping proposed class definitions." *Chavez*, 2014 WL 6617142, at *5 (alterations in original); *see also Zamora v. Ryder Integrated Logistics, Inc.,* No. 13CV2679-CAB BGS, 2014 WL 9872803, at *2 (S.D. Cal. Dec. 23, 2014) ("Martinez's claim that the motion is timely because he filed it 'shortly after learning of Ryder's contentions as to the purported scope of the settlement' does not excuse or justify his delay. A potential intervenor must act as soon as he [or she] knows or has reason to know that his [or her]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA**                    **Date:  February 29, 2016**

Title:      Osie Marshal, et al. -*v*- Monster Energy Company

interests might be adversely affected by the outcome of the litigation.") (alteration in original) (quotations omitted).

The Proposed Intervenors ignore this authority indicating that they should have participated in this litigation when they first learned about it and not when they were first notified of the Settlement Agreement.  *See Cal. Dept. of Toxic Substances Control* 309 F.3d at 1120 ("The timeliness inquiry . . . does not allow a potential intervenor to wait until a potential harm 'crystallizes' or becomes 'certain.'").  Nor do Proposed Intervenors cite any persuasive cases that have permitted intervention analogous circumstances.  The only remotely relevant case the Proposed Intervenors cite—*United States v. Carpenter*, 298 F.3d 1122, 1124 (9th Cir. 2002)—was explicitly distinguished in *Allen* because it involved "a government entity not representing intervenor's interests."  *Allen*, 787 F.3d at 1218.  Because here, just like in *Allen*, the government is not a party, and therefore there is no need to "encourage . . . the government's participation in settlement discussions," *Carpenter*, 298 F.3d at 1125, the Proposed Intervenors cannot rely on their ignorance of the Settlement Agreement to justify their delay.

At the hearing, the *Krinsk* Intervenor argued that the "triggering event" for intervention should be the request for preliminary approval because she could not have suspected any deficiencies in class representation prior to reviewing the Settlement Agreement.  But the *Krinsk* Intervenor bases her challenge to the adequacy of class representation on Plaintiffs' filings and a Court ruling in May 2015.  (Motion for Appointment of Interim Counsel at 4-5).  And yet she failed to intervene at that time in order to ensure that Plaintiffs would not negotiate a weak settlement.  That failure aside, the *Krinsk* Intervenor knew (or at least should have known) from the very beginning of the *Krinsk* Action that her claims in this lawsuit could be affected due to inadequate representation.  Why else would the *Krinsk* Intervenor hire her own counsel to pursue identical claims in an identical action?

Despite the *Krinsk* Intervenor's arguments at the hearing, moreover, nothing in *Fraley v. Facebook Inc.*, No. 3:11-cv-01726-RS, 2012 WL 5835366, at *1 (N.D. Cal. Aug. 17, 2012) supports her purported right to intervene.  Without so much as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                 Date:  February 29, 2016

Title:     Osie Marshal, et al. -v- Monster Energy Company

mentioning intervention, the district court in *Fraley* denied without prejudice the parties' request for preliminary settlement approval due to a lack of information on key issues relating to the settlement agreement.  *Fraley*, 2012 WL 5835366, at*2-3.  The court did not discuss intervention because it had already denied a motion to intervene in a short minute order.  *Fraley v. Facebook, Inc.*, No. 3:11-cv-01726-RS, Order Re Motion to Intervene (N.D. Cal. July 25, 2012).  And although the district court stated that it would nonetheless take into account the intervenor's objections to the settlement agreement, it did so only after determining that it would not be practical to ignore valid objections that have already been brought to its attention.  *Id.*  At most, therefore, *Fraley* stands for the rather obvious proposition that it a court should not grant preliminary approve of a settlement agreement if it already knows that the agreement is deficient.  As the Court explained at the hearing, it is doing no such thing.

    The Proposed Intervenors' final argument is that their Motions are timely with respect to their interests in preventing an injunction of the *Cuzakis* and *Krinsk* Actions.  As the Proposed Intervenors admitted at the hearing, the injunction issue is now moot in light of the stays entered in the parallel actions.

    Accordingly, the request for intervention is untimely.

## 2.    Impairment of Interests

    Even if the *Cuzakis* and *Krinsk* Motions were timely, they would still be denied because intervention is not necessary to protect the Proposed Intervenors' interests.  Should the Court grant preliminary approval of the Settlement Agreement, the Proposed Intervenors would have the right to (1) voice their concerns prior to final settlement approval and (2) opt out of the Settlement Agreement and litigate their claims in an individual capacity.  Fed. R. Civ. P. 23(c)(2), (e)(2).  If the Proposed Intervenors, therefore, are dissatisfied with the Settlement Agreement or wish to pursue their claims without the threat of an injunction, they must follow the procedure established under Rule 23.  To rule otherwise is to disrupt the settlement-approval process and to arbitrarily favor the Proposed Intervenors over class members who are yet to receive notice of the Settlement Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016

Title:      Osie Marshal, et al. -v- Monster Energy Company

Numerous other courts have come to the same conclusion on materially identical facts.  In *Lane*, the district court held that the putative intervenors (class members dissatisfied with a proposed settlement) "failed to establish that their rights to raise these issues are not adequately protected through the process for submitting objections that will follow upon preliminary approval of the settlement agreement."  2009 WL 3458198, at *5.  Another district court reached an identical result, justifying its denial of a belated motion to intervene as follows:

> In her argument, Roman argues that the third factor is satisfied "in that she has a significantly protectable interest which will be impaired by the disposition of this action."  Fatal to her claim, however, she fails to identify how resolution of this action will impair or impede her ability to protect her interests.  Roman is able to opt-out of the class and pursue her own damages action against Defendants.  Alternatively, Roman may raise any objections to the settlement at the time of the Final Hearing.

*Cohorst v. BRE Properties, Inc.*, No. 10CV2666 JM BGS, 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011) (citing *Davis v. J.P. Morgan Chase & CO.*, 2011 WL 1327860 (W.D.N.Y. April 6, 2011) ("Intervention is not necessary here to protect the proposed Intervenor' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties."); *Zepeda v. PayPal, Inc.*, No. 10CV02500SBAJCS, 2014 WL 1653246, at *4 (N.D. Cal. Apr. 23, 2014) ("[C]ourts have frequently denied intervention in the class action settlement context, citing concerns about prejudice, as well as putative interveners' ability to protect their interests by less disruptive means, such as opting out of the settlement class or participating in the fairness hearing process.").

The Proposed Intervenors make no attempt to distinguish this substantial body of law.  Instead, they make two unpersuasive arguments:

The *Cuzakis* Intervenors contend that their objections should be considered as soon as possible due to the stay of their action.  (Reply ISO *Cuzakis* Motion at 6).  But

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA**                     **Date:  February 29, 2016**
Title:      Osie Marshal, et al. -*v*- Monster Energy Company

if the *Cuzakis* Intervenors do not wish to wait for the Superior Court to lift its stay, they could opt out of this class and pursue their individual claims almost immediately. Of course this Court understands that no one cares about the individual claims, so let us move to the real relief available – they can pursue their claims as members of this class and object at the appropriate time.  Any delay in presenting their objections would be due entirely to their own failure to intervene sooner.

The *Krinsk* Intervenor's argument is even less persuasive.  She claims that her intervention is warranted to protect not just her own interests but the interests of all putative class members. (Reply ISO *Krinsk* Motion at 14).  But the relevant inquiry is not whether her objections would help the remaining class members, but whether she should assert those objections as an intervenor or as an objector under Rule 23(e).  The *Krinsk* Intervenor offers no reasons for why she should be afforded special treatment and be permitted to operate outside the sensible procedure established by Rule 23(e).

In sum, the Proposed Intervenors have not shown that their interests would be impaired if their request to intervene as a matter of right were denied.

## B.      Permissive Intervention

The *Cuzakis* (but not *Krinsk*) Intervenors argue, in the alternative, that they are entitled to permissive intervention under Rule 24(b).  Permissive intervention may be granted when "(1) [there are] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).

Not only is the requested intervention untimely, as the Court already explained, there are no "independent grounds for jurisdiction" over the claims asserted in the *Cuzakis* Action.  The *Cuzakis* Intervenors  allege that (1) they are California residents; (2) bringing claims under California law; (3) on behalf of a putative class of California-only consumers; (4) against California defendants.  (*See generally* Patel Decl. ISO Motion for Preliminary Approval, Ex. C).  Permissive intervention may not

---

**CIVIL MINUTES—GENERAL**                                          **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA             Date:  February 29, 2016**
Title:      Osie Marshal, et al. -*v*- Monster Energy Company

be granted in such circumstances.  *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) ("[The proposed intervenor] fails to satisfy the first prong of the permissive intervention standard, since it asserts no independent basis for jurisdiction.").

Accordingly, the *Cuzakis* and *Krinsk* Motions are **DENIED**.

## III.    MOTION FOR APPOINTMENT OF INTERIM COUNSEL

In light of the Court's denial of intervention, the Motion for Appointment of Interim Counsel is moot.  *See Pearson v. NBTY, Inc.*, No. 11 C 7972, 2015 WL 5781517, at *2 (N.D. Ill. Oct. 1, 2015) (denying motion to appoint interim lead counsel where movant failed to satisfy intervention standards); *Tobin v. Conopco, Inc.*, No. C 12-05881 JSW, 2013 WL 1729845, at *2 (N.D. Cal., Apr. 22, 2013) (motion to be appointed interim lead counsel deemed moot after denial of underlying motion to intervene); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D. N.J. 2008) ("[S]ince Movant's motion for intervention has been denied, Movant's counsel . . . cannot be interim lead counsel.").

The Court notes that the *Krinsk* Intervenor seeks to replace Plaintiffs' counsel with her own solely due to the perceived deficiencies in the Settlement Agreement. (Motion for Appointment of Interim Counsel at 2-14).  The *Krinsk* Intervenor should have intervened to participate in this litigation and settlement negotiations when it first discovered that her claims were at issue in this action (assuming that the Court would have allowed that in light of *Allen*).  It is irrelevant that the *Krinsk* Intervenor did not know of the alleged deficiencies in class representation until the Settlement Agreement—a mere ***possibility*** of inadequate representation should have prompted the *Krinsk* Intervenor to intervene years ago.  As discussed above, the *Krinsk* Intervenor may raise her objections at the time of the final hearing on settlement approval.  *White v. TransUnion, LLC*, 239 F.R.D. 681, 684 (C.D. Cal. 2006) ("The crux of the [movant's] argument . . . is essentially that the imminent settlement . . . is deficient and demonstrates a lack of commitment to the class.  Appointment of interim class counsel is not the proper vehicle by which to oppose this settlement, however. . . . [T]he system

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016

Title:      Osie Marshal, et al. -*v*- Monster Energy Company

provides ample mechanisms for dissatisfied class plaintiffs to object to a class action
settlement.  These include the lodging of formal objection at a fairness hearing or the
exercise of class members' prerogative to opt-out of a finalized settlement
agreement.").

Accordingly, the Motion to Appoint Interim Counsel is **DENIED *as moot***.

## IV.    **MOTION FOR PRELIMINARY APPROVAL**

The decision as to whether to grant preliminary approval is left to the discretion
of the Court.  *See In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 972 (9th Cir.
2007) ("[T]he district court has substantial discretion in approving the details of a class
action settlement").  There are two parts to the Court's inquiry:  "First, the district
court must assess whether a class exists. . . .  Second, the district court must carefully
consider whether a proposed settlement is fundamentally fair, adequate, and
reasonable, recognizing that it is the settlement taken as a whole, rather than the
individual component parts, that must be examined for overall fairness."  *Staton v.
Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quotation marks and citations omitted).
For the purposes of preliminary approval, the Court must determine only if the
settlement falls within the "range of possible judicial approval."  *Monterrubio v. Best
Buy Stores, L.P.*, 291 F.R.D. 443, 448 (E.D. Cal. 2013) (noting that "[t]he Court will
have the opportunity to review evidence that bears on the Rule 23 requirements for
class certification and settlement approval at the Final Fairness Hearing").

### A.    **Class Certification**

The putative class consists of "all residents of California who, between June 27,
2009 and entry of the Preliminary Approval Order, purchased one or more Qualifying
Products from an authorized retailer in California."  (Settlement Agreement § 1.7).
The Settlement Agreement defines "Qualified Products" as "(i) Hansen's-brand
products, including Sodas, Juices, Junior Juices, Smoothie Nectars, Energy, and Fruit
& Tea Stix; (ii) Blue Sky products; (iii) Angeleno Aguas Frescas products; (iv)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016**

Title:      Osie Marshal, et al. *-v-* Monster Energy Company

Hubert's Lemonade products; (v) Vidration products; and (vi) Peace Tea products."
(*Id.* § 1.26).  The labels placed on those products, according to the FAC, fall into seven
categories:  "All Natural" (or some similar variation); "No Preservatives"; "100%
Juice"; "No Added Sugar"; "From Concentrate"; "Sweetened with Splenda"; and
labels indicating the presence of "naturally occurring vitamins and antioxidants."
(FAC ¶¶ 9-80).

The Court analyzes the propriety of class certification under the requirements
enumerated in Rule 23(a) and (b)(3).

## 1.      Requirements of Rule 23(a)

The Court must first determine whether the proposed class meets the
requirements of Rule 23(a):  (1) the class must be so numerous "that joinder of all
members is impracticable," (2) there must be "questions of law or fact common to the
class," (3) the claims of the class representative must be "typical of the claims . . . of
the class," and (4) the class representative must show that he "will fairly and
adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

### a.      *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members
is impracticable."  *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have
found that numerosity is satisfied when class size exceeds 40 members, but not
satisfied when membership dips below 21."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649,
654 (C.D. Cal. 2000).

Because Defendant does not sell the Qualifying Products directly to consumers
and does not maintain records regarding the identity of putative class members, it is not
possible to identify the precise size of the class.  (Motion for Preliminary Approval at
8).  The Court is satisfied, however, that the class is sufficiently large in light of its
broad definition.  It would be surprising indeed if less than twenty California residents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA              Date:  February 29, 2016

Title:    Osie Marshal, et al. -*v*- Monster Energy Company

purchased one of 170 Qualifying Products over the past six years.  See *In re Abbott Laboratories Norvir Anti-Trust Litigation*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. 2007) ("Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'") (quoting 1 Alba Cone & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002)).

##### b.    *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2).  Commonality is established if class members' claims "depend upon a common contention" that is "capable of class-wide resolution . . . mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The Court is not persuaded that the commonality requirement is satisfied here. Plaintiffs claim that the "claims arise from a common nucleus of facts—whether, and to what extent, the Qualifying Products bear labels that do not comply with FDA regulations and mislead the consumers."  (Motion for Preliminary Approval at 9). Plaintiffs frame the "common question" in far too general terms.  To answer that question, the trier of fact would be forced to fracture it into many different inquiries, no single one of which would be capable of resolving the putative class members' claims "in one stroke."

For instance, the question of whether a particular group of products contained added sugar would be irrelevant to consumers who purchased only juices with labels "100% Juice."  Similarly, whether a group of products contained preservatives is immaterial to consumers who relied solely on labels indicating that their beverages were made "From Concentrate."  There is simply no single factual contention that is capable of class-wide resolution.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016**

Title:     Osie Marshal, et al. *-v-* Monster Energy Company

Another district court considered labels with varying representations and came to the same conclusion:

> Here, if the "common contention" is that Kraft's labeling claims were so misleading as a whole that they were liable to deceive a reasonable consumer, the question would indeed appear to be capable of resolution as to the class.  But, probably, we cannot operate at that level of abstraction.  As Defendants note, Plaintiffs' proposed class consists of millions of consumers who purchased different products bearing different labels over the span of a decade.  Plaintiffs' contention that "Kraft has presented universal, class-wide misrepresentations . . . that do not vary between Class Members," is, as Defendants argue, demonstrably false.  Different consumers were exposed to different representations.

*Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2011 WL 4599833, at *9 (C.D. Cal. Sept. 29, 2011); *see also In re N. Dist. of California, Dalkon Shield IUD Products Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982) ("Different questions of law and fact could apply to various plaintiffs in the California class because of different representations and warnings made to each woman . . . .") (abrogated on other grounds); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007) ("The record shows that the proposed class members received a variety of different representations from Defendant regarding Pantene Pro–V products, some of which made hair strengthening claims and some did not."); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 447 (N.D. Cal. 2014) ("Plaintiffs in this case failed to limit their proposed classes to persons who saw or heard a common misrepresentation.  As in *Solomon*, 'the individual plaintiffs did not all see the same advertisements . . . .'"). *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668-69, 22 Cal.Rptr.2d 419 (1993) (affirming trial court's denial of class certification for action alleging representations that orange juice was "fresh," "premium," "from concentrate," and contained "no additives" because reliance issues would require individualized proof).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016
Title:      Osie Marshal, et al. -*v*- Monster Energy Company

In light of the factual differences in the class members' claims, Plaintiffs' list of eight common legal questions is unavailing.  (*See* Motion for Preliminary Approval at 9).  To take one typical example, "whether the labeling of the Qualifying Products is a 'fraudulent practice' under the UCL, in that it is likely to mislead consumers," depends on the particular representation at issue.  Proving that Defendant acted fraudulently when it added sugar to a soda bearing the "No Added Sugar" label does nothing to establish Defendant's liability as to its lemonades bearing the "All Natural" label.

This problem is likely not fatal to the Settlement Agreement.  Plaintiffs attempted to address this issue in the Reply at pages 8-10.  The Court, however, needs more legal and factual analysis.  As to the law, the parties might be making the argument that the Ninth Circuit rejected in *Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) ("In a case of this nature, one based upon alleged misrepresentations in advertising and the like, it is critical that the misrepresentation in question be made to all of the class members.") (reversing Judge Michael W. Fitzgerald).  It also seems to the Court that Plaintiffs are relying too much on *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 605 (W.D.N.Y. 2011), which is not particularly helpful on the issue here; in general, Plaintiffs rely too much, and on the argument that settlement classes are "different".

As to the facts, the issue here is not 198 labels or products or flavors.  It is representations.  If the same allegedly false representation occurred on all the labels, then there would be no problem.  Despite the reference to certain paragraphs in the Complaint (Reply at 9), the Court does not feel it has a firm enough grasp of what the precise issues would be if the class were certified and proceeded to trial.

Therefore, the Court will deny the motion for class certification without prejudice.  Plaintiffs may submit a new motion in which the existing class is justified by further legal analysis and factual explication.  In the alternative, Plaintiffs may propose subclasses relating to the alleged improper representations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016**

Title:      Osie Marshal, et al. -*v*- Monster Energy Company

### c.      *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiff be "typical
of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive
standards, representative claims are 'typical' if they are reasonably co-extensive with
those of absent class members; they need not be substantially identical."  *See Hanlon v.
Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Staton*, 327 F.3d at 957
("[T]ypicality does not mean that the claims of the class representative[s] must be
identical or substantially identical to those of the absent class members." (internal
citations omitted)).

Plaintiffs allege that they purchased various Qualified Products bearing most of
the labels at issue.  (FAC ¶ 85 ("Before buying Hansen's products, Plaintiffs saw
pictures of fruit on the product labels and read statements that these products were
'Natural,' '100% Natural,' 'All Natural,' 'naturally flavored,' 'naturally sweetened
with Truvia,' 'GMO Free,' and contained 'No Preservatives,' '100% juice,' and
specified antioxidants and vitamins.").  Their claims are therefore reasonably co-
extensive with those of the putative class members.

### d.      *Adequacy of Representation*

Rule 23(a)(4) requires that the representative parties "fairly and adequately
protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional
due process concerns, absent class members must be afforded adequate representation
before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020.  Adequacy
is established where the plaintiffs and their counsel (1) do not have conflicts of
interests with other class members; and (2) the plaintiffs and their counsel "prosecute
the action vigorously on behalf of the class."  *Id.*

Plaintiffs are potentially adequate representatives of the subclasses.  Counsel are
adequate.  There is no indication of conflicts of interest with other class members.
Counsel seems to have prosecuted this action competently, engaged in serious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016
Title:    Osie Marshal, et al. -*v*- Monster Energy Company

mediation, and reached an agreement that the Court deems to be, as explained in more detail below, within the range of possible approval.  Should the Court determine at the final stage of settlement approval that counsel has acted incompetently or colluded with Defendant, the Court will de-certify the class and decline to enforce the Settlement Agreement.

## 2.       Requirements of Rule 23(b)(3)

Plaintiffs seek to certify a damages class under Rule 23(b)(3), which imposes two additional certification requirements:  predominance of common issues and superiority of class adjudication.

Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.  For the same reasons discussed in connection with the commonality requirement, the parties have not demonstrated predominance of the common issues.  A careful use of subclasses, however, could cure this deficiency.

The class action mechanism is superior to other means of adjudication when "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). This requirement is clearly met here.

Accordingly, Plaintiffs' request for class certification is **DENIED** due to the lack of common issues among the putative class members.

## B.       Preliminary Settlement Approval

Rule 23(e) provides that a class settlement should be approved if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he universally applied standard is whether the settlement is fundamentally

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA**                **Date:  February 29, 2016**

Title:      Osie Marshal, et al. *-v-* Monster Energy Company

fair, adequate and reasonable.").  At the preliminary approval stage, however, the
Court need only determine whether the Settlement Agreement is "within a range of
possible judicial approval."  *Monterrubio*, 291 F.R.D. at 448; *Browning v. Yahoo! Inc.*,
No. C04-01463 HRL, 2006 WL 3826714, at *4 (N.D. Cal. Dec. 27, 2006) ("At this
first step of preliminary approval, the Court must conduct a prima facie review of the
relief and notice provided by the [Agreement], before the Court orders notice sent to
the tentative Settlement Class Members."); *see also* 13 William B. Rubenstein,
*Newberg on Class Actions* § 13 (5th ed. 2011) (emphasizing that the goal at the
preliminary approval stage is to "determine whether notice of the proposed settlement
should be sent to the class, not to make a final determination of the settlement's
fairness").  Some courts have even gone so far as to create a presumption that the
settlement is fair at the preliminary approval stage as long as it was reached at arm's
length.  *In re Immune Response Securities Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D.
Cal. 2007) ("[T]he fact that the settlement agreement was reached in arm's length
negotiations after relevant discovery [has] taken place create[s] a presumption that the
agreement is fair.") (internal quotations and citations omitted).

In its preliminary approval analysis, the Court may consider the following
factors:

> (1) the strength of Plaintiffs' case, (2) the risk, expense, complexity, and
> likely duration of further litigation, (3) the risk of maintaining class action
> status throughout the trial, (4) the amount offered in settlement, (5) the
> extent of discovery completed and the stage of the proceedings, (6) the
> experience and views of counsel, (7) the presence of a governmental
> participant, and (8) the reaction of the proposed class members to the
> proposed settlement.

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438, 2006 WL 1652598, at *9 (E.D. Cal.
June 13, 2006) (citing *Hanlon*, 150 F.3d at 1026).  But "[g]iven that some of these
factors cannot be fully assessed until the court conducts its fairness hearing, a full
fairness analysis is unnecessary at this stage." *Id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                 Date:  February 29, 2016
Title:      Osie Marshal, et al. -v- Monster Energy Company

### 1.      Monetary Relief

The Settlement Agreement provides class members an option of choosing
between (1) a $0.50 cash payment per purchase and (2) a $1.00 "Off Merchandise"
certificate per purchase.  (Settlement Agreement § 2.3).  Each class member may
recover for no more than twenty purchases.  (*Id.*).  Although the Settlement Agreement
does not establish a common fund obligating Defendant to pay a specific amount, the
Court deems the benefit terms within the range of reasonableness for three reasons:

*First*, the Qualified Products are either cheaper or only slightly more expensive
(up to eight cents per ounce) than competitors' products that do not bear the same
labels.  (Declaration of Justice Kachadoorian ¶¶ 2-13 (Docket No. 76-2)).  The
estimated premium, moreover, appears to be generous considering the inclusion of
generic brands and the exclusion of discounted prices of Defendant's products in the
calculation.  (*Id.*).  It therefore seems that class members received, more or else, the
benefit of the bargain, even assuming that the labels at issue were deceiving.

*Second*, a $0.50 cash payment ranges from 10 to 37 percent of the average retail
price of the Qualifying Products.  Considering that the Qualifying Products sell for
little or no price premium, the percentage of restitution seems to be fair and reasonable.
(*Id.* ¶ 4).

*Third*, a settlement recovery may be heavily, but reasonably, discounted to
account for saved litigation expenses and the risks of loss.  *See Nat'l Rural
Telecommunications Coop. v. DIRECTV*, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004)
("[I]t is well-settled law that a proposed settlement may be acceptable even though it
amounts to only a fraction of the potential recovery that might be available to the class
members at trial.").  The claims involved in this action have been litigated in both state
and federal courts over the last three years.  It is far from clear whether putative class
members would obtain any relief, let alone relief comparable to that involved here, if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA              Date:  February 29, 2016

Title:      Osie Marshal, et al. -*v*- Monster Energy Company

this litigation were to continue to the class certification stage and likely subsequent appeal.

While it may be difficult to evaluate the ultimate fairness of the Settlement Agreement without an estimated value of the class claims in the aggregate, the Court concludes, in light of the evidence discussed above, that the terms providing monetary relief are within the range of being fair and reasonable.

## 2.      Injunctive Relief

As to injunctive relief, the Settlement Agreement provides as follows:

Monster Energy has already revised labels for several Hansen's products, particularly with respect to "No Sugar Added" representations.  Monster Energy will also ensure that, as of the Effective Date, the labels for any Qualifying Products it is responsible for developing and marketing comply with all then-current U.S. Food and Drug Administration labeling regulations . . . .

(Settlement Agreement § 2.4).  The Court is not convinced that this relief is meaningful, as it requires Defendant to do no more than comply with the law.  But because the primary relief sought is in this action is damages and not an injunction, the Court does not view the lack of meaningful injunctive relief as fatal to the Settlement Agreement.

## 3.      Miscellaneous Provisions Regarding Claim Processing

Two aspects of the Settlement Agreement regarding claim processing raise some suspicion:

The first is the requirement that class members declare under the penalty of perjury that their submitted claims are true and correct.  This requirement could deter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016

Title:       Osie Marshal, et al. -*v*- Monster Energy Company

class members from submitting legitimate claims, especially since they would be required to select the product they purchased from over 150 options.  A class member could decide to forego her attempt to obtain a few dollars, fearing that an honest mistake could result in a criminal prosecution.  *Pearson v. NBTY, Inc.*, 772 F.3d 778, 783 (7th Cir. 2014) ("One would have thought, given the low ceiling on the amount of money that a member of the class could claim, that a sworn statement would be sufficient documentation, without requiring receipts or other business records likely to have been discarded.  The requirement of needlessly elaborate documentation, the threats of criminal prosecution, and the fact that a claimant might feel obliged to wade through the five other documents accessible from the opening screen of the website, help to explain why so few recipients of the postcard notice bothered to submit a claim.").

The second potentially problematic aspect of the Settlement Agreement is its provision stating that the parties "will . . . work with the Settlement Administrator to institute certain fraud detection and prevention mechanisms in connection with the Claim Form, which will be triggered if more than Fifty Thousand (50,000) Claim Forms are received."  (*Id.* § 3.6).  The parties do not explain what such "fraud detection and prevention mechanisms" could entail and how likely it would be that class members would be deterred from filing legitimate claims.

These issues, however, are more appropriate for resolution at the final settlement approval stage.  The evidence could show that these protections are warranted, and that class members would not be significantly deterred from filing legitimate claims.  If the parties fail to justify such terms, however, the Court would be more inclined to deny approval of the Settlement Agreement.

## 4.     Discovery Issues

The Court notes that there are certain inconsistencies in the record regarding the information that was available to Plaintiffs at the time of settlement negotiations.   On March 19, 2015, Plaintiffs filed an Ex Parte Application to Continue Briefing Schedule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV-14-06311-MWF-PLA**          **Date:  February 29, 2016**
Title:     Osie Marshal, et al. *-v-* Monster Energy Company

on Class Certification Motion.  (the "Application") (; Docket No. 46).  In that
Application, Plaintiffs made the following representation:

> Defendant has refused to produce the documents required for the expert
> analysis. Indeed, Defendant has produced only exemplars of labels of the
> challenged mislabeled products—and only for the products purchased by
> Plaintiffs, though Plaintiffs assert claims on behalf of all consumers who
> purchases substantially similar products as well. . . .  Although the
> exemplar labels are useful, they are a small drop of the ocean of
> information sought in Plaintiffs' document requests.  These materials do
> not supply either the sales, revenue, pricing, profit, and scanner (e.g.,
> price, quantity) data necessary for the conjoint and preliminary damages
> analyses, nor the marketing and decision-making analysis conducted by
> Defendant that Plaintiffs will use to establish class-wide commonality.

(*Id.* at 4).  The Court denied the Application, requiring Plaintiffs to file their class
certification motion by June 8, 2015.  On June 16, 2015, Plaintiffs filed a Notice of
Conditional Settlement.  (Docket No. 49).

The Application indicates that Plaintiffs had no benefit of class discovery when
they negotiated the Settlement Agreement.  Plaintiffs now aver, however, that
Defendants have responded to "almost 200 requests for production of documents and
over 20 interrogatories" pertaining to sales, pricing, and labeling.  (Orshansky Decl. ¶
4).  Plaintiffs make no real effort to explain this inconsistency.  It is still unclear
exactly what discovery Plaintiffs had at their disposal when they entered into the
Settlement Agreement, and whether that discovery was sufficient to estimate the value
of their class claims.  Nor is it clear whether Plaintiffs could have used the threat of
filing a legitimate motion for class certification as a bargaining chip.  Without that
bargaining chip, it is difficult to see how Plaintiffs could have legitimately settled the
class claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA               Date:  February 29, 2016
Title:      Osie Marshal, et al. *-v-* Monster Energy Company

Viewing the Settlement Agreement as a whole, however, the Court finds that it could well be a reasonable product of an informed bargain.  The Court is not prepared to dismiss counsel's sworn declaration asserting that Plaintiffs had the benefit of significant discovery at the time of the settlement negotiations.  The parties should note, however, that the Court would almost certainly refrain from granting final approval of the Settlement Agreement without a credible explanation of the inconsistencies described above.

## 5.      Notice to Class Members

Due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation.  *See* Fed. R. Civ. P. 23(c)(2). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quotations omitted).  "The court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Agreement sets forth the following procedure for providing class members with notice of the Settlement Agreement:

- **Publication Notice**. Unless otherwise ordered by the Court, in the 14-day period following the Notice Date, [Defendant] shall publish notice twice in a 1/4-page advertisement in the California edition of USA Today.  The notice will be substantially similar to the Short Form Notice **(Exhibit C)**, and will provide the web address of the Settlement Website and contact information for the Settlement Administrator and Class Counsel.

- **Banner Ad Notice**. Unless otherwise ordered by the Court, in the 14-day period following the Notice Date, [Defendant] shall publish notice on the Internet through banner ads on certain websites likely to reach Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016
Title:       Osie Marshal, et al. -v- Monster Energy Company

Members, as determined by the Settlement Administrator, and subject to
[Defendant's] approval.  The banner ads will provide a link to the Settlement
Website and contact information for the Settlement Administrator.

- **Internet Posting and Call Center**. Unless otherwise ordered by the Court,
  the Settlement Administrator will set up and maintain a Settlement Website
  on or before the Notice Date, and post the operative Complaint, Agreement,
  Preliminary Approval Order, Long Form Notice (**Exhibit B**), Claim Form
  (**Exhibit D**), and within five (5) Court days after it is filed, Class Counsel's
  fee motion.  The website shall be designed and constructed to accept Claim
  Forms electronically. On or before the Notice Date, the Settlement
  Administrator will also set up a toll-free, automated call center to provide
  Class Member with information regarding the Action and Agreement. The
  Settlement Website and call center will be active at least until the Final
  Approval Order and Judgment is entered by the Court.

(Settlement Agreement § 3.2).  The proposed notice would provide a definition of the
class, the primary terms of the Settlement Agreement, and a summary of the
instructions for requesting exclusion from the class and objecting to the Settlement
Agreement. (Settlement Agreement, Exs. B & C).  The notice would also include
other important details, such as the date, time, and place of the final approval hearing
as well as the contact information of Plaintiffs' counsel, the Court, and the Settlement
Administrator.  (*Id.*).

This notice procedure is modeled on the one approved in *Weeks v. Kellogg Co.*,
No. CV 09-08102-MMM-RZX, 2013 WL 6531177, at *11 (C.D. Cal. Nov. 23, 2013).
The district court there held that when faced with a class "of persons with unknown
addresses, notice by publication is reasonable." *Id.*; *see Dennis v. Kellogg Co.*, No.
09–CV–1786–IEG (WMc), 2010 WL 4285011, *5–6 (S.D.Cal. Oct.14, 2010)
("Because Defendant does not sell directly to consumers, there is no way to identify
class members directly. Therefore, Defendant will publish a Publication Notice in
targeted sources based on market research about consumers who purchased the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA              Date:  February 29, 2016

Title:     Osie Marshal, et al. -*v*- Monster Energy Company

products.").  The notice requirements of Rule 23(e) were satisfied, the Court
concluded, because notice was published in online newspapers and on websites, and
class members could obtain information about the settlement by calling a toll-free
telephone number.  *Weeks*, 2013 WL 6531177, at *11.

The notice procedure outlined in the Settlement Agreement is reasonable under
the circumstances.  Plaintiffs inform the Court that the parties "are currently evaluating
notice proposals from various claims administrators, and these proposals contemplate a
total reach that meets or exceeds the 70 percent threshold recognized by the Federal
Judicial Center."  (Plaintiffs' Opposition to Motion to Appoint Interim Counsel at 9).
Plaintiffs further aver that at the time of the "final approval the parties will submit
evidence from the settlement administrator testifying the actual reach of the notice
program."  (*Id.* at 10).  The Court concludes that the parties' proposal is sufficient for
the purposes of the preliminary approval.

In sum, the Settlement Agreement falls within the range of possible judicial
approval.  The Court cannot conclude from the inconsistencies in the record and the
substance of Settlement Agreement that Plaintiffs colluded with Defendant in a
"reverse auction."  The Court may well conclude otherwise, however, after reviewing
all available evidence and objections at the final stage of settlement approval.

### C.     Injunction of the *Cuzakis* and *Krinsk* Actions

In their briefs, Plaintiffs request the Court to enjoin parallel actions in order to
protect the Settlement Agreement.  (Motion for Preliminary Approval at 19).  As
discussed at the hearing, the request is **DENIED** *as moot* because both the *Cuzakis* and
*Krinsk* Actions are already stayed.

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the *Cuzakis* Motion, the *Krinsk*
Motion, and the Motion to Appoint Interim Counsel.  Many of the arguments therein,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA**                    **Date:  February 29, 2016**

Title:       Osie Marshal, et al. -*v*- Monster Energy Company

however, are cognizable as objections at the Rule 23(e) hearing.  The Court **DENIES**
***without prejudice*** the Motion for Preliminary Approval.  The parties may renew that
Motion on or before **March 14, 2016**.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-14-06311-MWF-PLA                Date:  February 29, 2016

Title:      Osie Marshal, et al. -*v*- Monster Energy Company

## CHRONOLOGY

| Date | Event |
|------|-------|
| June 27, 2013 | The *Cuzakis* Action is filed in Los Angeles Superior Court.  Discovery is stayed "shortly" thereafter. |
| September 16, 2013 | Plaintiffs' counsel sends Defendant a demand letter regarding misleading labels. |
| November 20, 2013 | Plaintiffs and Defendant participate in pre-litigation mediation. |
| April 4, 2014 | This action is filed in San Francisco Superior Court. |
| May 13, 2014 | Defendant removes this action to the Northern District. |
| June 19, 2014 | The *Krinsk* Action is filed in San Diego Superior Court. |
| August 6, 2014 | This action is transferred to the Central District. |
| November 20, 2014 | The parties in the *Cuzakis* Action conduct an unsuccessful mediation. |
| March 19, 2015 | Plaintiffs file an ex parte application in this action to continue the deadline to move for class certification, arguing that Defendant has not produced discovery. |
| March 27, 2015 | The Court denies the ex parte application. |
| June 8, 2015 | Motion for class certification due; Plaintiffs do not file a motion. |
| June 16, 2015 | The parties file a Notice of Conditional Settlement |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-14-06311-MWF-PLA                    Date:  February 29, 2016**

Title:        Osie Marshal, et al. *-v-* Monster Energy Company

| | |
|---|---|
| April 20, 2015 | The *Cuzakis* parties have a status conference at which Defendant contends that the *Cuzakis* Action should be stayed in light of this action. |
| April 23, 2015 | The discovery stay is lifted in the *Cuzakis* Action. The parties engage in limited discovery. |
| September 9, 2015 | The San Diego Superior Court stays the entire *Krinsk* Action and vacates dates pending "preliminary approval of the proposed settlement" in this action. |
| December 14, 2015 | The Los Angeles Superior Court stays the entire *Cuzakis* Action, "pending approval of the proposed settlement" in this action. |
| January 4, 2016 | This action is assigned to this Court. |